ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
OCT 17 2005
U.S. COURT OF FEDERAL CLAIMS

ROCCO TOMMASEO, and
THOMAS TOMMASEO, and
ROCKY AND CARLO, INC., and
STEVEN BORDELON, husband of,
and CYNTHIA BORDELON and
STEVE'S MOBILE HOME & R.V.
REPAIR, INC.
Plaintiffs

V.

THE UNITED STATES

Defendant

NO. ______________

**ORIGINAL CLASS ACTION COMPLAINT**

**NOW INTO COURT**, through undersigned counsel, come ROCCO TOMMASEO, and, THOMAS TOMMASEO, and ROCKY AND CARLO, INC., and STEVEN BORDELON, husband of, and CYNTHIA BORDELON and STEVE'S MOBILE HOME & R.V. REPAIR, INC., appearing individually and on behalf of all persons similarly situated, who respectfully represent as follows:

**STATEMENT OF JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1491(a)(1). This is a claim seeking compensation from the United States for the taking of private property for public use pursuant to Amendment V of the U.S. Constitution.

**PARTIES**

2. Plaintiffs ROCCO TOMMASEO, and THOMAS TOMMASEO, and STEVEN BORDELON, husband of, and CYNTHIA BORDELON, citizens of the United States of

America and residents of St. Bernard Parish, Louisiana, are individuals of the full age of majority and plaintiffs ROCKY AND CARLO, INC. and STEVE'S MOBILE HOME & R.V. REPAIR, INC., are Louisiana Corporations with their principle places of business in St. Bernard Parish, Louisiana (hereinafter referred to collectively as "Plaintiffs") who bring this claim individually and on behalf of all other persons similarly situated.

3. Made defendant herein is the United States of America (the "United States"), a sovereign and body politic.

**FACTS**

4. The Mississippi River Gulf Outlet ("MRGO") is a 76-mile-long man-made channel between the Gulf of Mexico and the City of New Orleans created by the United States. Congress authorized the construction of the MRGO in 1956 by passing the River and Harbor Act of 1956 to create a means of direct access for deep water vessels from the Gulf of Mexico to the Port of New Orleans in order to promote economic development of the Port of New Orleans and adjacent St. Bernard Parish.

5. Construction of the MRGO started in 1958 and was completed in 1965. The construction of the MRGO was originally authorized to a depth of 36 feet, a surface width of 650 feet, and a bottom width of 500 feet. The 76-mile channel bisected the marshes of lower St. Bernard Parish and the shallow waters of Chandeleur Sound and cut through then existing marsh land which had acted as a natural barrier against hurricane winds and storm surge.

6. The creation of the MRGO allowed salt water from the Gulf of Mexico to flow further inland into the marshes of St. Bernard Parish thereby killing plants and vegetation which had served to hold land and soil in place. Without the aforesaid plants and vegetation, the land and soil eroded leading to a widening of the MRGO beyond the dimensions originally authorized.

7. In addition to the erosion created by saltwater intrusion, the United States, acting through the U.S. Army Corps of Engineers, has repeatedly dredged the bottoms of the MRGO removing soil that had eroded from the banks of the MRGO into the bottom of the channel and placing the dredged soil into the Gulf of Mexico rather than attempting to restore the marshlands of St. Bernard Parish.

8. The original design and construction of the MRGO was such that the surface width was wider than the bottom width creating a condition whereby the natural consequence of wake and wave action in the channel would be the continued eroding and widening of the MRGO.

9. The wetland loss and deterioration from the MRGO have allowed for expanded tidal amplitude and duration, increasing the flooding risk to interior portions of St. Bernard Parish and providing a direct line of access for hurricane-related storm surge to reach St. Bernard Parish. This presented a known threat of flooding in the event of a severe hurricane such as Hurricanes Katrina and Rita as described hereinbelow.

10. In the fall of 1998, the St. Bernard Parish Council unanimously adopted a resolution calling for the closure of the MRGO because of the flooding threat to St. Bernard Parish.

11. In 1958 the United States, through the Department of the Interior, published a report warning that "excavation of the (MRGO) could result in major ecological change with widespread and severe ecological consequences."

12. Plaintiffs are residents of St. Bernard Parish who owned real property with improvements thereon including both residential and commercial property in St. Bernard Parish, Louisiana. In addition to owning such property, plaintiffs owned and operated a commercial venture in St. Bernard Parish, Louisiana. Thus, plaintiffs had vested property rights in the real property they owned as well as the commercial activity in which they engaged.

13. On or about August 29, 2005, Hurricane Katrina struck the Louisiana and Mississippi Gulf Coast pushing a storm surge through the MRGO. The storm surge overwhelmed the levee system between the MRGO and plaintiffs' property in St. Bernard Parish resulting in massive flooding and the destruction of plaintiffs' property. This flooding was a natural and direct consequence of the creation of the MRGO and the continued operation, maintenance, and dredging thereof by the United States.

