IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROCCO TOMMASEO, and<br>THOMAS TOMMASEO, and<br>ROCKY AND CARLO, INC., and<br>STEVEN BORDELON, husband of,<br>and CYNTHIA BORDELON and,<br>STEVE'S MOBILE HOME & R.V. REPAIR,<br>INC.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 05-1119L<br><br>Hon. Susan G. Braden |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION (AND INCORPORATED MEMORANDUM IN SUPPORT) TO COMPEL**

Defendant, the United States of America, herein responds to plaintiffs' Motion to Compel in the above-captioned matter. Pursuant to this Court's direction in the initial status conference in this case, the parties initiated the discovery process. On May 12, 2006, defendant served its first set of interrogatories on plaintiffs. Plaintiffs' returned limited responses which were heavy with objections. See Plaintiffs' Responses to Defendant's Interrogatories, attached as Defendant's Exhibit 1. On June 16, 2006, plaintiffs served defendant with interrogatories, requests for admissions and requests for document production. On July 17, 2006, defendant responded to these requests offering relevant information and several objections. Dissatisfied with these responses, plaintiffs sent a letter to defendant detailing their concerns. Defendant responded to this letter, but, following a conference call among the parties, the matter could not be resolved. As a result, plaintiffs filed the motion to which defendant now responds.

As we explain below, plaintiffs' interrogatories and document requests go well beyond the permissible limits of the Rules of the Court of Federal Claims and the guidance given by this Court in the initial status conference that preceded discovery in this matter. Further, plaintiffs' requests are in large part properly subject to objections as being overly burdensome, irrelevant to the adjudication of this matter, or have been mooted by admissions of defendant in its Answer. Accordingly, for the reasons set forth below, defendant asks that the Court deny plaintiffs' motion.

## I. GENERAL RESPONSES TO PLAINTIFFS' MOTION TO COMPEL

Defendant has stated multiple objections to plaintiffs' discovery requests. As an initial matter, we objected to the interrogatories as being not in compliance with Rule 33 of the Rules of the Court of Federal Claims ("RCFC") as they exceed the allowed number of questions and are very burdensome due to the unlimited nature of the requests. Further, much of the material plaintiffs seek is simply irrelevant to the claims alleged in their Complaint.

### A. Plaintiffs' Interrogatories and Requests for Document Production Do Not Comply With the Rules of the Court of Federal Claims

RCFC 33 allows for the parties to serve no more than twenty-five interrogatories, inclusive of discrete subparts, absent leave of the Court to lodge more requests or a stipulation to the same effect. See RCFC 33(a) (noting that interrogatories should not "exceed[] 25 in number including all discrete subparts. . ."). The discovery requests propounded by plaintiffs to defendant on June 16, 2006 contained twenty-two numbered interrogatories and at first blush appear to comply with RCFC 33. Interrogatories 1 and 6, however, contain eleven lettered subparts, each containing a different line of inquiry. For example, while Interrogatory 1 asks for the identification of all studies done by the United States with respect to flooding in St. Bernard

Parish, the subparts to the interrogatory go on to ask for the identification of all person who participated in the creation of such studies, a recounting of the facts of each study, identification of the authorization and funding for each study and more. These "discrete subparts" effectively push to thirty-three the number of interrogatories plaintiffs have asked defendant to answer. Additionally, at the end of their Requests for Admissions, plaintiffs have an additional global interrogatory asking for the reason behind each and every denial made by defendant. This pushes to thirty-four the total number of interrogatories forwarded to defendant by plaintiffs, nine more interrogatories than plaintiffs are allowed under the RCFC. However, plaintiffs have neither sought leave of the Court nor requested a stipulation from defendant in order that they might validly exceed the twenty five interrogatories allowed by RCFC 33.

B. Plaintiffs' Interrogatories and Document Requests Are Not Consistent With This Court's Comments Regarding the Scope of Initial Discovery

In the parties' initial status conference with the Court, defendant indicated its desire to conduct fact depositions in this case pursuant to RCFC 30(b)(6). It is defendant's recollection that the Court advised that it did not think it was wise to conduct time-consuming and costly depositions at this early stage of the case, especially in light of the expectation of dispositive motions on jurisdictional grounds. Acting in line with its understanding of the Court's instructions, defendant served a limited number of interrogatories on May 12, 2006 and did not request production of any documents. Plaintiffs, however, did not so limit its discovery. Rather, plaintiffs served broad interrogatories and extensive requests for production on June 16, 2006. Defendant made a good faith effort to respond to reasonable requests, but objected extensively to the requests that were overbroad and also objected where the assembly and production of documents would be quite costly and time consuming.

In its response to plaintiffs' July 19, 2006 letter, defendant raised its concern that the plaintiffs interrogatories and document production requests were outside of the discovery limits set by the Court in the initial status conference. (See Pltfs' Mot. to Compel, Ex. 5 at 1). Defendant again expressed this sentiment, to no avail, in the conference call the parties held in an attempt to avoid this dispute.

