IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROCCO TOMMASEO, and<br>THOMAS TOMMASEO, and<br>ROCKY AND CARLO, INC., and<br>STEVEN BORDELON, husband of,<br>and CYNTHIA BORDELON and,<br>STEVE'S MOBILE HOME & R.V. REPAIR,<br>INC.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 05-1119L<br><br>Hon. Susan G. Braden |

**DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF**

**SUE ELLEN WOOLDRIDGE**
Assistant Attorney General
Environment and Natural Resources Division

FRED R. DISHEROON, Special Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Fax: (202) 616-9667

.

Counsel for the Defendant.

# TABLE OF CONTENTS

BACKGROUND . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . 5

I. SUMMARY OF ARGUMENT . . . . . . . . . . 5

II. STANDARD OF REVIEW . . . . . . . . . . 6

III. PLAINTIFFS' CLAIMS SOUND IN TORT AND ARE OUTSIDE THIS COURT'S JURISDICTION . . . . . . . . . . 7

A. The Flooding of Plaintiffs' Property Was Not the Direct, Natural or Probable Result of the Construction, Maintenance, Operation, Dredging or Erosion of the MRGO Because the MRGO Was Not the Likely Cause of the Flooding and Such Flooding Was Not Foreseeable . . . . . . . . . . 9

B. The Flooding of Plaintiffs' Property Is Not Inevitably Recurring; As Such, Plaintiffs' Claims Sound in Tort and Are Outside the Jurisdiction of This Court . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . 15

## TABLE OF AUTHORITIES

**CASES**

Baird v. United States,
5 Cl. Ct. 324 (1984) . . . . . . . . . . 10

Banks v. United States,
69 Fed.Cl. 206 (2006) . . . . . . . . . . 10, 11, 12, 14

Barnes v. United States,
210 Cl. Ct. 467, 538 F.2d 865 (1976) . . . . . . . . . . 6, 14, 16

Bartz v. United States,
224 Ct.Cl. 583, 633 F.2d 571 (Ct. Cl. 1980) . . . . . . . . . . 10

Bond v. United States,
47 Fed. Cl. 641 (2000) . . . . . . . . . . 7

Brace v. United States,
72 Fed.Cl. 337 (2006) . . . . . . . . . . 10, 11

Briscoe v. LaHue,
663 F.2d 713 (7th Cir. 1981) . . . . . . . . . . 7

Burt v. Makita USA, Inc.,
212 F.Supp.2d 893 (N.D.Ind. 2002) . . . . . . . . . . 13

Cedars-Sinai Med. Ctr. v. Watkins,
11 F.3d 1573 (Fed. Cir. 1993) . . . . . . . . . . 7

Entines v. United States,
39 Fed. Cl. 673 (1997) . . . . . . . . . . 7

Eyherabide v. United States,
170 Ct. Cl. 598, 345 F.2d 565 (1965) . . . . . . . . . . 15

Ferreiro v. United States,
350 F.3d 1318 (Fed. Cir. 2003) . . . . . . . . . . 7

Figueroa v. United States,
57 Fed. Cl. 488 (2003) . . . . . . . . . . 7

First English Evangelical Lutheran Church of Glendale v. Los Angeles County,

482 U.S. 304 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Forest Properties v. United States,
177 F.3d 1360 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fromme v. United States,
412 F.2d 1192 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Graci v. United States,
435 F. Supp. 189 (E.D. La. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 10, 11, 14

Grajales-Romero v. American Airlines, Inc.,
194 F.3d 288 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Laughlin v. United States,
22 Cl. Ct. 85 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

LeBlanc v. United States,
50 F.3d 1025 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Leeth v. United States,
22 Cl. Ct. 467 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Mars Inc. v. Kabushiki-Kaisha Nippon Conlux,
24 F.3d 1368 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Moden v. United States,
404 F.3d 1335 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9, 11, 12, 13

Napier v. F/V Deesie, Inc.,
454 F.3d 61 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

