IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROCCO TOMMASEO, et al. Plaintiffs | ) | |
| | ) | 1:05-cv-1119 SGB |
| V. | ) | Hon. Susan G. Braden |
| THE UNITED STATES Defendant | ) | |

**MOTION IN LIMINE (WITH INCORPORATED MEMORANDUM IN SUPPORT) TO EXCLUDE EXHIBITS ATTACHED TO DEFENDANT'S MOTION TO DISMISS, AND ALTERNATIVE MOTION FOR EVIDENTIARY HEARING**

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs Rocco Tommaseo, *et al.*, who hereby move this Honorable Court for an Order excluding all exhibits attached to the Defendant's Motion to Dismiss. The questioned documents are not authenticated, are not self-authenticating, are not relevant, and/or constitute inadmissible hearsay. Furthermore, the IPET Report cited by Defendant (and which defense counsel previously advised the Court would be defining document this case) has been criticized for focusing on legal conclusions and other Government attempts to avoid liability rather than reaching verifiable factual conclusions through the use of unbiased scientific analysis. The Defendant has no proper evidence in support of its Motion.

On 4 October 2006 the Government submitted a Motion to Dismiss under Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC). The Government attached five "exhibits" to that motion which purportedly attacked many of the factual statements made by the Plaintiffs in their First Amended Class Action Complaint. As demonstrated below, all of the

Government's exhibits are unauthenticated, not sworn, irrelevant, untrustworthy, contain improper legal conclusions and/or constitute inadmissible hearsay under the Federal Rules of Evidence. Consequently, Plaintiffs move, pursuant to this Motion *in Limine*, that all five exhibits be summarily excluded from this Honorable Court's determination of subject matter jurisdiction. Alternatively, Plaintiffs move for an evidentiary hearing to address these issues.[1]

**Applicable Evidentiary Standard**

When the Court of Federal Claims considers a motion to dismiss under RCFC 12(b)(1), it "must accept as true the complaint's undisputed factual allegations and construe the facts in the light most favorable to the plaintiff." *Figueroa v. United States*, 57 Fed. Cl. 488, 492 (2003), citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). When a RCFC 12(b)(1) motion to dismiss challenges the factual assertions that form the basis for the court's jurisdiction, then the trial court "*may* weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint." *Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed. Cir. 2003) (emphasis added).

When the Court of Federal Claims considers evidence presented by a defendant in a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court of Federal Claims has noted that the hearsay rules of the Federal Rules of Evidence must be applied in considering such evidence. *See Reliance Ins. Co. v. United States*, 23 Ct. Cl. 108, 113 (1991). When a defendant attacks the factual allegations in a complaint, the "facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court." *Cedars-Sinai Med. Ctr. v. United States*, 11 F.3d 1573, 1584 (Fed. Cir. 1993). Any such fact-finding must be guided by the Federal Rules of Evidence, otherwise "the court would be required

[1] RCFC Rule 12(d); *Commodities Export Co. v. U.S. Customs Serv.*, 888 F.2d 431 (6th Cir. 1989); *Palmer v. Hoffman*, 318 U.S 109 (1943).

to admit voluminous evidence having little or no probative value which could burden the record and confuse the issues." *Matthews v. Sec'y of the Dept. of Health & Human Servs.*, 18 Ct. Cl. 514, 521 (1989). In the context of a "factual attack" on a 12(b)(1) motion to dismiss, if the court considered hearsay evidence "[t]he court's job of sifting through such evidence to try to determine its trustworthiness and what, if any, weight to give it would become much more difficult and time consuming." *Id*.

