IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROCCO TOMMASEO, *et al.* Plaintiffs | ) | |
| V. | ) | 1:05-cv-1119 SGB Hon. Susan G. Braden |
| THE UNITED STATES Defendant | ) | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S RULE 12 (b)(1) MOTION TO DISMISS**

**MAY IT PLEASE THE COURT**:

This Court indicated to all counsel of record in several telephone conferences that, should a factual dispute arise with regard to Defendant's moving papers, the Court will have no choice but to proceed to discovery. Notwithstanding this fair notice by the Court, the Defendant has attempted to refute factual *allegations* set forth in the Plaintiffs' Complaint. Plaintiffs, on the other hand, remembering the promise of the Court, have filed several pleadings addressing these issues. Plaintiffs are filing all of these pleadings today, along with the instant opposition memorandum. A brief recitation of these other filings, and their import, is in order.

First, Plaintiffs are filing a Motion *in Limine* which seeks to exclude the putative "evidence" offered by Defendant with its moving papers. The Motion *in Limine* demonstrates that the Defendant has not discharged its duty as the Movant, especially as the Defendant has not offered any evidence which is admissible in a Rule 12 proceeding, a Rule 56 proceeding, or for any other imaginable purpose. Consequently, the Defendant has not carried its burden of proof with respect to its dispositive motion.

Second, the undersigned counsel is filing a Declaration pursuant to Rule 56(f) of the Rules of the United States Court of Federal Claims. That Declaration submits that, if the Court converts this Motion into one requiring resolution of disputed facts—whether through a "factual attack Rule 12 Motion," or by conversion to a Rule 56 Motion for Summary Judgment—Plaintiffs will need to obtain abundant and specific discovery from the Defendant, certain of its agencies (such as the United States Army Corps of Engineers), as well other entities and other individual witnesses. That discovery is fully detailed and specified in the aforementioned Rule 56(f) Declaration of counsel.

Third, Plaintiffs are filing a Statement of Contested Material Facts in Opposition to this dispositive motion, demonstrating the many factors which pretermit summary adjudication of the Government's Motion. Attached to that Statement of Contested Material Facts are:

a. The sworn Declaration and expert opinion of Dr. Paul Kemp of the LSU Hurricane Center, which details evidence in support of every element required to prove this inverse condemnation case, including notice to the Defendant of the imminent takings via the MR-GO;

b. The sworn Declaration of Edward Robin, Sr., an eyewitness to the storm surge and inundation coming directly from the MR-GO onto his property in St. Bernard Parish, which suddenly required the then 79 year old Mr. Robin to swim for his life;

c. The sworn Declaration of Officer Gelvin, of the Lake Borgne Levee District, also discussing the repeat flooding caused by the MR-GO; and

d. The sworn declaration of Brad Robin, describing the wetlands degradation and repeat flood events directly occasioned by the MR-GO.

These filings completely refute each and every allegation contained in Defendant's moving papers. Given the Court's previous advices in this regard, Plaintiffs move that the Motion to Dismiss be denied.

**Procedural Posture**

The Defendant in this Fifth Amendment takings litigation has moved to dismiss Plaintiffs' First Amended Class Action Complaint; Defendant moves for dismissal in this matter pursuant to Rule12(b)(1) of the Rules of the United States Court of Federal Claims. To oppose this Motion, the Plaintiffs, Rocco Tommaseo, *et al.*, as well as the putative class members, are filing the previously noted pleadings, sworn declarations and other evidence into the record to demonstrate that Defendant has not shifted the burden of proof back to Plaintiffs, notwithstanding Defendant's statement that it mounts a "factual attack" upon the jurisdictional allegations.[1] Movant offers no competent evidence to shift the ordinary Rule 12 burdens.[2] As Defendant has no competent evidence to refute the allegations set forth in the Complaint, the Rule 12 Motion of Defendant must fail, as previously warned by this Court.

