IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROCCO TOMMASEO, and<br>THOMAS TOMMASEO, and<br>ROCKY AND CARLO, INC., and<br>STEVEN BORDELON, husband of,<br>and CYNTHIA BORDELON and,<br>STEVE'S MOBILE HOME & R.V. REPAIR,<br>INC.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 05-1119L<br><br>Hon. Susan G. Braden |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**


**SUE ELLEN WOOLDRIDGE**
Assistant Attorney General
Environment and Natural Resources Division

FRED R. DISHEROON, Special Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Fax: (202) 616-9667

Counsel for the Defendant.

# TABLE OF CONTENTS


I. Defendant's Reply In Support of Its Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Plaintiffs Opposition Provides No Support For A Claim That the Plaintiffs' Injuries Were the Direct, Natural or Probable Result of the MRGO or That Any Invasion of Their Property Interests is Inevitably Recurring . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1. The Complaint Fails to Meet the Direct, Natural and Probable Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2. Any Governmental Interference Was Not Substantial or Frequent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. Response to Plaintiffs' Motion in Limine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A. If Offered, Defendant's Exhibits Would Be Admissible Into Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B. Defendant's Motion to Dismiss Pursuant to RCFC 12(b)(1) Was Properly Supported By Attached Exhibits and Appropriate Under Applicable Case Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

Alost v. United States,
Case No. 032377L, 2006 WL 3094126 15 (Fed. Cl. Sept. 5, 2006) . . . . . . . . . . . . . . . . . 2

Banks v. United States,
69 Fed. Cl. 206 212 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Barnes v. United States,
210 Cl. Ct. 467, 538 F.2d 865 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

Barrett v. Nicholson,
466 F.3d 1038 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Briscoe v. LaHue,
663 F.2d 713 (7th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bond v. United States,
47 Fed. Cl. 641 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Brace v. United States,
72 Fed.Cl. 337 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cedars-Sinai Med. Ctr. v. Watkins,
11 F.3d 1573 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Entines v. United States,
39 Fed. Cl. 673 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Eyherabide v. United States,
170 Ct. Cl. 598, 345 F.2d 565 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Ferreiro v. United States,
350 F.3d 1318 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

Figueroa v. United States,
57 Fed. Cl. 488 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Graci v. United States,
435 F. Supp. 189 (E.D. La. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

Hendricks v. United States,
14 Cl.Ct. 143 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Mars Inc. v. Kabushiki-Kaisha Nippon Conclux,
24 F.3d 1368 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Moden v. United States,
404 F.3d 1335 (Fed.Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 7

Pacific Gas & Elec. Co. v. United States,
Nos. 0474C, 0475C, 2006 WL 2925649 102 (Fed. Cl. Oct. 13, 2006) . . . . . . . . . . . . . . . . 9

Ridge Line, Inc. v. United States,
346 F.3d 1346 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7

Scheuer v. Rhodes,
416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Taylor v. United States,
49 Fed. Cl. 598 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Tritek Technologies, Inc. v. United States,
67 Fed.Cl. 727 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Yankee Atomic Elec. Co. United States, No. 98-126C,
2004 US 2450874 6 (Fed. Cl. Sept. 17, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROCCO TOMMASEO, and<br>THOMAS TOMMASEO, and<br>ROCKY AND CARLO, INC., and<br>STEVEN BORDELON, husband of,<br>and CYNTHIA BORDELON and,<br>STEVE'S MOBILE HOME & R.V. REPAIR,<br>INC.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 05-1119L<br><br>Hon. Susan G. Braden |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND RESPONSE TO PLAINTIFFS' MOTION IN LIMINE**

Defendant, United States of America, hereby submits its Reply Memorandum in Support of Defendant's Motion to Dismiss Plaintiffs' Complaint and in Response to Plaintiffs' Motion in Limine. Defendant respectfully submits that this Court must dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") because all three counts of Plaintiffs' Complaint, at most, sound in tort.