## COUNT I – PERMANENT TAKING OF PROPERTY

14. Plaintiffs reallege paragraphs one through thirteen in this Complaint and incorporate them herein by reference as if set forth in full.

15. As a natural and direct result of the creation of the MRGO and the continued operation, maintenance, and dredging thereof, the plaintiffs have been deprived of the use, occupancy, and enjoyment of their real property and the improvements thereon thereby resulting in a permanent taking of their property for a public use.

16. In addition to their real property loss, plaintiffs have been deprived of the continued operation of their commercial ventures as a direct result of the destruction of their business location.

## COUNT II – TEMPORARY AND PERMANENT TAKING OF PROPERTY

17. Plaintiffs reallege paragraphs one through thirteen in this Complaint and incorporate them herein by reference as if set forth in full.

18. In the alternative and only in the event that plaintiffs' real property can be redeveloped in the future, plaintiffs have been deprived of the use, occupancy and enjoyment of their real property for the indefinite future and have suffered a temporary taking of their real property.

19. Nevertheless, even if plaintiffs' real property can be redeveloped in the future, the improvements on the property have been rendered uninhabitable and effectively destroyed thereby depriving plaintiffs of the use, occupancy and enjoyment of the improvements on their real property resulting in a permanent taking of their property for a public use.

## COUNT III – CREATION OF A DRAINAGE EASEMENT

20. Plaintiffs reallege paragraphs one through thirteen in this Complaint and incorporate them herein by reference as if set forth in full.

21. Following the destruction of plaintiffs' property in August 2005, on or about September 24, 2005 Hurricane Rita struck the Louisiana coast causing another storm surge leading to a second flood of St. Bernard Parish and plaintiffs' property.

22. On information and belief, storm surges associated with Category 4 or 5 hurricanes in the future will repeat the effect of the storm surges created by Hurricanes Katrina and Rita. As a result, and in the alternative to the other causes of action stated herein, the United States has created a drainage easement on plaintiffs' property thereby resulting in a taking of plaintiffs' property for a public purpose.

## REQUEST FOR CLASS ACTION CERTIFICATION

23. Plaintiffs reallege paragraphs one through thirteen and twenty-one through twenty-two in this Complaint and incorporate them herein by reference as if set forth in full.

24. Plaintiffs bring this action individually and on behalf of all other persons similarly situated (*i.e.* property owners residing, owning property and/or engaging in commercial enterprises in St. Bernard Parish, Louisiana which property was taken by the United States for a public purpose all as described hereinabove).

25. Maintaining this action as a class action is appropriate because

(a) the class is so numerous (approximately 65,000 residents of St. Bernard Parish occupying over 27,000 residences) that joinder of all members is impracticable,

(b) there are questions of law and fact common to the class (*i.e.* the action of the United States in creating the MRGO and the direct and natural result of the taking of the plaintiffs' property as well as that of others similarly situated),

(c) the claims of the representative parties (plaintiffs herein) are typical of the claims of the proposed class, and

(d) the plaintiffs herein (as representative parties) will fairly and adequately protect the interests of the class.

26. Plaintiffs have retained counsel who are experienced in and capable of prosecuting class action litigation and who will devote the appropriate resources necessary to prosecute these claims.

**PRAYER**

27. WHEREFORE, the premises considered, plaintiffs pray

(a) that this matter be maintained and certified as a class action on behalf of all those persons residing, owning property and/or engaging in commercial enterprises in St. Bernard Parish, Louisiana which property was taken by the United States for a public purpose through the construction and continued operation, maintenance and dredging of the Mississippi River Gulf Outlet,

(b) for judgment in their favor individually and on behalf of all persons similarly situated and against the United States of America finding that plaintiffs' property as well as the property of all persons similarly situated has been taken for a public purpose entitling plaintiffs, and all

persons similarly situated, to just compensation in accordance with Amendment V of the U.S. Constitution in the amount of $5,000,000,000, and

(c) for such other and further relief to which this Honorable Court deems plaintiffs to be entitled.

Respectfully submitted this 13 day of October, 2005.

F. Gerald Maples (#25960)
MAPLES & KIRWAN, LLC
902 Julia Street
New Orleans, LA 70113
Telephone: (504) 569-8732
Facsimile: (504) 525-6932

-and-

J. Wayne Mumphrey (#9824)
MUMPHREY LAW FIRM, LLC
9061 West Judge Perez Drive
Chalmette, LA 70043
Telephone: (504) 277-8989

-and-

John H. Musser, IV (#9863)
322 Lafayette St.
New Orleans, LA 70130
Telephone: (504) 566-1218
Facsimile: (504) 566-7185