It is clear that the parties have fundamentally different interpretations of the proper scope the current discovery efforts should take. However, defendant believes that its approach to-date has been more consistent with the Court's direction regarding initial discovery between the parties.

C. Much of the Material Requested by Plaintiffs Is Irrelevant or Unnecessary to Respond to Defendant's Upcoming Jurisdictional Summary Judgment Motion

In their Motion to Compel and at the August 7, 2006 discovery conference held by the parties, plaintiffs asserted that they need defendant's discovery responses in order to respond to defendant's upcoming Motion for Summary Judgment on jurisdictional grounds. Defendant has repeatedly assured plaintiffs that the upcoming Summary Judgment motion will be based on the allegations in the complaint or derived from other indisputable sources such as case law and Congressional records. Further, RCFC 56(f) allows a party in responding to a motion for summary judgment to request a continuance or discovery if it is unable for valid reasons to oppose the motion. Defendant suggested this was the proper way for plaintiffs to proceed and that they should await a review of Defendant's Motion before seeking such broad discovery. Plaintiffs' have apparently declined to take this approach.

In their Motion to Compel, plaintiffs contend that they need the requested discovery for three reasons. First, plaintiffs claim that the discovery will help them "prove that the statute of

limitations has not expired. . . ." Pltfs' Mot. to Compel at 3. Second, plaintiffs assert that the discovery will aid them in proving "that the Corps is responsible for the failure of its engineering with respect to the design, construction and maintenance of the. . . MR-GO . . . ." Id. Third, plaintiffs claim that they need discovery to show that "there is an actual cause of action for a Fifth Amendment taking . . . in this matter." Id.

1. Discovery Will Not Aid Plaintiffs in Responding to a Statute of Limitations Defense.

Much of the substantive portion of plaintiffs' Motion to Compel is dedicated to a discussion of the current state of statute of limitations law in the Federal Circuit. See Pltfs' Mot. to Compel at 4-5. The ultimate point of plaintiffs' statute of limitations discussion is that they feel, that by showing that the Corps has undertaken dredging and maintenance on the MRGO, they can defeat defendant's upcoming Motion for Summary Judgment on statute of limitations grounds. There is no dispute, however, as to the fact that the Corps has routinely dredged and maintained the navigation channel in order to maintain project specifications. Defendant's Answer in this case admits that fact. In paragraph 9 of their First Amended Complaint, plaintiffs alleged that:

> The United States, acting through the [Corps], has repeatedly and continuously dredged the bottoms of the MRGO, removing soil that had eroded from the banks of the MRGO into the bottom of the channel and placing dredged soil into the Gulf of Mexico. On information and belief, such dredging continued on a regular basis until recently and may continue into the future.

Defendant admitted these allegations, see Answer ¶ 9. Accordingly, it is puzzling that plaintiffs now seek further discovery to prove the fact that the Corps dredged and maintained the MRGO.

2. To the Extent They Seek Discovery to Show That the "Corps Is Responsible For the Failures of Its Engineering," Plaintiffs' Requests Are

Irrelevant to A Fifth Amendment Takings Claim.

As noted above, it appears that plaintiffs intend to use their Fifth Amendment taking suit to delve into the Corps' engineering record. Pltfs' Mot. to Compel at 3. To the extent plaintiffs seek discovery of information to prove that the "Corps is responsible for the failures of its engineering," such discovery should not be allowed because it is simply irrelevant to establishing a takings claim and aimed at proving negligence. See Moden v. United States, 404 F.3d 1335, 1345 (Fed.Cir. 2005) (noting that "the government's liability for a taking case does not turn, as it would in tort, on its level of care . . .). Accordingly, such discovery goes to matters outside the jurisdiction of this Court and plaintiffs' Motion should be denied in this respect. See 28 U.S.C. § 1491 (stating that suits sounding in tort are outside the jurisdiction of the Court of Federal Claims).

3. Defendant Should Not be Made to Bear the Burden of Establishing Plaintiffs' Cause of Action.

Plaintiffs' final, and perhaps most troubling, stated reason for needing extensive discovery at this early stage in the case is the need to "prove . . . that there is an actual cause of action for a Fifth Amendment taking . . . in this matter." Basically, plaintiffs are admitting that this ordeal is a fishing expedition. They do not have the evidence to support their claims and they have alleged a cause of action for which it appears they presently have no factual or legal support. Plaintiffs have yet to identify a specific government action that affected their property other than those that occurred approximately 3.5 miles distant from that property on the banks of the MRGO. Quite simply, plaintiffs have floated a vague and unsupported complaint in hopes of later developing the evidence to support such a lawsuit. Plaintiffs should not be allowed to use

the discovery process in this way, much less when defendant is in the process of preparing the motions which will test the legal validity of plaintiffs' claims.