North Counties Hydro-Electric Co. v. United States,
138 Ct.Cl. 380, 151 F.Supp. 322 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Pennsylvania Coal Co. v. Mahon,
260 U.S. 393 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Ridge Line, Inc. v. United States,
346 F.3d 1346 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9, 11, 13, 14, 15

Scheuer v. Rhodes,
416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Schillinger v. United States,
155 U.S. 163 (1894) . . . . . 15

Singleton v. United States,
6 Cl.Ct. 156 (1984) . . . . . 14, 15

Skandia Ins. Co., Ltd. v. Star Shipping AS,
173 F. Supp. 2d 1228 (S.D. Ala. 2001) . . . . . 13

Taylor v. United States,
49 Fed. Cl. 598 (2001) . . . . . 7

United States v. 564.54 Acres of Land,
441 U.S. 506 (1979) . . . . . 8

United States v. Dickinson,
331 U.S. 745 (1947) . . . . . 10

United States v. Pewee Coal Co.,
341 U.S. 114 (1951) . . . . . 8

Westinghouse Elec. Corp. v. United States,
41 Fed. Cl. 229 (1998) . . . . . 7

Zoltek Corp. v. United States,
442 F.3d 1345 (Fed. Cir. 2006) . . . . . 15

**CONSTITUTIONS**

U.S. Const. amend. V . . . . . 7

**STATUTES**

The Tucker Act,
28 U.S.C. § 1491(a) . . . . . 5

28 U.S.C. § 2501 . . . . . 2

**REGULATIONS**

46 FR 29933 (June 4, 1981) . . . . . 4

**RULES**

RCFC 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
RCFC 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
RCFC 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15
RCFC 9(h)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**EXHIBITS**

| Exhibit Letter | Description |
|---|---|
| A | Map of New Orleans Elevation by Neighborhood with Major Roads |
| B | Fiscal Year 2005, Annual Report of the Secretary of the Army on Civil Works Activities |
| C | Notes on the Influence of the Mississippi River Gulf Outlet on Hurricane Induced Storm Surge in New Orleans and Vicinity |
| D | The Direct Impact of the MRGO on Hurricane Storm Surge |
| E | Tropical Cyclone Report, Hurricane Katrina |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROCCO TOMMASEO, and<br>THOMAS TOMMASEO, and<br>ROCKY AND CARLO, INC., and<br>STEVEN BORDELON, husband of,<br>and CYNTHIA BORDELON and,<br>STEVE'S MOBILE HOME & R.V. REPAIR,<br>INC.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 05-1119L<br><br>Hon. Susan G. Braden |

**DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF**

Defendant, United States of America, hereby submits this memorandum in support of its Motion to Dismiss Plaintiffs' First Amended Complaint[1/] (the "Complaint") pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). Plaintiffs Rocco Tommaseo, Thomas Tommaseo, Steven Bordelon, Cynthia Bordelon, Rocky and Carlo, Inc. and Steve's Mobile Home & R.V. Repair, Inc. claim that the United States, through the creation and continued operation and maintenance of the Mississippi River Gulf Outlet ("MRGO"), has taken their property without just compensation in violation of the Fifth Amendment of the Constitution

[1/] Plaintiffs filed their Original Class Action Complaint on October 17, 2005. Docket No. 1. Their First Amended Complaint was filed January 13, 2006. Docket No. 10. For ease of reference the First Amended Complaint will be referred to as the "Complaint."

of the United States. Specifically, Plaintiffs allege that their properties were flooded as the result of a storm surge allegedly pushed by Hurricane Katrina through the MRGO into St. Bernard Parish where Plaintiffs' properties are located. Compl. at ¶¶ 15-20. In the alternative, Plaintiffs claim that Defendant has taken a flowage easement over their respective properties because they allege that future storms will result in flooding of their properties. Compl. at ¶¶ 21-25. As we demonstrate below, Plaintiffs' claims are beyond the jurisdiction of this Court. As discussed infra, Plaintiffs' claims sound in tort, over which the district courts have exclusive jurisdiction.[2/]