An examination of each exhibit offered by Defendant United States shows that no admissible evidence is offered by the Movant.[2] For example, assuming that the Court found any of the proffered exhibits to be authenticated **and** to meet a hearsay exception, then the Court's analysis of the Government's proffered exhibits should then be focused upon the origin, nature and trustworthiness of the self-serving, unsworn reports prepared by the Movant itself, or hold that these items are simply generic background information which do nothing to refute the factual allegations made in the Plaintiffs' Amended Complaint. This Honorable Court should exclude all five proffered exhibits from consideration with the Government's Rule 12(b)(1) Motion to Dismiss.[3]

**Exhibit A**
**Map of New Orleans Elevation by Neighborhood with Major Roads**

Defendant's Exhibit A consists of a one page map of elevations in New Orleans and a portion of St. Bernard Parish. A notation on the bottom right of the exhibit sources the image to the Greater New Orleans Community Data Center (GNOCDC). The GNOCDC is a private, non-

[2] Even in situation where the Movant *attempts* to shift the burden of proof to the non-Movant, and assuming that those attempts are successful, "any doubts regarding factual issues [must resolve] in favor of the non-moving party" and the court must "draw all reasonable inferences in its [the non-Movant's] favor." *Cottrell v. United States*, 71 Fed. Cl. 559, 564 (2006) (Damich, C.J.). Consequently, even if this Motion is denied *in toto*, the Movant still needs to prove its case to the certain exclusion of recovery by the aggrieved party. *Id.*

[3] The challenge made here by the Defendant can in some instances be considered to actually be a Motion for Summary Judgment, which should not be "precipitously" granted. *Moden v. United States.*, 404 F.3d 1335, 1343 (Fed. Cir. 2005).

profit community organization.[4] Because it is a private entity, no information from the GNOCDC is entitled to the "Public Records and Reports" hearsay exception. Federal Rules of Evidence 803(8) ("FRE"). As the GNOCDC describes its website as the "most widely used source for information about New Orleans' 73 neighborhoods and the 10 surrounding parishes," the image could possibly be construed as falling in the hearsay exception for "Records of Regularly Conducted Activity" in FRE 803(6). However, there is no certification of authenticity by the custodian in compliance with FRE 902(11) as required by FRE 803(6). Even if the Government had provided the required custodial certification, because the GNOCDC compiles data from a number of sources, any evidence drawn from the GNOCDC website constitutes hearsay within hearsay.

Hearsay within hearsay is only admissible if "each part of the combined statements conforms with an exception to the hearsay rules." FRE 805. Even if the government reports on which the GNOCDC bases much of its evidence proved to be self-authenticating, the Government failed to provide any certification by the GNOCDC custodian to satisfy the authentication and double hearsay problems with the GNOCDC website and map.

Further, even if the GNOCDC map did conform to all the hearsay rules in the FRE, the map provides little relevant detail in the instant case and it should be excluded under FRE 402. Not only does the map fail to identify the Mississippi River-Gulf Outlet (MR-GO), it also fails to include the entire length of the MR-GO. The map merely *implies* that much of New Orleans and St. Bernard Parish flooded because they lie partially below sea level. It provides no information to resolve what the Defendant contends is the factual dispute about the role of the MR-GO in funneling hurricane storm surge into St. Bernard Parish and the Lower Ninth Ward.

Because Defendant's Exhibit A fails to meet any decent evidentiary standards, this Court

[4] Greater New Orleans Community Data Center, http://www.gnocdc.org (last visited October 23, 2006).

should exclude it and not consider it in the adjudication of this Motion.

**Exhibit B**
**Fiscal Year 2005, Annual Report of the Secretary of the Army of Civil Works Activities**

In Exhibit B, the ***Defendant cites itself*** and provides excerpts from the Fiscal Year 2005 Annual Report from the Secretary of the Army outlining certain activities related to the authorization, construction, and maintenance of the MR-GO, notwithstanding the obvious motive problems as suggested in *Palmer v. Hoffman*, *supra*. While the Defendant could continue to cite itself and argue that some of that report falls under the "Public Records and Reports" exception of FRE 803(8), the evidence is not certified by a written declaration "of its custodian or other qualified person" as required by FRE 902(11). As the title "Annual Report" refers more to a domestic record of regularly conducted activity under FRE 902(11) versus an official publication under FRE 902(5), the document is not self-authenticating and certification is required. That certification is lacking.