**Factual Disputes = Conversion to Rule 56?**

Although the "evidence" offered by Defendant in its moving papers is certainly not competent for use in a Rule 12, Rule 56 or trial situation, out of an abundance of caution Plaintiffs have prepared the aforementioned Statement of Contested Material Facts, replete with sworn supporting evidence (in form which is acceptable under either a Rule 12 or a Rule 56 analysis).[3] Consequently, the Court's standard of analysis, especially if it disregards the "evidence" proffered by Movants, requires only an examination the First Amended Class Action Complaint to determine if jurisdiction is properly alleged. Alternatively, if the Court converts this into a Rule 56 Motion (a Motion which the Court in previous telephone conferences has indicated it would summarily deny if there were factual disputes), the existence of numerous factual disputes with regard to virtually all

---

[1] Plaintiffs' filing is akin to a Rule 56 (h)(2) Statement, but it is slightly different given the procedural posture created by the Defendant's unusual Motion.

[2] *See Figueroa v. United States*, 57 Fed. Cl. 488, 492 (2003).

[3] Where both the Movant and the opposing party go outside of the pleadings with respect to a Motion to Dismiss, this can convert the Motion into a Rule 56 Motion. *Figueroa*, 57 Fed. Cl. at 504.

material issues in this case requires that the Rule 56 Motion be denied. *Cottrell v. United States*, 71 Fed. Cl. 559, 564 (2006).

## The Truth

The recitations set forth in the First Amended Class Action Complaint clearly demonstrate that a Fifth Amendment taking has occurred as a result of the repeat flood events occasioned by the MR-GO in the wakes of Hurricane Katrina (29 August 2005) and Hurricane Rita (23 September 2005, on her way to landfall further west the following day). The storm surges of these two hurricanes were funneled into St. Bernard Parish and the Lower Ninth Ward via the MR-GO, which is a federal navigational project. This MR-GO was originally authorized in 1956 as a moderate-sized shipping channel, but in the fifty years since authorization it has grown to several times its original size and is so large that it is now known as "Storm Surge Alley."[4] Although Movant prefers to refer to the MR-GO as a 650 foot-wide navigational canal, by the 21st Century the MR-GO had blossomed into a massive waterway more than three times the original authorized width, with concomitant increases in its ability to funnel storm surge and capacity to generate horrific consequences for nearby property owners.[5]

The Government's Motion seeks to ignore the fifty year-long transformation of the MR-GO, and seeks to analyze the allegations of this suit through the window of the litigation which arose out of the flooding attendant to Hurricane Betsy in 1965. In other words, the Government would have this Court make a decision based on fifty year-old facts and forty year-old case law, neither of which has anything to do with the facts and law as they stand today. That is clearly in error.

## Recurrent Flooding

As fully demonstrated by the Declarations of Brad Robin, Edward Robin, Sr. and Dr. Kemp, St. Bernard Parish was flooded subsequent to Hurricane Katrina by the storm surge attendant to Hurricane Rita (when she passed Southeastern Louisiana), and again this year by much more minor weather events. Given these facts, and the recurring nature of the flooding on Plaintiffs' property, the Amended Complaint clearly states a taking claim which is recoverable in this Court.[6] Frankly, Hurricane Rita's repeat flooding proves that the Government's construction, design, maintenance and continued dredging of the MR-GO constitutes a taking, which manifested for the first time on 29 August 2005 during Hurricane Katrina. Additionally, the evidence on record shows that the recent progression of the MR-GO's effects have caused far more regular flooding over these lands than suggested by the Government in its moving papers.

**The MR-GO is a Vastly-Different Body of Water Today than that Which Defendant Authorized in 1956 and Which Existed in 1965**

As demonstrated by the foregoing evidence, the Corps' dredging activity, and the other conduct of Defendant with respect to the MR-GO (previous to 29 August 2005), **at worst** created a pathway for the MR-GO to completely take St. Bernard Parish, or **at best** created a flowage easement over the Plaintiffs' property. Either way, a takings claim is properly stated.[7]

**The storm surge traveled up the MR-GO**

The Government claims in its Moving papers that the storm surge did not travel up the MR-GO and flood St. Bernard Parish. However, that is exactly what happened during both Hurricanes Katrina and Rita. These are classic recurrent flood events. The evidence provided by Dr. Kemp in his sworn expert Declaration, as well as the Declarations of Edward Robin, Sr. and Russell Gelvin,

---

[4] *See* Ivor Van Heerden, The Storm 81 (Viking 2006).
[5] *See* Declarations attached to the Statement of Contested Material Facts, filed separately today.
[6] The Defendant's averment that this is a tort, and therefore *cannot* be a taking, is wrong. *See Moden v. United States*, 404 F.3d 1335, 1339 (Fed. Cir. 2005).
[7] An excellent discussion of a flowage easement is found in the case of *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1357 (Fed. Cir. 2003).