On October 4, 2006, Defendant filed its Motion to Dismiss Plaintiffs' Complaint ("Def's Mot.") pursuant to RCFC 12(b)(1). Docket No. 27. On November 2, 2006, Plaintiffs filed their Opposition to Defendant's Motion to Dismiss ("Pltfs' Opp."), Docket No. 32, along with a RCFC 56(f) Declaration, A Motion in Limine ("Pltfs' Mot. in Limine") and a Statement of Contested Facts. Docket Nos. 29, 30, 31. Defendant will respond to all of those filings in this

Reply. Defendant further submits that Plaintiffs' purported RCFC 56 filings are inappropriate in connection with this motion which was brought under Rule 12(b)(1) and should be stricken from the record. Further, we respectfully note that Plaintiffs' Motion in Limine is little more than a diversion designed to draw the Court's attention away from the fact that in their Opposition, Plaintiffs did little to respond to, or refute, Defendant's legal contentions that the claims set forth in the Complaint are beyond the jurisdiction of this Court.

## I. Defendant's Reply In Support of Its Motion to Dismiss

### A. Plaintiffs Opposition Provides No Support For A Claim That the Plaintiffs' Injuries Were the Direct, Natural or Probable Result of the MRGO or That Any Invasion of Their Property Interests is Inevitably Recurring.

In Alost v. United States, No. 03-2377L, 2006 WL 3094126, at *15 (Fed. Cl. Sept. 5, 2006), the criteria for establishing a takings claim under the Fifth Amendment to the U.S. Constitution were succinctly set forth:

> A plaintiff seeking to establish a government taking of an easement by flooding must demonstrate not only that the flooding is intermittent, frequent, and inevitably recurring, Barnes v. United States, 538 F.2d 865, 870 (Ct.Cl.1975), it must also demonstrate that there was a "governmental act, the natural and probable consequences of which effect such an enduring invasion of the plaintiffs' property as to satisfy all other elements of a compensable taking." Id. at 871. See also Cooper v. United States, 37 Fed. Cl. 28, 36 (1996). In other words, "[p]laintiffs bear the burden of demonstrating by a preponderance of the evidence, i.e., that degree of proof which is more probable than not, that the operation of the [Project] was the direct and proximate cause of the prolonged flooding of their property." Hendricks v. United States, 14 Cl.Ct. 143, 148 (1997)[sic]. Moreover, a "landowner [is] not entitled to recover for a Fifth Amendment taking where the intermittent flooding of his land was not increased in elevation, frequency and duration as a result of the governments project". Bistline v. United States, 640 F.2d 1270, 1275 (Ct. Cl. 1981). In other words, the plaintiffs must demonstrate by a preponderance of the evidence that the Project directly and proximately caused more frequent flooding or flooding of a longer duration than that which occurred prior to the Project.

Each of these criteria were addressed in Defendant's opening brief and are further addresses

herein.

1. The Complaint Fails to Meet the Direct, Natural and Probable Test.

As discussed in our opening brief, the direct, natural or probable test requires Plaintiffs to demonstrate, among other elements, that their injuries were in fact caused by a specific action of Defendant or its agencies. Moden v. United States, 404 F.3d 1335, 1343 (Fed.Cir. 2005). This amounts to a requirement that the Plaintiffs show "that the government act was the likely cause of the injury." Banks v. United States, 69 Fed. Cl. 206, 212 (2006). Two factors, neither of which have been rebutted by Plaintiffs in their Opposition, militate against a claim that the Mississippi Rover Gulf Outlet ("MRGO") was the likely cause of Plaintiffs' damages. First, Plaintiffs cannot show that the flooding of their property was caused by Defendant's actions. Rather, every allegation by Plaintiffs in their Complaint and in their submissions of November 2 depends upon the occurrence of a hurricane, a natural event not under the control of the Defendant, to push flood waters from Lake Borgne or the Gulf of Mexico across the MRGO and into St. Bernard Parish.[1/] See Pltfs' Opp. at 6-9; Pltfs' Ex. 1 (Declaration of Dr. Paul Kemp) at ¶¶ 8-19.