## II. RESPONSES TO PLAINTIFFS' ANALYSIS OF SPECIFIC INTERROGATORIES AND REQUESTS FOR DOCUMENT PRODUCTION

In their Motion to Compel, Plaintiffs analyze several of defendant's interrogatory and document request responses. Pltfs' Mot. to Compel at 5-17. Defendant's general responses to these analyses are discussed above, but a few of the contentions require specific response. For ease of reference, this discussion will use the same numbering system used by plaintiffs in their motion.

Item 1

This interrogatory is indicative of the breadth of plaintiffs' proposed fishing expedition. The inquiry's scope in both time (the past 50 years) and information (all reports, any people who worked on such reports) is potentially huge and, yet, likely to yield little information of value. Defendant specifically objected to this interrogatory on those grounds.

Item 3

At the March status conference, it was agreed that this case should await the completion of the extensive studies then underway to determine the causes and effects of the flooding in New Orleans as a result of Hurricane Katrina. Notwithstanding this agreement, Plaintiffs in June sought discovery of "all witness, documents, tangible items of evidence and any other factual basis which you contend support each and every affirmative defense you have asserted." We correctly responded that, as of the time of our reply, we had not identified any such witnesses or documents, believing that the issues in this case and our affirmative defenses could be addressed as a matter of law without the need for identification of witnesses and exhibits. We did,

however, refer Plaintiffs to the massive IPET report as containing the best information then available, and from which witnesses and documentary evidence likely would be obtained if necessary.[1/] This request, made at the time it was, was clearly premature and grossly overreaching.

Item 5

Plaintiffs do not have a legitimate complaint as to defendant's refusal to turn over drafts of the IPET report. First, it is obvious from their analysis of Item 5 that plaintiffs already have seen the only two previous drafts of the IPET report, otherwise they would not have known that the language they call a "liability disclaimer" was not in the earlier versions. Second, to the extent there were internal drafts of the pieces that ultimately composed the IPET report, those documents are subject to the deliberative process privilege. See San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n, 751 F.2d 1287, 1326 (D.C. Cir. 1984). Defendant will provide affidavits from agency officials supporting this claim, if necessary.

Items 6 & 10

In these two requests plaintiffs presuppose a fact very much in dispute in this cases, i.e., that hurricane floodwaters have in the past inundated St. Bernard Parish via the MRGO. Pltfs' Mot. to Compel at 9, 11. Because defendant does not have any evidence that any hurricane has ever flooded St. Bernard Parish via the MRGO, the defendant's responses were the only possible

[1/] It should be noted that, plaintiffs themselves did not provide a complete response to our own written interrogatories asking them to identify their expert and factual witnesses. (See Def's Ex. 1, Nos. 13, 14 and 15).

responses that could have been provided.

Item 12

This request seeks information as to administrative claims filed by residents of St. Bernard Parish who claim to have suffered damage as a result of flooding emanating from the MRGO. We objected to this request as burdensome and oppressive. Apart from the lack of specificity and particularity of the request, there is no reasonable way to respond to this request or any likelihood that it would lead to any relevant evidence. Defendant knows of only one lawsuit - and that a tort case - alleging damages caused by floodwaters from MRGO. The case is Graci v. United States, 435 F.Supp. 189 (E.D.La. 1977), and, being available in a federal case reporter, it was available to plaintiffs at any time.

## III. IN THEIR RESPONSES TO DEFENDANT'S INTERROGATORIES, PLAINTIFFS MADE MANY OBJECTIONS SIMILAR TO THOSE OF WHICH THEY NOW COMPLAIN

On May 12, 2006 defendant served plaintiffs with sixteen interrogatories. Of those sixteen queries, plaintiffs objected to nine as being "premature." (See Def's Ex. 1, Interrogatory Nos. 3, 4, 6, 9, 11, 12, 13, 14, 15, 16). Plaintiffs, same as defendant, then went on to answer the questions in a limited fashion. In light of plaintiffs' acknowledgment that it is simply too early to answer some of the questions that must be asked in this case, it is incongruous of them to expect defendant to have all the answers. Plaintiffs are essentially trying to shield themselves with the current posture of this case but they do not wish to allow defendant under that shield with them. To the extent plaintiffs have objected to producing evidence or witnesses at this point, (See Def's Ex. 1, Interrogatory Nos. 4, 6, 9, 11, 12, 13, 14, 15, 16), they should not now be allowed to force defendant to reply to similar interrogatories (See Pltfs' Mot. to Compel, Ex. 3,

Interrogatory Nos. 3, 13, 14, 15, 16, 20).

**CONCLUSION**

Defendant properly objected to most of plaintiffs' requested discovery and gave valid reasons for its objections. We stand upon those objections, and for the reasons stated therein and, for the foregoing reasons, respectfully ask that plaintiffs' Motion to Compel be denied.

Dated: September 5, 2006.

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

s/ Fred R. Disheroon
FRED R. DISHEROON, Special Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Fax: (202) 616-9667

COUNSEL FOR DEFENDANT