## BACKGROUND

It is undisputed that on August 29, 2005, a storm surge created by Hurricane Katrina flooded large areas of the New Orleans metropolitan area, including much of St. Bernard Parish. Compl. at ¶ 11. Unfortunately, this was not the first time that St. Bernard Parish was flooded by hurricane storm surge. The low-lying parish was also inundated by hurricane storm surge in 1915, 1947, 1956 and 1965. Graci v. United States, 435 F. Supp. 189, 193 (E.D. La. 1977). Plaintiffs' claims are based on the unsupported allegation that Hurricane Katrina "push[ed] a storm surge through the MRGO, and that "this flooding was a direct, natural or probable result of the creation of the MRGO . . . ." Compl. at ¶¶ 11-12. They do not, however, allege or plead any

---

[2/] At the time Defendant agreed to file the instant motion pursuant to RCFC 12(b), it intended to raise a defense that Plaintiffs' claims were time-barred by the applicable stature of limitations, 28 U.S.C. § 2501. However, given the ambiguity of the allegations contained in the Complaint and how little is known about the extent of any impact to the properties allegedly owned by the named Plaintiffs, Defendant believes that the complaint does not spell out sufficient detailed facts or claims that would allow for a motion to dismiss on limitation grounds at this point without further factual development. If this motion should be denied, Defendant reserves the right to raise the statute of limitations as a defense once the facts of this case, and Plaintiffs' allegations, are more fully developed.

factual basis for this conclusion, relying rather on unspecified "information and belief." Id. at ¶ 13.

The MRGO is a federal navigation project with an authorized channel depth of 36 feet, surface width of 650 feet and bottom width of 500 feet. Pub. L. 455, 70 Stat. 65, 65 (1956). The channel extends from the Inner Harbor Navigation Canal southeasterly some 76 miles to the 38 foot depth contour in the Gulf of Mexico. Safety Zone; Mississippi River Gulf Outlet, 46 FR 29933 (June 4, 1981). The MRGO is bordered on its eastern bank by Lake Borgne and on its western bank by a large marsh that lies between Lake Borgne and St. Bernard Parish. See New Orleans Elevation by neighborhood with major roads, *available at* www.gnocdc.org/maps/pdfs/neworleans_elevation.pdf (last visited Oct. 3, 2006), attached as Defendant's Exhibit A (labels for the MRGO and Lake Borgne supplied); see also Fiscal Year 2005, Annual Report of the Secretary of the Army on Civil Works Activities at 11-2, attached as Defendant's Exhibit B. Construction on the MRGO Navigation Project (the "Project") was completed in 1968 and there have been no Congressionally authorized changes in the Project's dimensions since that time. See Def's Ex. B at 11-2 to 11-3. The MRGO was constructed as an emergency outlet from the Mississippi River in the interest of national defense and general commerce and to provide a safer and shorter route between the Port of New Orleans and the Gulf of Mexico following Congressional authorization in 1956. Id.; Pub. L. No. 455, 70 Stat. 65, 65 (1956). Work on the Project began in 1958 and it was completed to its authorized depth and width in 1968. Def's Ex. B at 11-3.

Further, the relative physical size of the MRGO limits its capacity to carry a large storm surge. In its review of the effects of Hurricane Betsy in 1965, the United States District Court

for the Eastern District of Louisiana in Graci v. United States found, as a matter of fact, that "[t]he MRGO has a width of 500 feet. Within 120 miles of coastline receiving a surge of +8 feet or greater during Hurricane Betsy, the MRGO represents approximately .000789%, or less than one-thousandth of the affected area." 435 F. Supp. at 193. In any event, two studies conducted after the storm show that the storm surge that led to flooding in St. Bernard Parish after Hurricane Katrina came from Lake Borgne and not up the MRGO. See, e.g., James Westerink, Bruce Ebersole and Harley Winer, Appendix E, Notes on the Influence of the Mississippi River Gulf Outlet on Hurricane Induced Storm Surge in New Orleans and Vicinity at E-5, attached as Defendant's Exhibit C; State of Louisiana, Department of Natural Resources, The Direct Impact of the MRGO on Hurricane Storm Surge 9-1 (Feb. 2006), attached as Defendant's Exhibit D.