Assuming that the Annual Report meets a hearsay exception, the report bears little, if any relevance to the instant dispute. The report provides ancient information about the authorized dimensions of the MR-GO. Def's Ex. B at 11-2 -11-4. Aside from briefly mentioning "[c]oncerns about increased maintenance dredging costs and ecosystem deterioration," this newly manufactured report provides no current information about the size in August and September of 2005 (particularly the width and dredged depth) of the MR-GO, nor how the size has increased since the channel was first completed decades ago. Def's Ex. B at 11-2. Other than providing some basic information about the MR-GO's geography and its original authorized size, the report does not provide any information that disputes any factual allegations made in the Plaintiff's First Amended Class Action Complaint.[5] In fact, the report mentions the concerns

[5] Record Document 10.

that prompted a reevaluation study initiated in fiscal year 1999; a study that remained unfinished when Hurricane Katrina struck on 29 August 2005. The report is incomplete as it states the "impacts of MR-GO on storm surge…will need to be considered before continuing the reevaluation study." Def's Ex. B at 11-2-11-3. Rather than definitively disputing the allegations made in the Plaintiff's First Amended Class Action Complaint, Exhibit B provides outdated technical data and conclusions, which can neither be supported nor admitted.

Because Defendant's Exhibit B fails to pass evidentiary scrutiny and does not refute the factual claims made in the Plaintiff's First Amended Class Action Complaint, it should be excluded from consideration, *in toto.*

## Exhibit C
## Notes on the Influence of the Mississippi River Gulf Outlet on Hurricane Induced Storm Surge in New Orleans and Vicinity

The ***Defendant cites itself again***; Exhibit C consists of a twenty-one page report prepared by three named authors, two of whom are employed by the answerable party here, the U.S. Army Corps of Engineers. The Defendant could argue that this report is admissible under the "Public Records and Reports" exception of FRE 803(8), but that Rule provides that such records and reports may be inadmissible if "the sources of information or other circumstances indicate lack of trustworthiness." FRE 803(8)(C). ***This report was prepared after litigation in this matter began***. The Government is the defendant in this case. Naturally a Government employee or contractor working on this report after Plaintiffs filed suit[6] would be more likely to issue a Government-friendly opinion—namely, that the MR-GO did not funnel storm surge into St. Bernard Parish and substantial parts of New Orleans. While opinions and conclusions are not *per se* inadmissible, "a trial judge has the discretion, and indeed the obligation, to exclude an

[6] For example, one author of the report is Johannes Westerink, who the Government employs as an expert in various Hurricane Katrina-related claims against the United States. As Dr. Westerink's report is the unsworn writing of an advocate, FRE 803(8) does not apply.

entire report or portions thereof—whether narrow 'factual' statements or broader 'conclusions'—that she determines to be untrustworthy." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 (1988). This "report" is particularly problematic as it is not sworn or otherwise verified; it is, quite simply, not appropriate evidence to support the Defendant's fact-based attack.

In a recent opinion, the Court of Federal Claims observed, "[w]hen the expert witness has consulted numerous sources, and uses that information together, with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise." *Yankee Atomic Elec. Co. v. United States*, --Fed. Cl.--, 2006 WL 2848615, citing *United States v. Sims*, 514 F.2d 147, 149 (9th Cir. 1975). The key word here is ***testimony***, meaning the declarant is subject to an oath and cross-examination. While the authors of Exhibit C may have consulted sources and used their education and experience (which is not specified) to arrive at a conclusion, that conclusion is still unsworn and uncertified hearsay, and it should be disregarded by this Court.

**Legal Conclusions Prohibited**

A witness may not testify as to legal conclusions that will decide the case. *See, e.g.*, *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99-100 (1st Cir. 1997). Nor may he substitute for the court in explaining the law to the jury. *See, e.g.*, *Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir. 1992). Testimony as to legal conclusions, such as that contained in Defendant's "report," is impermissible. *Woods v. Lecureux*, 110 F.3d 1215, 1220-21 (6th Cir. 1997); *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997).