Jr., prove that the existence of the MR-GO was a direct and proximate cause of the flooding of Plaintiffs' lands.

**The Flooding Occasioned Through, and Because of the MR-GO, is a Direct, Natural and Probable Consequence of at Least Three Factors**

As fully verified in the declaration of Dr. Paul Kemp, which declaration was prepared in connection with the FTCA claims pending in New Orleans brought in respect of the MR-GO (*Robinson v. United States*, Civil Action No. 06-2268 (E.D. La. 2006)), there are a multitude of pathways by which the inundation occurred at the time of Hurricane Katrina. Such flooding is certain to repeat in the future whenever a tropical storm passes over or near the MR-GO, and the flooding will have the same effects upon the properties which are the subject of this suit, *viz.* St. Bernard Parish and the Lower Ninth Ward of New Orleans. These will be addressed *in seratim*.

**The Funnel Effect**

This effect is best described by Dr. Paul Kemp, an expert in coastal hydrology and geology.[8]

> "While the Army Corps intended the MR-GO to be a navigational shortcut for cargo ships and other vessels, what it **actually built was an excellent storm surge delivery system** that magnifies the load potential for hurricane generated storm surge. The MR-GO is a conduit into the heart of Greater New Orleans for surge that built up in Lake Borgne."[9]

Essentially, the confluence of Reach Two of the MR-GO and the GIWW (better known as the Industrial Canal) have created a "man-made hurricane storm surge accelerator,"[10] especially as the merger of those two bodies of water now has a cross-section of nearly twelve times that which was authorized by Congress in 1956.[11] Once again, Dr. Kemp's words are telling: "This efficient conduit has the potential to magnify exponentially hurricane-generated storm surge entering the

[8] Declaration of Dr. Paul Kemp (August 17, 2006) (attached as Exhibit 1).
[9] *Id.* ¶ 11 (emphasis added).
[10] *Id.* ¶ 12.

Industrial Canal by 20-40% when that storm surge is delivered off of Lake Borgne, which lies just to the funnel's east."[12] Consequently, storm surge water which entered the MR-GO is "[p]ushed and focused into the funnel [and] tends to pile up and increases in velocity."[13]

Restated simply, the MR-GO, as it actually exists—*i.e.*, not as it existed in 1956, which is how the Government describes it in its Motion to Dismiss—is a storm surge intensifier. Its design, combined with decades of dredging by the United States Army Corps of Engineers which has exacerbated the problem, guarantees that any tropical storm or hurricane which passes within the vicinity of the MR-GO will cause water to surge through the MR-GO and into St. Bernard Parish and the Lower Ninth Ward, flooding those lands time and time again. This is a classic recurring flood event which certainly rises to the level of a Fifth Amendment Taking.[14] Absent the MR-GO's efficient storm surge delivery system, the catastrophic inundation and destruction of the Plaintiffs' property would not have occurred.[15]

**MR-GO Destroys the Wetlands, Which are the Natural Storm Surge Buffers**

The wetlands and marshes surrounding the MR-GO would have formed a natural buffer against storm surges to protect the Plaintiffs' property from the ravaging effects of Katrina, and even those of Hurricane Rita, which was simply passing through. However, Nature's protection was destroyed by the placement of the MR-GO, and especially its continued modification, via dredging and other activity, such that it is now a monstrous waterway (much larger than the Panama Canal) which daily consumes the wetlands which previously protected St. Bernard Parish and the Lower

---

[11] *Id.*
[12] *Id.*
[13] *Id.* ¶ 13.
[14] It is noteworthy that the Lake Borgne surge, which was delivered by the MR-GO funnel, added an additional 3 feet to Katrina's storm surge. The flow from the funnel also prolonged the period of high water by bringing it in earlier. Both of these outcomes resulted from the joinder of the MR-GO and the GIWW, and especially the design and construction of the MR-GO, all of which created and intensified the storm surges to cause the catastrophic inundation and destruction to the Plaintiffs' property during Hurricanes Katrina and Rita. *Id.* ¶ 17.
[15] *Id.* ¶ 19.