Second, the flooding history of St. Bernard Parish refutes a claim that the MRGO was the likely cause of Plaintiffs' damages. Because Plaintiffs must show that a government action is the likely cause of their injuries "this court and the Court of Claims have denied recoveries in cases

---

[1/] Even if accepted by the Court, the declarations of Edward Robin, Sr. and Brad Robin do not change this result. Plaintiffs' reliance on damage to the Yscloskey, Louisiana, area is misplaced as Yscloskey is outside of, and unprotected by, the federal hurricane protection levee, thereby being exposed to the full force of storm surge and wind driven waters. Accordingly, comparing the flooding that occurs in that part of lower St. Bernard Parish to that which occurs in the upper, fully protected part of the parish, where the named Plaintiffs' properties are located, is of little use.

where the subject property was previously prone to natural flooding." Brace v. United States, 72 Fed.Cl. 337, 362 (2006) (discussing the direct, natural or probable requirement). It is undeniable that the flooding associated with Hurricanes Katrina and Rita was not the first hurricane-driven flood experienced in St. Bernard Parish. In fact, prior to the construction of the MRGO St. Bernard Parish was flooded by hurricanes in 1915, 1947 and 1956. Graci v. United States, 435 F. Supp. 189, 193 (E.D. La. 1977). The parish was also flooded in 1965, by Hurricane Betsy, but the United States District Court for the Eastern District of Louisiana found that the MRGO did not contribute to that flooding. Id. at 190, 196. Plaintiffs' Opposition does not, and cannot, rebut these facts. The flooding of St. Bernard Parish in the past reveals an obvious truth: even without the presence of the MRGO, St. Bernard Parish naturally experienced floods during hurricanes. It follows that Plaintiffs have not, and cannot, show that the flooding of their property was likely, much less directly, caused by the construction of the MRGO. Banks v. United States, 69 Fed.Cl. at 212; Brace, 72 Fed.Cl. at 362.

Further Plaintiffs have totally failed to demonstrate that the United States Army Corps of Engineers ("Corps") had, or could have had, any control whatsoever over the winds and storm surges propagated by Hurricanes Katrina or Rita. In the flooding easement cases we have cited, there was always an element of control that the Corps had over water flowing down a river system, either by creating an impoundment or operating a dam so as to alter river flows. In the present case, however, the Corps had no ability to control or influence these storm-produced effects. And since the Corps had no control over such effects, it is manifestly clear that those effect cannot be construed as flowing from a governmental action. Thus, Plaintiffs have failed to show that their flooding was the natural and probable result of prior governmental actions in the

construction and maintenance of the MRGO.

Causation is not, however, the only hurdle for Plaintiffs under the natural or probable prong of the tort-taking inquiry. They must also show that Defendant "should have predicted or foreseen the resulting injury." Moden, 404 F.3d at 1343. Plaintiffs' Opposition does little to meet this standard and nothing to rebut Defendant's argument that Hurricane Katrina was an unforeseeable causative factor that intervened between any action taken by Defendant and Plaintiffs' ultimate injuries. Def's Mot. at 11-13. Moreover, Plaintiffs cannot dispute the unusual intensity of Hurricane Katrina or the fact that its winds and waves of that massive storm generated nearly unprecedented storm surge. See Def's Ex. E. In Moden, the Federal Circuit advised that an "injury may not be foreseeable if an intervening cause breaks the chain of causation." 404 F.3d at 1343. Here, the intervening cause was Hurricane Katrina. Therefore, Plaintiffs cannot show that their injuries were the foreseeable result of the building of the MRGO because they were, in fact, the result of a massively powerful hurricane.

Failing to show that the MRGO was the likely cause in fact of their injuries, or that such injuries were the foreseeable result of a government action, Plaintiffs cannot show that their injuries were the direct, natural or probable result of a government action or that their claims are due treatment under takings law rather than tort law. See Ridge Line, Inc. v. United States, 346 F.3d 1346, 1356 (Fed. Cir. 2003); Moden, 404 F.3d at 1342. It follows that the jurisdiction of this Court cannot appropriately be exercised in this matter. Id.

2. Any Governmental Interference Was Not Substantial or Frequent.

The second prong of the tort versus taking inquiry "requires the court to consider whether the government's interference with any property rights of [plaintiffs] was substantial and

frequent enough to rise to the level of a taking." Ridge Line, 346 F.3d at 1357. In Ridge Line, the Federal Circuit noted that "[g]overnment-induced flooding not proved to be inevitably recurring occupies the category of mere consequential injury, or tort." Id. at 1355 (quoting Barnes v. United States, 210 Cl. Ct. 467, 538 F.2d 865, 870 (1976)). The Federal Circuit has also held that "'isolated invasions such as one or two floodings . . . do not make a taking . . . , but repeated invasions of the same type have often been held to result in an involuntary servitude." Id. at 1357 (quoting Eyherabide v. United States, 170 Ct. Cl. 598, 345 F.2d 565, 569 (1965)).