Both the studies of the Interagency Performance Evaluation Team ("IPET") and a separate report prepared for the Louisiana Department of Natural Resources ("Louisiana DNR") concluded that the influence of the MRGO on storm surges, including that from Hurricane Katrina, are quite small during large scale flooding events, and that the storm surge propagation of the long reach of the MRGO is just a few tenths of a foot. Id. Specifically, the Louisiana DNR study concluded that "[t]he MRGO channel does not appear to contribute significantly to peak surge during severe storms, when the conveyance of surge is dominated by flow across the entire surface of the coastal lakes and marsh." Def's Ex. D at 9-1.

Hurricane Katrina was "an extraordinarily powerful and deadly hurricane that carved a wide swath of catastrophic damage . . ." across the coastal areas of Mississippi, Alabama and Louisiana. National Hurricane Center, Tropical Cyclone Report, Hurricane Katrina (Dec. 20, 2005), attached without tables as Defendant's Exhibit E at 1, 6. As it passed through the open

waters of the Gulf of Mexico, Hurricane Katrina was rated as a Category 5 storm on the Saffir-Simpson hurricane scale – the highest category into which a storm can be placed. Id. At the time Hurricane Katrina struck St. Bernard Parish, the storm was still a powerful "high-end Category 3 hurricane . . . ." Id. The "huge size" of Hurricane Katrina, its winds stretched out for 200 nautical miles from the storm's eye, id. at 3, and strength of the storm created a storm surge in St. Bernard Parish measuring between fifteen and nineteen feet high. Id. at 9-10. This surge was built up while the hurricane, then a Category 5, churned over the Gulf of Mexico and pushed waves of water westward where the water "set-up" against the Gulf Coast. Id. This "set up" of water led to the inundation of the marshlands that lie between Lake Borgne and St. Bernard Parish. Def's Ex. C at E-5. As discussed supra, this inundation of the "coastal lakes and marsh" minimizes any effect that the MRGO might have on flooding in the Parish. See Def's Ex. D at 9-1. Further, as the IPET report and the Louisiana DNR reports demonstrate, this surge primarily came from Lake Borgne and swept westerly across St. Bernard Parish and was not funneled into the Parish via the MRGO. See Def's Ex. C at E-5; Def's Ex. D.

## ARGUMENT

### I. SUMMARY OF ARGUMENT

All three counts of Plaintiffs' Complaint must be dismissed because, at most, Plaintiffs' claims sound in tort and are outside the jurisdiction of this Court. The Tucker Act, 28 U.S.C. § 1491(a), confers jurisdiction upon this Court to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." See LeBlanc v. United States, 50 F.3d

1025, 1028 (Fed. Cir. 1995) (discussing the Tucker Act). Accordingly, to the extent Plaintiffs' claims sound in tort, they must be dismissed. Id.

Plaintiffs' claims sound in tort and are outside the jurisdiction of this Court for two reasons. First, because the MRGO was not the likely cause of Plaintiffs' injuries and because Hurricane Katrina acted as an intervening cause between the Defendant's acts and the flooding of Plaintiffs' property, Plaintiffs cannot show that their injuries were the "direct, natural or probable result" of the construction, maintenance, operation, dredging and erosion of the MRGO. See Moden v. United States, 404 F.3d 1335, 1344 (Fed. Cir. 2005). Second, Plaintiffs' claims arise from a single flood and such injuries cannot give rise to takings liability. See Ridge Line, Inc. v. United States, 346 F.3d 1346, 1355 (Fed. Cir. 2003). Rather, such claims "occup[y] the category of mere consequential injury, or tort . . . ." Id. (quoting Barnes v. United States, 210 Cl. Ct. 467, 538 F.2d 865, 870 (1976)).

## II. STANDARD OF REVIEW

When considering a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), "the court must accept as true the complaint's undisputed factual allegations and construe the facts in the light most favorable to plaintiff." Figueroa v. United States, 57 Fed. Cl. 488, 492 (2003) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). If, however, a RCFC 12(b)(1) motion to dismiss challenges the factual basis for the court's jurisdiction, then the factual allegations in the complaint are not controlling, and the court may consider other evidence to resolve the dispute. Ferreiro v. United States, 350 F.3d 1318, 1324 (Fed. Cir. 2003); see also Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993) ("If the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the

movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction. In such a case, the allegations in the complaint are not controlling.”) (citations omitted).