The Sixth Circuit uses the following test to determine whether an expert's testimony

embraces a legal conclusion or simply a factual one: "[t]he best resolution of this type of problem is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate." *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985). Defendant's unsworn report proffered as Exhibit C is exactly the sort of mischief to which the Sixth Circuit was referring in *Torres*.

The D.C. Circuit has adopted the *Torres* test. *Burkhart*, 112 F.3d at 1212-13 (D.C. Cir. 1997). "Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Id.* at 1213. Plaintiffs object in this regard as to Exhibits B, C and D, as use of the conclusions contained in these reports could ultimately usurp the roles of the judge and jury in applying that law to the facts before it. *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999). The legal conclusions contained in these reports are inadmissible.[7]

**Additional Problems**

While FRE 902(5) provides that certain "[b]ooks, pamphlets, or other publications purporting to be issued by public authority," are self-authenticating, the Government here is not functioning as the presumably **disinterested** "public authority," but rather ***as the Defendant*** in a civil action. As such, the report in Exhibit C does not constitute an "official publication." Because this report does not meet one of the self-authentication criteria of FRE 902, there is a statutory requirement that it be certified, but it is not.

---

[7] "[W]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's. When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination ... [T]his Court requires the exclusion of testimony which states a legal conclusion." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).

Given the release of Exhibit C (and Exhibits B and D) after the onset of this litigation, it calls into question whether the "evidence" presented in this self-authored report would satisfy the requirements of admissibility under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), or otherwise under Rules 702 and 705. While *Daubert* did not create a mandatory checklist, it did set out a number of common factors for determining the admissibility of scientific evidence, including whether the scientific knowledge has been or can be tested; whether the study has been subjected to peer review and publication, what the potential error rate is; and the extent to which the theories and techniques have been widely-accepted. *Id*. at 593-94. Although Exhibit C provides some detail that might allow others to re-test the results, the study lacks perceptible mention of any rate-of-error. Because Exhibit C is dated 21 February 2006, there has been relatively little time for others to conduct peer review of the study and its methodology, and it is quite possible that **it was commissioned to defend this case**.[8]

**None of the Movant's Evidence is Sworn**

As the Plaintiffs' Statement of Contested Material Facts and the accompanying **sworn** Declaration of Dr. Paul Kemp show, members of the scientific community have debated the effects of the MR-GO both before and after Hurricanes Katrina and Rita. Thus, it is far from clear that the results reached in Exhibit C by the Government's "in-house experts" constitute the generally accepted scientific conclusions on the effects of the MR-GO on wetlands destruction, storm surge and flooding.[9] Further, Defendants' report is not sworn, therefore it is not competent evidence for a dispositive motion. *See, e.g.*, *Caudillo ex rel. Caudillo v. Lubbock Indep. Sch. Dist.*, 311 F. Supp. 2d 550, 555, n. 2 (N.D. Tex. 2004) (holding that "documents are not proper summary judgment evidence before this Court" where they were "not sworn to, certified, or

---

[8] Something which obviously merits further inquiry at an evidentiary hearing

[9] *See* Third Report of the NAE/NRC Committee on New Orleans Regional Hurricane Protection Projects, attached as Exhibit 1.

attached to any affidavit swearing to or certifying the documents"); *cf. DeMars v. O'Flynn*, 287 F. Supp. 2d 230, 242 (W.D.N.Y. 2003) ("Unsworn statements are not sufficient to defeat a motion for summary judgment.").[10]

That the Government has provided inadmissible evidence which purportedly conflicts with the factual allegations in the Amended Complaint does not justify a dismissal of the case on a RCFC 12(b)(1) motion, nor does it shift the burden of proof.[11] Instead, this contest reaffirms the Plaintiffs' contentions that a dispute of material fact exists. Indeed, Defendant's attempted factual attack requires admissible evidence, and Defendant has offered none. Therefore, Defendant is in the uncomfortable and untenable position of supporting its Motion to Dismiss with nothing more than the factual allegations contained in Plaintiffs' Complaint.[12]

Because Exhibit C is self-serving, unsworn, uncertified, hearsay evidence that does not refute any of the relevant factual allegations made in the Plaintiff's First Amended Class Action Complaint, this evidence should be excluded from consideration.