Ninth Ward.[16] In fact, when the MR-GO was completed in 1968, she had an authorized, and actual, surface width of 650 feet. However, as she sat at the time of Hurricane Katrina's arrival in 2005, it had grown three-fold to more than 2,000 feet across.[17] The Defendant's constant, extensive and intrusive dredging of the MR-GO as recently as last year (which is specifically averred in the Amended Complaint as being one of the activities which has resulted in the various takings), is an on-going and continuing ecological disaster.[18] More importantly for the purposes of this litigation, it guarantees repeat flood events, such that this is either a permanent taking of the Plaintiffs' lands, or at best, a horrific flowage easement. This wetlands destruction resulting from the activities of the United States in respect of the MR-GO make recurrent flood events a certainty.[19]

**Additional Impacts upon St. Bernard Parish and the Lower Ninth Ward**

The MR-GO's construction, maintenance and dredging has been particularly problematic for St. Bernard Parish and the Lower Ninth Ward, as this also contributed to the loss of wetlands near neighboring Lake Borgne. This has created yet another storm surge delivery pathway into the Plaintiffs' property. As those wetlands have been destroyed by the MR-GO's construction and maintenance, there has been a concomitant increase of storm surge into St. Bernard Parish.[20] The words of Dr. Kemp are quite telling here: "If the MR-GO had not destroyed the natural environment around it, Nature's defenses would have battled Katrina quite effectively. By destroying the natural balance, however, the MR-GO became a lethal weapon of destruction at the hands of Katrina."[21] Clearly then, the MR-GO created a third pathway, or avenue of attack upon St. Bernard Parish, through this "open backdoor" for hurricane storm surge leading directly into the Lower Ninth Ward

[16] *Id.* ¶¶ 20-23.
[17] *Id.* ¶ 24.
[18] *See, e.g.*, Close the Mississippi River Gulf Outlet Now!, MRGO History, *available at* http://www.ccmrgo.org/ (last visited Nov. 2, 2006) (attached as Exhibit 2).
[19] Declaration of Dr. Paul Kemp ¶ 25 (August 17, 2006) (attached as Exhibit 1).
[20] *Id.* ¶¶ 28-29.
[21] *Id.* ¶ 30.

and St. Bernard Parish."[22]

The foregoing evidence makes it clear that the MR-GO causes or contributes to these recurring flood events in multiple ways. Multiple pathways exist for these repetitive takings, all arising out of the Government's MR-GO project, such that the Motion to Dismiss brought by the Government should be denied.

**Conclusion**

A takings claim has been clearly stated and the Government's Motion should be dismissed. The Defendant ignored the fair warnings previously offered by the court and has created a situation where it has either failed to shift the burden of proof back to the Plaintiffs, or the Defendant has shifted the burden but must lose because of the material facts disputed by the sworn and competent evidence filed into the record by Plaintiffs. In either case, the Defendant's Motion should be rejected, and the Court should rule on the pending Motion to Compel.

Respectfully submitted this 2nd day of November, 2006.

s/ Stephen M. Wiles_____________
F. Gerald Maples, T.A. (# 25960)
Stephen M. Wiles (# 17865)
Carlos A. Zelaya, II (# 22900)
F. G. MAPLES, P.A.
902 Julia Street
New Orleans, LA 70113
Telephone: (504) 569-8732
Facsimile: (504) 525-6932

-and-
J. Wayne Mumphrey (# 9824)
MUMPHREY LAW FIRM, LLC
9061 West Judge Perez Drive
Chalmette, LA 70043
Telephone: (504) 277-8989

-and-

[22] *Id.* ¶¶ 31-32.

John H. Musser, IV (# 9863)
201 St. Charles Avenue
Suite 2535
New Orleans, LA 70170
Telephone: (504) 566-1218
Facsimile: (504) 566-7185

**COUNSEL FOR PLAINTIFFS**
Rocco Tommaseo, *et al.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above and foregoing has been served upon all counsel of record via facsimile transmission on this 2nd day of November, 2006.

s/ Stephen M. Wiles
Stephen M. Wiles