Plaintiffs' Opposition does little more than continue to allege without any competent factual support that the properties in question are subject to inevitably recurring floods as a result of the construction of the MRGO. Pltfs' Opp. at 7. Even if appropriately submitted, the declarations offered by Plaintiffs to show inevitably recurring floods in St. Bernard Parish provide little more than unsubstantiated conclusions. Plaintiffs offer the declarations of Edward Robin, Sr., Brad Robin and Russell Gelvin, Jr. in an attempt to prove that, due to the construction of the MRGO, the flooding of St. Bernard Parish is inevitably recurring. However, these declarations are of limited relevance to this issue. As discussed above, the Yscloskey area is not protected by a federal levee system and is, therefore, likely to flood in any event, and much more so during a hurricane. The Gelvin declaration is of similarly limited relevance because it claims only that St. Bernard Parish was flooded in the wakes of Hurricanes Katrina and Rita. Not only were these facts alleged in Plaintiffs' Complaint, even those two floods are not enough to establish that Plaintiffs' properties will be subject to inevitably recurring floods due to the construction of the MRGO. See Ridge Line, 346 F.3d at 1357 (quoting Eyherabide v. United States, 170 Ct. Cl. 598, 345 F.2d 565, 569 (1965)). Having failed to establish that the

flooding of their properties is inevitably recurring as a result of the construction of the MRGO, as opposed to the natural incident of living in a low-lying area, Plaintiffs must suffer the consequence of such failure – dismissal of their Complaint because it states a cause of action outside the jurisdiction of this Court. See Moden, 404 F.3d at 1432; see also Ridge Line, 346 F.3d at 1357 (quoting Eyherabide v. United States, 170 Ct. Cl. 598, 345 F.2d 565, 569 (1965)).

## II. Response to Plaintiffs' Motion in Limine

### A. If Offered, Defendant's Exhibits Would Be Admissible Into Evidence

On November 2, 2006 Plaintiffs filed, concomitant with their Opposition, a Motion in Limine seeking to exclude several pieces of "evidence" from Defendant's brief. Plaintiffs' Motion is unnecessary, and immaterial, to the resolution of the instant motion for the reasons detailed below. First, Defendant's Exhibits A-D are offered not as evidence, but as demonstrative exhibits intended to help the Court better understand the facts surrounding this case. This was necessitated by the vague and sparse allegations contained in Plaintiffs' Complaint. In any case, all of the exhibits attached to Defendant's Motion to Dismiss are admissible. More importantly, Exhibit E, the Tropical Cyclone Report for Hurricane Katrina, which is relied on in Defendant's Motion to Dismiss, is admissible as a public record under Federal Rule of Evidence ("FRE") 803(8) and FRE 902(5). Accordingly, Plaintiffs' Motion in Limine is moot as to Defendant's Exhibits A-D and, for the reasons discussed infra, it is incorrect in its admissibility analysis of Defendant's Exhibits A-E. On that basis, the motion should be denied.

For ease of reference, the exhibits will be discussed in the order that they were attached

to Defendant's Motion to Dismiss.

Defendant's Exhibit A

Exhibit A is a map of the greater New Orleans Area. In its Motion to Dismiss, Defendant cited this map to demonstrate to the Court that the "MRGO is bordered on its eastern bank by Lake Borgne and on its western bank by a large marsh that lies between Lake Borgne and St. Bernard Parish." Defendant's Mot. at 3. This map clearly shows that essential geography and is entitled to be received as a demonstrative exhibit to assist the Court in the context of this motion. See Tritek Technologies, Inc. v. United States, 67 Fed.Cl. 727, 734-35 (2004) (allowing the use of demonstrative exhibits on a summary judgment motion).