Plaintiffs bear the burden of establishing subject matter jurisdiction, which must be done by a preponderance of the evidence. Entines v. United States, 39 Fed. Cl. 673, 678 (1997) (“Plaintiff bears the burden of establishing all jurisdictional requirements, including compliance with the six-year statute of limitations, and must do so by a preponderance of the evidence.”). “Conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss.” Bond v. United States, 47 Fed. Cl. 641, 647 (2000) (quoting Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981)).

Particularly relevant to this motion is the rule that a plaintiff's “legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness.” Westinghouse Elec. Corp. v. United States, 41 Fed. Cl. 229, 233 (1998) (internal quotations and citations omitted). Moreover, “[a]mbiguities regarding the existence of subject matter jurisdiction should be 'resolved against the assumption of jurisdiction.'” Taylor v. United States, 49 Fed. Cl. 598, 602 (2001) (quoting Mars Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1373 (Fed. Cir. 1994)).

## III. PLAINTIFFS’ CLAIMS SOUND IN TORT AND ARE OUTSIDE THIS COURT’S JURISDICTION

The Takings Clause of the Fifth Amendment provides, in relevant part, “nor shall private property be taken for public use, without just compensation.” U.S. Const. amend. V. A "taking" can occur directly through the exercise of the governmental power of Eminent Domain, United States v. 564.54 Acres of Land, 441 U.S. 506 (1979), or indirectly, when the government acts in a manner which causes an inverse condemnation, First English Evangelical Lutheran Church of

Glendale v. Los Angeles County, 482 U.S. 304, 315 (1987). Inverse condemnation, in turn, can occur by direct physical invasion (referred to as a 'physical taking'), United States v. Pewee Coal Co., 341 U.S. 114 (1951), or by virtue of the government's restriction on land use which goes "too far," referred to as a regulatory taking, Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922).

A physical taking occurs "when the government itself occupies the property or 'requires the landowner to submit to physical occupation of its land.'" Forest Properties v. United States, 177 F.3d 1360, 1364 (Fed. Cir. 1999). Plaintiffs have alleged a permanent or temporary physical taking of their property, or in the alternative, that the United States has taken a permanent flowage easement across that property. Compl. at ¶¶ 16, 19, 25.

As discussed supra, this Court is one of limited jurisdiction. If Plaintiffs' claims properly allege a Fifth Amendment takings claim, this Court may hear the case. Moden, 404 F.3d at 1342. If, however, Plaintiffs' Complaint raises only claims arising in tort, it must be dismissed. See id. The analysis used to determine whether a claim sounds in tort or, in fact, states a valid Fifth Amendment takings claim is comprised of two parts. Ridge Line, 346 F.3d at 1355. The first step in this analysis requires the Court to evaluate whether the flooding of Plaintiffs' property was "the direct, natural or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action. . . ." Id. The second step of this inquiry requires the Court to determine whether the alleged government action "appropriate[d] a benefit to the government at the expense of the property owner, or at least preempt[ed] the owner's right to enjoy his property for an extended period of time rather than merely inflict[ing] an injury that reduces its value." Id. at 1356. It is Plaintiffs' burden to establish that both of

these elements are met. Moden, 404 F.3d at 1342.

**A. The Flooding of Plaintiffs' Property Was Not the Direct, Natural or Probable Result of the Construction, Maintenance, Operation, Dredging or Erosion of the MRGO Because the MRGO Was Not the Likely Cause of the Flooding and Such Flooding Was Not Foreseeable**

Under the first prong of this two-part inquiry, the Court must determine whether the damage done to Plaintiffs' property by Hurricane Katrina's storm surge was the "direct, natural, or probable result" of the construction of the Project. Ridge Line, 346 F.3d at 1356. To meet this standard Plaintiffs must show not only that their injuries were in fact caused by Defendant's action, but also that Defendant "should have predicted or foreseen the resulting injury." Moden, 404 F.3d at 1343.