**<u>Exhibit D</u>**
**The Direct Impact of the MR-GO on Hurricane Storm Surge**

Exhibit D has many of the problems noted above, plus several others. The Government's Exhibit D consists of a report prepared by URS (an industry-oriented environmental consulting company) under contract with the State of Louisiana, Department of Natural Resources. Because this report was prepared by a private entity and not a government agency, it is not entitled to the "Public Records and Reports" hearsay exception in FRE 803 (8).[13] URS had a contract with the State of Louisiana (the State), to prepare a report for the State, **which is also a Defendant in**

[10] *See also*, Rule 26, RCFC.
[11] *Moden*, 404 F.3d at 1341-42.
[12] The legal consequences of this scenario are fully detailed in the Plaintiffs' Memorandum in Opposition to the Motion to Dismiss, which is being filed subsequent to this Motion *in Limine*.
[13] *Brown v. Sierra Nevada Memorial Miners Hosp.*, 849 F. 2d 1186 (9th Cir. 1988); *Hawthorne Partners v. AT&T Technologies, Inc.*, 1994 WL 63054 (N.D. Ill.)

**many post-Katrina cases**. However, nothing in the report indicates that URS regularly prepares reports on the MR-GO or on the particular subjects of hurricane storm surge and wetlands degradation. Assuming that the report somehow met the "regularly conducted business activity" hearsay exception under FRE 803 (6), the report is certified by neither an affidavit, nor any other appropriate means, nor does the report provide the sworn details on the qualifications and experience of URS in preparing such reports. All of these elements are required by RCFC Rule 26.

Additionally, Exhibit D makes extensive use of a 2003 Corps of Engineers report, making a portion of Exhibit D hearsay-within-hearsay. FRE 805 requires each level of hearsay to meet an exception. Even if the 2003 Corps of Engineers' report somehow met one hearsay exception, the underlying hearsay problems of the URS report remain.

Furthermore, the 2003 Corps of Engineers study is untrustworthy and should not be admitted into evidence pursuant to FRE 803(8)(C). Courts evaluate the trustworthiness of a government report based on three criteria: "(1) the timeliness of an investigation; (2) the special skill or experience of the official; and (3) possible motivational problems." *Ellis v. Int'l Playtex, Inc.*, 745 F.2d 292, 300-01 (4th Cir. 1984). The 2003 Corps of Engineers study has problems in all three respects. First, the investigation took place after Hurricane Katrina, when the Corps of Engineers had already been named as a Defendant in numerous suits; therefore the timing of the investigation is suspect.

Second, the Corps of Engineers' report relied heavily on the "ADCIRC Grid," which was prepared by one of the report's authors Dr. Joannes Westerink of Notre Dame University. In other words, the Corps of Engineers "shopped" for their expert, and hired one based on the position it knew the expert would take (based on that author's past reports in the field), rather

than upon the expert's qualifications and expertise. The Corps of Engineers then relied on that expert's prior data to ensure that the report's results would benefit it in defending this suit and other like it. Finally, the Corps of Engineers has a conflict of interest in designing, maintaining and dredging the MR-GO and then investigating what went wrong. The Defendant has a clear motivation to ensure that no blame is assigned to it.[14] The Corps simply cannot rely on its own exculpatory report.

Because Exhibit D makes use of an uncertified, unsworn, untrustworthy report based on evidence prepared by the Defendant as co-author in a self-serving report, this evidence should be further excluded from consideration.