Defendant's Exhibit B

Exhibit B is a report by the Corps, a public agency, to Congress detailing the activities of the agency in the Mississippi Valley Division. Plaintiffs have charged that Exhibit B is inadmissible hearsay. Pltfs' Mot. in Limine at 5. Even if Defendant was offering this exhibit as evidence, it would be admissible because it fits into the hearsay exception for public records and reports found in FRE 803(8)(A). FRE803(8)(A) excepts from exclusion as hearsay "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency . . . ." Accordingly, Exhibit B, a report of the activities of the Corps Mississippi Valley Division, clearly fits the hearsay exception found in FRE 803(8)(A).

Plaintiffs also challenge the authenticity of this report. Pltfs' Mot. in Limine at 5. FRE 902(5) however provides that "books pamphlets or other publications purporting to be issued by public authority" are self- authenticating. Therefore, this publication of the Corps, a public

authority, is self-authenticating and Plaintiffs' objection to it is not well taken.

Defendant's Exhibit C

Plaintiffs also object to the inclusion of Defendant's Exhibit C, an appendix to the report released by the Interagency Performance Evaluation Taskforce ("IPET"). Pltfs' Mot. in Limine at 6-10. The Chief of Engineers for the Corps ordered the IPET Report prepared "to determine the facts concerning the performance of the Hurricane Protection in New Orleans and Southeast Louisiana during Hurricane Katrina." IPET Report at I-1 (Jun. 1, 2006), available at https://ipet.wes.army.mil. The report was not prepared, as Plaintiffs suggest, in order to assist in the current litigation. FRE 803(8)(c) allows for the admission of "reports . . .of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law . . . ." The IPET report is just such a report. It details factual findings of the IPET, a public entity, undertaken under authority granted to the Corps by Congress. Accordingly, the IPET Report, is not excludable as hearsay, and Defendant's Exhibit C, a component of that report, is similarly not excludeable hearsay.

Defendant's Exhibit D

Plaintiffs also challenge Defendant's Exhibit D as being inadmissible hearsay. Similar to Exhibit C, this report prepared for the Louisiana Department of Natural Resources fits the hearsay exception found in FRE 803(8)(C). Plaintiffs have charged that because this report was prepared by a contractor for the State of Louisiana it does not fit the hearsay exception for public records. However, the Court of Federal Claims has twice declined to adopt such a position. Pacific Gas & Elec. Co. v. United States, Nos. 04-74C, 04-75C, 2006 WL 2925649, at *102-*103 (Fed. Cl. Oct. 13, 2006) (quoting Yankee Atomic Elec. Co. United States, No. 98-126C,

2004 WL 2450874, at *6 (Fed. Cl. Sept. 17, 2004)). Accordingly, Exhibit D is properly viewed as a report of a public agency. Additionally, as required by FRE 803(8)(C), Exhibit D sets forth factual findings resulting from an investigation conducted pursuant to authority granted by law. It can be presumed that Louisiana DNR was legally authorized to undertake this study and it is apparent that Exhibit D sets forth the factual findings of that study. Accordingly, Exhibit D is admissible under the hearsay exception found in FRE 803(8)(C). Like other public documents it is also self-authenticating. FRE 902(5).

Similarly, as Plaintiffs seem to concede, Pltfs' Mot. in Limine at 11, the 2003 Corps study referenced in the Louisiana DNR report would also meet the standard set forth in FRE 803(8)(C). Accordingly, there is no double hearsay problem, as Plaintiffs seem to suggest. To the extent Plaintiffs allege that the 2003 Corps study is untrustworthy because it "took place after Hurricane Katrina . . . ," they are simply incorrect. Pltfs' Mot. in Limine at 11. The study occurred in 2003 and Hurricane Katrina occurred in 2005. Accordingly, there is no way that the events surrounding Hurricane Katrina influenced the results of a study conducted before the storm occurred. It follows that the 2003 Corps study does not in any way detract from the admissibility of the Louisiana DNR study. If offered, Exhibit D would be properly received into evidence.

Defendant's Exhibit E

Exhibit E is a Tropical Cyclone Report for Hurricane Katrina and the only exhibit on which Defendant relied in its Motion to Dismiss. It was prepared by the National Hurricane Center, a component of the National Weather Service and the National Oceanic and Atmospheric Administration, and sets forth that public entity's factual findings relating to Hurricane Katrina.