The first strand of the direct, natural and probable test requires "proof of causation – [i.e.,] that the government act was the likely cause of the injury." Banks v. United States, 69 Fed.Cl. 206, 212 (2006). Accordingly, "this court and the Court of Claims have denied recoveries in cases where the subject property was previously prone to natural flooding." Brace v. United States, 72 Fed.Cl. 337, 362 (2006) (discussing the direct, natural or probable requirement). See also Leeth v. United States, 22 Cl. Ct. 467, 485; Laughlin v. United States, 22 Cl. Ct. 85, 102 (1990); Bartz v. United States, 224 Ct.Cl. 583, 633 F.2d 571 (Ct. Cl. 1980).

In the present case, the causation requirement cannot be met because the sole cause of the alleged taking was a natural event, Hurricane Katrina. Plaintiffs have not alleged and cannot show that the United States or its agents had any control over or connection whatsoever to that event. In the takings cases with which this Court is familiar, any taking has been predicated upon situations where the government had some actual control over the flood waters that caused the damage complained of - either by impounding river flows, releasing water from federal

projects or by purposefully diverting water. See, e.g., United States v. Dickinson, 331 U.S. 745 (1947) (impoundment of water behind a federally constructed dam caused erosion on claimants' property); Baird v. United States, 5 Cl. Ct. 324 (1984) (operation of structures related to a federal dam alleged to have resulted in a taking). In the instant case, however, no such control or involvement of the federal government existed. Rather, the hurricane spawned a huge flood surge which swept over St. Bernard Parish. In fact, Plaintiffs merely allege that the hurricane pushed the surge through the MRGO. There is no allegation that any act of the United States contributed to that flooding event, nor could there be. The simple, undisputed fact is that the damage complained of by the Plaintiffs was not due to any act or omission of the United States or in any manner controllable by any action of the United States.

Further, it is indisputable that on several prior occasions, St. Bernard Parish has suffered repeated flooding from hurricane events. In 1915, 1947 and 1956, all dates well prior to the construction of the MRGO, St. Bernard Parish was flooded in the wake of three hurricanes. Graci v. United States, 435 F. Supp. 189, 193 (E.D. La. 1977). Additionally, in 1965, when the MRGO was almost fully completed and open to ship traffic, St. Bernard Parish was flooded in the wake of Hurricane Betsy. Id. In fact, the flooding brought by Hurricane Betsy spawned a lawsuit, Graci v. United States, in the United States District Court for the Eastern District of Louisiana. 435 F.Supp. at 190. In that case, the plaintiffs, residents of St. Bernard Parish, argued, just as they do here, that it was the negligent construction, operation and maintenance of the MRGO that caused the inundation of their property. Id. at 193. However, following a trial, the Graci court ruled that Hurricane Betsy and other local hydrological features, not the MRGO, were the cause of the parish's flooding in 1965. Id. at 196.

These facts lead to the inescapable conclusion that "direct" cause of the flooding of Plaintiffs' property in 2005 was a hurricane, just as it was in 1915, 1947, 1956 and 1965. The history of the area tells an obvious truth: even without the presence of the MRGO, St. Bernard Parish experienced floods during hurricanes. It follows that Plaintiffs have not, and cannot, show that the flooding of their property was directly caused by the construction of the MRGO. Banks v. United States, 69 Fed.Cl. at 212; Brace v. United States, 72 Fed.Cl. at 362.[3/] Accordingly, Plaintiffs cannot show that their claims are due treatment under takings law rather than tort law, or that the jurisdiction of this Court is appropriate. Ridge Line, 346 F.3d at 1356; Moden, 404 F.3d at 1342.