**<u>Exhibit E</u>**
**Tropical Cyclone Report, Hurricane Katrina**

Regarding Exhibit E, the Government will likely argue that the Tropical Cyclone Report prepared by the National Hurricane Center falls under the "Public Reports and Records" hearsay exception of FRE 803(8). Admittedly, the National Hurricane Center's duties likely include preparing reports on hurricanes and other tropical weather events. Nevertheless, the Exhibit does not appear to qualify as a self-authenticating book, pamphlet or "other publication purporting to be issued by public authority." FRE 902(5). Rather, Exhibit E appears to be as it is titled, a report, one that is updated with new information. Def's Ex. E at 1. That process of updating adds to the sense that Exhibit E would not be covered by a hearsay exception (such as the "Public Reports and Records" exception of 803(8)). FRE 902(11) requires certification for such items, too. Exhibit E contains no certification of authenticity by affidavit or any other means, and it is prepared by an agency of Defendant (further raising questions about its trustworthiness).

[14] The Corps' motivation in this regard is currently the subject of pending discovery in this case with respect to the "liability disclaimer" prominently featured in the Motion to Compel, Rec. Doc. 20. The IPET Report has been roundly criticized for venturing into such legal conclusions. *See* Third Report of the NAE/NRC Committee on New Orleans Regional Hurricane Protection Projects, copy attached as Exhibit 1.

As with Exhibits A and B, Exhibit E provides only general background information. It does not directly address the Plaintiffs' contention that the MR-GO funneled storm surge into St. Bernard Parish and the Lower Ninth Ward. Much of the information included in Exhibit E covers material unrelated to the Plaintiffs' claims. Statistics cited (such as the fact that Hurricane Katrina spawned a total of forty-three tornadoes), neither bear relevance in the present litigation, nor do they refute the factual allegations made in Plaintiffs' Amended Complaint. Def's Ex. E at 10. The Government's purpose in presenting this evidence seems to be to suggest that Hurricane Katrina was a very powerful hurricane, so what could they do? Whatever its purpose, the putative evidence offered as Exhibit E does not seriously challenge or directly address any of the factual allegations made in Plaintiffs' amended complaint relating to widening of the channel, loss of wetlands, and storm surge related to the MR-GO. Consequently, it bears no relevance to these proceedings and should be excluded under FRE 402.

Because Exhibit E consists of uncertified hearsay evidence, concerning generic subject matter that fails to directly refute Plaintiffs' claims, the evidence should be excluded from consideration.

**Conclusion**

In the exhibits attached to its Motion to Dismiss under RCFC 12(b)(1), the Government makes repeated use of uncertified, inadmissible hearsay evidence, none of which is sworn. Even if part or all of the evidence met a hearsay exception, the evidence is unauthenticated, self-serving (self-authored), and/or irrelevant to the current proceedings. For the above reasons, the Plaintiff respectfully requests that this Honorable Court exclude Exhibits A through E attached to the Government's Motion to Dismiss. Alternatively, Plaintiffs seek an evidentiary hearing as to the proffered exhibits.

Respectfully submitted this 2nd day of November, 2006.

s/ Stephen M. Wiles
F. Gerald Maples, T.A. (# 25960)
Stephen M. Wiles (# 17865)
Carlos A. Zelaya, II (# 22900)
F. GERALD MAPLES, P.A.
902 Julia Street
New Orleans, LA 70113
Telephone: (504) 569-8732
Facsimile: (504) 525-6932

-and-

J. Wayne Mumphrey (# 9824)
MUMPHREY LAW FIRM, LLC
109- A Smart Place
Slidell, LA 70458
Telephone: (985) 649-0709
Facsimile: (985) 649-5706

-and-

John H. Musser, IV (# 9863)
201 St. Charles Avenue
Suite 2535
New Orleans, LA 70170
Telephone: (504) 566-1218
Facsimile: (504) 566-7185

**COUNSEL FOR PLAINTIFFS**
Rocco Tommaseo, *et al.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing has been served upon all counsel of record via facsimile transmission and pursuant to electronic noticing on this 2nd day of November, 2006.

s/ Stephen M. Wiles
Stephen M. Wiles