This is clearly within the duties of the National Hurricane Center. Accordingly, this document would be admissible pursuant to FRE 803(8)(C) as a report of factual findings prepared by authority granted by law.

Plaintiffs' only other complaint with regard to this exhibit is that it is not authenticated but, because it is a "publication[] purporting to be issued by public authority" the document is self-authenticating and Plaintiffs' argument is without merit. FRE 902(5)

For the foregoing reasons, Defendant asks that Plaintiffs' Motion in Limine be denied in all respects. Not only would all of the proffered exhibits be competent as evidence if offered, four of the exhibits were offered only to provide a full factual background for the Court, primarily because Plaintiffs have failed to provide any of the geographic or descriptive information that is necessary to assess the validity of their jurisdictional claims.

**B. Defendant's Motion to Dismiss Pursuant to RCFC 12(b)(1) Was Properly Supported By Attached Exhibits and Appropriate Under Applicable Case Law**

When considering a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), "the court must accept as true the complaint's undisputed factual allegations and construe the facts in the light most favorable to plaintiff." Figueroa v. United States, 57 Fed. Cl. 488, 492 (2003) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). If, however, a RCFC 12(b)(1) motion to dismiss challenges the court's jurisdiction, as we have done here, then the factual allegations in the complaint are not controlling, and the court may consider other material to resolve the dispute. Ferreiro v. United States, 350 F.3d 1318, 1324 (Fed. Cir. 2003); see also Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993) ("If the Rule 12(b)(1) motion denies or controverts the pleader's allegations of jurisdiction, however, the movant is

deemed to be challenging the factual basis for the court's subject matter jurisdiction. In such a case, the allegations in the complaint are not controlling.") (citations omitted).

In the current posture of this case, Plaintiffs bear the burden of establishing subject matter jurisdiction, which must be done by a preponderance of the evidence. Entines v. United States, 39 Fed. Cl. 673, 678 (1997) ("Plaintiff bears the burden of establishing all jurisdictional requirements . . . and must do so by a preponderance of the evidence."). "Conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Bond v. United States, 47 Fed. Cl. 641, 647 (2000) (quoting Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981)). Moreover, "[a]mbiguities regarding the existence of subject matter jurisdiction should be 'resolved against the assumption of jurisdiction.'" Taylor v. United States, 49 Fed. Cl. 598, 602 (2001) (quoting Mars Inc. v. Kabushiki-Kaisha Nippon Conlux, 24 F.3d 1368, 1373 (Fed. Cir. 1994)).

Instead of responding to the merits of Defendant's arguments regarding lack of jurisdiction, Plaintiffs seek to divert the Court's attention from the failings of their Complaint by attacking the factual information provided by Defendant. Plaintiffs' principal argument in opposition to Defendant's Motion to Dismiss is that Defendant has improperly supported its motion with material outside the Complaint, thereby converting these proceedings to a motion for summary judgment. Pltfs' Opp. at 3. In reliance on that mistaken assumption, Plaintiffs also filed a statement of contested facts and a RCFC 56(f) declaration.[2/] This approach has the

---

[2/] Defendant does not believe that the mere attachment of exhibits converted the instant motion into a proceeding under RCFC 56. See, e.g., Ferreiro, 350 F.3d at 1324. Accordingly, Defendant objects to the filing of Plaintiffs' Statement of Contested Facts and to the RCFC 56(f) declaration of Plaintiffs' counsel. Both documents are premature and were not filed in accordance with the scheduling order in this case. Therefore, Defendant respectfully moves that this Court strike from the record Plaintiffs' Statement of Contested Facts and the RCFC 56(f)

advantage, for Plaintiffs, of casting this motion as a battle over disputed facts. Plaintiffs' arguments, however, are without legal foundation and must be rejected.