The second strand of the "direct, natural or probable" component of the tort-taking inquiry is aimed at determining whether Plaintiffs' injuries were foreseeable. Banks, 69 Fed.Cl. at 212. This strand requires Plaintiffs to prove "'that the government should have predicted or foreseen the resulting injury' – [i.e.,] that the injury was the likely result of the government act." Id. (quoting Moden, 404 F.3d at 1343). The Federal Circuit further advised in Moden that "injury may not be foreseeable if an intervening cause breaks the chain of causation." 404 F.3d at 1343.

The acts on which Plaintiffs base their claims are the construction, maintenance and operation and the concomitant erosion of the MRGO. Compl. at ¶¶ 12, 13. Even if there had

[3/]We specifically note that Plaintiffs do not make any effort to show how their particular properties were inundated or how they are located with regard to the MRGO. They merely claim that MRGO caused all the flooding in St. Bernard Parish, a claim which cannot be substantiated in this case. Accordingly, Plaintiffs' Complaint does not comply with RCFC 9(h)(7) which requires plaintiffs in inverse condemnation suits to identify the specific property interest they contend has been taken by the United States.

been some causal connection between the MRGO and the flooding, which as we have shown there is not, Plaintiffs must also show that it was foreseeable that these actions would cause the flooding of which Plaintiffs complain; or in other words, whether “the likely result” of the construction, maintenance, operation and erosion of the MRGO was the flooding of Plaintiffs' property. Banks, 69 Fed.Cl. at 212. However, if there was a cause intervening between Defendant's alleged acts and the flooding of their property, Plaintiffs' damages were not foreseeable. Moden, 404 F.3d at 1343.

In Moden, the Federal Circuit noted that a plaintiff's “injury may not be foreseeable if an intervening cause breaks the chain of causation.” 404 F.3d at 1343. An intervening cause is “[a]n event that comes between the initial event in a sequence and the end result . . . .” Black's Law Dictionary 234 (8th Ed. 2004). Generally, an intervening cause must be unforeseeable in order to cut off a defendant's potential liability. See, e.g., Napier v. F/V Deesie, Inc., 454 F.3d 61 (1st Cir. 2006); Grajales-Romero v. American Airlines, Inc., 194 F.3d 288 (1st Cir. 1999); Burt v. Makita USA, Inc., 212 F.Supp.2d 893 (N.D.Ind. 2002).

Plaintiffs do not contend that the MRGO, standing alone, caused the flooding of their property. Rather, Plaintiffs allege that the effects of Hurricane Katrina, when combined with the construction, maintenance, dredging and erosion of the MRGO, caused the storm's surge to enter their property. Compl. at ¶¶ 11, 13. Even though it is foreseeable that the Gulf Coast might be hit by a storm during any given hurricane season, a hurricane of the size and magnitude of Hurricane Katrina, with its nearly unprecedented size, wind velocity and tidal rise, and which resulted in massive devastation, cannot be considered foreseeable. Rather, it is a classic case of an "Act of God" which is not predictable or foreseeable. See Skandia Ins. Co.,

Ltd. v. Star Shipping AS, 173 F. Supp. 2d 1228, 1239 (S.D. Ala. 2001) ([T]he "Act of God" defense applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them.").

Hurricane Katrina was one of the largest and most powerful recorded storms ever to hit the United States. Def's Ex. E at 3. At the time it rolled across the Gulf of Mexico pushing a storm surge toward Louisiana, Hurricane Katrina was the fourth most intense storm ever recorded in the Atlantic Ocean. Def's Ex. E at 6. Additionally, the "massive storm surge produce by Katrina, even though it had weakened from Category 5 to Category 3 at landfall in Louisiana, can be generally explained by the huge size of the storm." Def's Ex. 6 at 9. Because Plaintiffs' damages were not the likely result of the construction, maintenance, operation or erosion of the MRGO, but were instead the likely result of Hurricane Katrina's almost unprecedented, unforeseeable and overwhelming intensity, size and resultant storm surge, Plaintiffs' damages were not foreseeable and were not the direct, natural or probable consequences of construction of the MRGO. Moden, 404 F.3d at 1342; Banks, 69 Fed.Cl. at 212. Rather, Hurricane Katrina was an unforeseeable intervening cause of Plaintiffs' flood damage, making Plaintiffs' alleged damages unforeseeable. It follows that, at the most, Plaintiffs' claims sound in tort, and therefore are not within the jurisdiction of this Court. Ridge Line, 346 F.3d at 1356.