As noted above, if an RCFC 12(b)(1) motion to dismiss challenges the factual basis for the court's jurisdiction, then the factual allegations in the complaint are not controlling, and the court may consider other material to resolve the dispute. Ferreiro v. United States, 350 F.3d 1318, 1324 (Fed. Cir. 2003) ("A trial court may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint . . ."). Accordingly, although Defendant attached material outside the Complaint to its motion, this motion is still properly viewed as an RCFC 12(b)(1) motion because such material was provided only for the purpose of assisting the Court in determining whether there is a factual basis for the Court's jurisdiction in this case. For example, Defendant's Exhibit E demonstrates the size and strength of Hurricane Katrina, the natural event which gave rise to this case being brought, but as to which the Complaint provided no factual information concerning its causes, effects or uniqueness. Once Hurricane Katrina is seen for what it was, a huge hurricane that was the fourth most intense storm ever to hit the United States, Def's Ex. D at 1, 3, 6, it is undeniable that Plaintiffs' damages were the direct, natural and probable result of that natural phenomenon, and not the direct, natural or probable result of any action taken by the Defendant or its agencies. Accordingly, this exhibit directly attacks the truth of Plaintiffs' allegation that the MRGO was the direct, natural and probable cause of their injuries and it is properly considered in this RCFC 12(b)(1) context. Ferreiro, 350 F.3d at 1324.

Further, as discussed supra, the other exhibits filed with Defendant's motion were not

declaration of Plaintiffs' counsel.

submitted in support of Defendant's legal arguments, but were provided to give the Court a fuller factual background than was discernable from the Complaint. Without such factual background, and if forced to rely on only the conclusory allegations in the Complaint, this Court would be required to decide Defendant's legal jurisdictional arguments essentially in a factual vacuum created by Plaintiffs' failure to meet their jurisdictional burden of proof. Defendant's exhibits A-D, however, were not offered as evidence to disprove the merits of Plaintiffs' claims, but rather were offered to provide essential facts against which the legal adequacy of those claims could be reviewed. Therefore, the filing of those four documents should not be interpreted as supporting a summary judgment request and does not transform Defendant's RCFC 12(b)(1) into an RCFC 56 motion.

We submit that Plaintiffs could have offered a further explanation of the alleged factual basis for their claims, but instead they have resorted to evasive tactics and claims to a need for further discovery in an effort to divert attention from the inadequacy of the allegations in their Complaint to state a claim within the jurisdiction of this Court. A review of the totality of their Opposition to our motion shows that they have made little or no effort to respond to our legal arguments as to causation and foreseeability. Having sought a judgment in the huge sum of $50 Billion, it is not too much to require them to set forth with clarity, and some precision, the alleged facts upon which such a claim is based. Their assertion that they need discovery before they can reply to our motion clearly demonstrates that they are not at this time able to articulate any facts that would support the jurisdiction of this Court.

Discovery may be granted to a plaintiff seeking to establish jurisdiction in this Court when the jurisdiction-establishing facts are peculiarly within the control of the opposing party.

Barrett v. Nicholson, 466 F.3d 1038 (Fed. Cir. 2006). Here, however, the facts necessary for Plaintiffs to rebut Defendant's arguments are not "peculiarly within the control" of Defendant. Rather, Defendant's arguments are based on indisputable facts found in publicly available documents (e.g., Tropical Cyclone Report of Hurricane Katrina, attached as Def's Ex. E; Graci, 435 F. Supp. at 193), and on legal principles rooted in the caselaw of this Court and the Federal Circuit. See Def's Mot. at 7-15. Until it is determined that a party has alleged a valid cause of action, that party should not be allowed to engage in discovery. That is the purpose of a Rule 12 (b)(1) Motion - to determine if there is a claim within the jurisdiction of the court alleged.

## III. Conclusion

For the foregoing reasons, and the reasons set forth in our Memorandum in Support of Defendant's Motion to Dismiss, the Court is respectfully requested to dismiss the complaint filed herein for lack of jurisdiction over the subject matter of the case, to deny Plaintiffs' Motion in Limine in whole and to strike the submissions made by Plaintiffs pursuant to RCFC 56.

Respectfully Submitted this the 20th Day of November, 2006.

**SUE ELLEN WOOLDRIDGE**
Assistant Attorney General
Environment and Natural Resources Division

s/ Fred Disheroon by Mark T. Romley
FRED R. DISHEROON, Special Litigation Counsel
MARK T. ROMLEY, Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
601 D. St. N.W., Room 3022
Washington, D.C. 20004
Telephone: (202) 616-9649
Fax: (202) 616-9667

.

Counsel for the Defendant.