**B. The Flooding of Plaintiffs' Property Is Not Inevitably Recurring**

The second prong of the tort versus taking inquiry "requires the court to consider whether the government's interference with any property rights of [plaintiffs] was substantial and frequent enough to rise to the level of a taking." Ridge Line, 346 F.3d at 1357. In Ridge Line,

the Federal Circuit noted that "[g]overnment-induced flooding not proved to be inevitably recurring occupies the category of mere consequential injury, or tort." Ridge Line, 436 F.3d at 1355 (quoting Barnes v. United States, 210 Cl. Ct. 467, 538 F.2d 865, 870 (1976)).

Since construction of the MRGO, St. Bernard Parish, the location of the property allegedly taken in this case, was flooded in 1965 by Hurricane Betsy and then forty years later by Hurricane Katrina in 2005. Compl. at ¶ 8; Graci, 435 F. Supp. 189. These indisputable facts do not rise to a level sufficient for Plaintiffs to maintain a takings claim. To the contrary, "'isolated invasions such as one or two floodings . . , do not make a taking . . . , but repeated invasions of the same type have often been held to result in an involuntary servitude." Ridge Line, 346 F.3d at 1357 (quoting Eyherabide v. United States, 170 Ct. Cl. 598, 345 F.2d 565, 569 (1965)). See also Singleton v. United States, 6 Cl.Ct. 156 (1984) ("It is settled that a single flood does not, . . . nor indeed one, two or three floods by themselves, . . . do not constitute a taking by inverse condemnation.") (citations omitted); Fromme v. United States, 412 F.2d 1192, 1197 (1969) (holding that a taking could not be found where the landowner could only show that the flooding of his land could "reasonably be expected to recur at intervals of about once in every 15 years, on the average."); North Counties Hydro-Electric Co. v. United States, 138 Ct.Cl. 380, 382-83, 151 F.Supp. 322, 323 (1957) ("two floodings, one ten years after the pool behind the dam was completely full, and the other nineteen years after, do not constitute a taking. . . ").

Plaintiffs cannot show that their property has been subjected to inevitably recurring flooding due to the construction, maintenance, operation and erosion of the MRGO. Rather, as noted supra, there was no substantial flooding of St. Bernard Parish between Hurricane Betsy in 1965 and Hurricane Katrina in 2005. Nor do plaintiffs otherwise allege. Compl. at ¶¶ 11 - 13,

21-15. This amounts to a total of two floods in the forty years that the MRGO has been open to shipping traffic. As noted above, for flooding to be the basis of a takings claim, such flooding must be shown to be inevitably recurring but even "two or three floods by themselves, . . . do not constitute a taking by inverse condemnation." Singleton, 6 Cl.Ct. at 163. Because the flooding of Plaintiffs' property is not inevitably recurring, their claims at most "occup[y] the category of mere consequential injury, or tort," and this Court has no jurisdiction to hear their Complaint. Ridge Line, 436 F.3d at 1355 (quoting Barnes v. United States, 538 F.2d at 870). It follows that dismissal pursuant to RCFC 12(b)(1) is appropriate. See Zoltek Corp. v. United States, 442 F.3d 1345, 1375 (Fed. Cir. 2006) (quoting Schillinger v. United States, 155 U.S. 163, 169 (1894)) ("cases sounding in tort are not cognizable in the court of claims.").

## CONCLUSION

Wherefore, for the reasons above stated, Defendant, the United States, requests that the First Amended Complaint herein be dismissed pursuant to RCFC 12 (b)(1) because this Court lacks jurisdiction over the subject matter of this case.

Dated: October 4, 2006.

Respectfully submitted,

**SUE ELLEN WOOLDRIDGE**
Assistant Attorney General
Environment and Natural Resources Division

s/ Fred Disheroon by Mark T. Romley
FRED R. DISHEROON, Special Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Fax: (202) 616-9667

.

Counsel for the Defendant.