IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROCCO TOMMASEO, *et al.* Plaintiffs | ) | |
| V. | ) | 1:05-cv-1119 SGB Hon. Susan G. Braden |
| THE UNITED STATES Defendant | ) | |

**UNIFIED REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**MAY IT PLEASE THE COURT**:

Defendant sets forth two distinct arguments in opposition to Plaintiffs' Motion *in Limine*. The first—that the documents attached to the motion to dismiss are not evidence but merely "demonstrative exhibits"—could have been obviated by the Defendant noting that the "evidence" it offered in support of its Motion to Dismiss was "not really evidence." The other argument—that several of the documents produced by the government are above (and therefore immune from) all evidentiary challenges—ignores the fact that the Government and its contractors have prepared these reports in anticipation of litigation, in an obvious attempt to avoid liability for the damage for which they are responsible. These reports therefore are not reliable and cannot be admitted into evidence.

Furthermore, Defendant is attempting to guide this Court into granting the Government's Motion to Dismiss, *via a factual attack*, without allowing the Plaintiffs any discovery opportunities. In essence, the Government is telling the Plaintiffs and this Court that all evidence

(without specification) relevant to the issues *sub judice* is in the public record, and that discovery is therefore unnecessary.[1] The Government offers nothing to support this argument, yet it also asks this Court to further violate the Due Process rights of those whose property the Corps has taken by denying Plaintiffs any discovery, not to mention the right to question the Government's proffered evidence. Plaintiffs, in contrast, ask nothing more than the opportunity to test the veracity of the Government's statements and to have their day in the Court which Congress created 150 years ago for this very purpose. Plaintiffs request that Defendant's Motion to Dismiss be denied, that Plaintiffs' Motion *in Limine* be granted, or, in the alternative, that Plaintiffs be given an opportunity to conduct discovery on the fact issues raised by the Defendant, prior to this Court ruling on the admissibility of the "evidence" offered in support of the Government's Motion to Dismiss, not to mention the fact disputes created by the Defendant's moving papers.

**1) Defendant's exhibits were offered as evidence.**

The Government asserts that "Exhibits A-D are offered not as evidence, but as demonstrative exhibits intended to help the Court better understand the facts surrounding this case."[2] Black's Law Dictionary defines "evidence" as: "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact." Black's Law Dictionary (8th ed. 2004). In other words, something that "help[s] the Court better

[1] Defendant's Reply Memorandum in Support of its Motion to Dismiss (Rec. Doc. 33) at 14-15 (arguing that that "the facts necessary for Plaintiffs to rebut Defendant's arguments are not 'peculiarly within the control' of the Defendant"). Defendant offers no support for its argument, but merely asks Plaintiffs and this Court to take Defendant at its word that it is not hiding anything in the Corps' voluminous records. The very fact that the MR-GO is a Corps project demonstrates its possession of the scientific information at the heart of the Motion to Dismiss.

[2] Defendant's Reply Memorandum in Support of its Motion to Dismiss (Rec. Doc. 33) at 7.

understand the facts" is by its very definition evidence, especially when offered to the Court by a litigant. The Government's new arguments to the contrary are suspect.

Defendant cites to *Tritek Techs., Inc. v. United States*, 67 Fed. Cl. 727, 734-35 (2005), to support its theory that Exhibit A is admissible as a "demonstrative exhibit." [3] However, *Tritek* does not apply *sub judice*. The *Tritek* Court specifically noted that "the purpose of a demonstrative exhibit is to explain evidence that is already in the record, and does not have substantive force of its own." *Id.* at 734. Defendant seeks to use Exhibit A[4] to introduce new evidence into the record, not merely summarize evidence already in the record. Thus, Defendant's Exhibit A is not "admissible" as a "demonstrative" exhibit. Given that Defendant disputes neither that Exhibit A does not fit within any hearsay exception, nor that Exhibit A is not self-authenticating, it is clear that Exhibit A is inadmissible and should be stricken from the record.

**2) Public Records are not immune from evidentiary challenges**

The Government relies on Fed. R. Evid. Rules 803(8) and 902(5) in support of its argument that each of its remaining exhibits is admissible as a government-produced document. Documents published by the Government are not automatically admissible under the Federal Rules of Evidence, but must satisfy all admissibility requirements. *See, e.g.*, *Kennedy v. Joy Techs., Inc.*, --- F.Supp.2d ----, 2006 WL 2925652 at *2-3 (W.D. Va. Oct. 05, 2006) (holding that an official mine accident report prepared by the United States Mine Safety and Health Administration was not admissible evidence). Rather, the admissibility of a Government document will depend on whether there are indications of untrustworthiness, or whether the information contained in the document otherwise runs afoul of the Rules of Evidence. *Dale v.*

---

[3] Defendant's Reply Memorandum in Support of its Motion to Dismiss (Rec. Doc. 33) at 8.
[4] Not to mention the other exhibits proffered by Defendant.

*Ala Acquisitions I, Inc.*, 398 F. Supp. 2d 516, 519-20 (S.D. Miss. 2005), *Kennedy*, 2006 WL 2925652 at *2-3. The Government's exhibits run into both problems.

Government reports are typically admissible because the government usually has no interest in the outcome of the proceedings. *See, e.g., Gross v. King David Bistro, Inc.*, 84 F. Supp. 2d 675, 677 (D. Md. 2000). That is not the case here. As previously noted in Plaintiff's Motion *in Limine*, Defendant's Exhibit B (the Corps' Annual Report for Fiscal Year 2005) and Exhibit C (the excerpt of the IPET Report) were created under suspicious circumstances by the very agency that would be held accountable if the reports indicated Government misconduct.[5] Furthermore, in creating the IPET Report, the Corps hand-picked authors whom it knew it could rely on to reach Government-friendly conclusions.

Most importantly, the IPET Report has been widely criticized by experts and scientists who have studied these issues; the primary criticism was that the Government's authors focused on legal rather than technical issues.[6] Specifically, the National Academies of Science was highly skeptical of the IPET report, noting that it "assume[s] a tone that is at times legal in nature," using terms like "negligence and malfeasance" which are "inappropriate" in technical investigation.[7] *Kennedy v. Joy Technologies, Inc.*, a recent opinion by the Federal District Court for the Western District of Virginia, illustrates why this legal terminology is problematic. In *Kennedy*, the plaintiff relied on the public records exceptions to the Federal Rules of Evidence in an attempt to have an official report of a mine accident by the United States Mine Safety and Health Administration admitted into evidence. *Kennedy*, 2006 WL 2925652 at *2-3. The Court

---

[5] Similarly, Exhibit D was prepared by a private contractor for the State of Louisiana (a Defendant in many post-Katrina cases which has a vested interest in the outcome of Katrina-related litigation).

[6] *See, e.g.*, Third Report of the NAE/NRC Committee on New Orleans Regional Hurricane Protection Projects, at 7 (October, 2006) (attached as Exhibit 1).

[7] *Id.*

refused, noting that although the report fit within the language of the public records exceptions, the evidence contained in the report was too speculative to be admitted. *Id.*; *see also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988); *Nichols Const. Corp. v. Cessna Aircraft Co.*, 808 F.2d 340, 347 (5th Cir. 1985). Similarly, the "evidence" contained in the IPET report offered up by Defendant relates to legal conclusions about which witnesses—even expert witnesses—are incompetent to testify. *Woods v. Lecureux*, 110 F.3d 1215, 1220-21 (6th Cir. 1997); *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003); *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997).

In short, it is clear that the Government's exhibits were not prepared to honestly report the facts, but rather to fend off legal claims against this Defendant. Thus, they are not sufficiently reliable to be admitted into evidence under the Federal Rules of Evidence. Furthermore, these reports are irrelevant to the extent they reach legal rather than factual conclusions and should further be excluded from evidence.

**3) Plaintiffs are entitled to test the veracity of Defendant's statements and evidence**

Defendant's arguments with regard to the use of evidence at this stage of the proceedings is internally inconsistent, and somewhat confusing. On the one hand, Defendant seems to argue that Plaintiffs should not be allowed to present evidence in support of their theories.[8] On the other, Defendant complains that Plaintiffs' Complaint and memoranda lack sufficient factual support.[9] Defendant expects this Court to accept its factual allegations without question,[10] without affording Plaintiffs an opportunity to depose a single witness or receive a single response

---

[8] Defendant's Reply Memorandum in Support of its Motion to Dismiss (Rec. Doc. 33) at 2 (requesting that Plaintiffs' Rule 56 filings be stricken from the record as "inappropriate").

[9] Defendant's Reply Memorandum in Support of its Motion to Dismiss (Rec. Doc. 33) at 6.

[10] *See, e.g.*, Defendant's Reply Memorandum in Support of its Motion to Dismiss (Rec. Doc. 33) at 3-4 (offering "testimony" about the flooding history of St. Bernard Parish).

to an interrogatory or request for production.[11] Next, Defendant argues that this Court can consider "relevant evidence" in considering a motion to dismiss,[12] but also argues that Plaintiffs should not have an opportunity to challenge the evidence Defendant submitted to this Court through a motion *in limine*.

In short, Defendant believes the Court should accept at face value every statement the Government makes, and Plaintiffs should have no opportunity to challenge the truthfulness, admissibility, reliability or competence of the statements. In an ideal world, a government would not publish advocacy under the guise of an unbiased report, and this Court would not need to arbitrate such evidence. However, ours is a world far from the ideal, and, unfortunately, our Government has been known to fall short as well. Plaintiffs ask this Court for nothing more than the opportunity to test the veracity, admissibility, reliability or competence of the Government's statements.

**4) Defendants misstate the evidentiary standards.**

There are two procedural avenues for a 12(b)(1) Motion to Dismiss in the United States Court of Federal Claims. First, where the jurisdictional facts are not in dispute, the Court must accept all allegations in the complaint as true. *Taylor v. United States*, 49 Fed. Cl. 598, 602 (2001), citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Second, where "jurisdictional facts are in dispute, then a court may consider relevant evidence in order to resolve the factual dispute." *Id.*, citing *Reynolds v. Army & Air Force Exchange Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).[13]

---

[11] Defendant's Reply Memorandum in Support of its Motion to Dismiss (Rec. Doc. 33) at 2; *see also* Plaintiffs' Motion to Compel (Rec. Doc. 20); Plaintiffs' Reply Memorandum in Support of Motion to Compel (Rec. Doc. 23-1).

[12] Defendant's Reply Memorandum in Support of its Motion to Dismiss (Rec. Doc. 33) at 13.

[13] Defendant originally claimed to be proceeding under Plan B, but that is now unclear, given

If the Movant *successfully* challenges the jurisdictional facts, the non-movant bears the burden of proving the existence of subject matter jurisdiction. Defendant would have this Court require that Plaintiff's prove the existence of subject matter jurisdiction—at motions—by a "preponderance of the evidence." *Reynolds*, 846 F.2d at 748. There are at least three problems with applying this standard. First, the *Reynolds* Court applied the preponderance of the evidence standard in a contractual context. *Id.* Specifically, the plaintiff in *Reynolds* had to prove the ***existence of a contract*** with the Federal Government before the Court could assert jurisdiction over that contract. *Id.* Plaintiffs *sub judice* are not asserting contractual claims against Defendant, they are asserting their rights to be compensated for a taking under the Fifth Amendment, thus *Reynolds* can be distinguished on its facts, as there can be no question about the existence of the Bill of Rights.

Second, Defendant admits that Plaintiffs' property has been flooded multiple times, it simply disagrees that the floods are sufficiently frequent or foreseeable to constitute a taking. In other words, unlike the parties in *Reynolds* (who could not agree whether a contract existed), the parties *sub judice* agree on the threshold issue that Plaintiffs' property was flooded. To what extent that flooding gives rise to taking claims will depend on the frequency, the foreseeability and the severity of that flooding, about which this Court must hear evidence. As this Court put it in *Total Medical Management, Inc. v. United States*, 29 Fed. Cl. 296, 301 (1993):

> Whether we take the strict position that a question of law or fact …is basically a merits question and thus can never be disposed of under a motion to dismiss for lack of jurisdiction, or whether we take the flexible position that Rule 12(b)(1) can under the factual attack doctrine sometimes accommodate challenges to the truth of well-pleaded allegations…the end result in practice is much the same: the pleader is entitled to whatever procedures are reasonably necessary to prove its case, including an evidentiary hearing if need be.

---

Defendant's apparent "withdrawal" of its proffered exhibits.

Thus, regardless of whether Defendant has adequately challenged Plaintiffs' jurisdictional facts, it would be inappropriate to grant Defendant's Motion to Dismiss without first granting Plaintiffs' an opportunity to investigate the veracity of Defendant's factual allegations.

Finally, Defendant confuses the *Reynolds* "preponderance of the evidence" standard with that which applies to a plaintiff at trial. This is evidenced by the fact that many of the cases upon which Defendant relies in its Motion to Dismiss and Reply Memorandum in Support of its Motion to Dismiss ***did not take place in a Rule 12 context***. *Ridge Line, Inc. v. United States*, 346 F.2d 1346 (Fed. Cl. 2003); *Eyherabide v. United States*, 345 F.2d 565 (Fed. Cl. 1965); *Brace v. United States*, 72 Fed. Cl. 337 (2006); *Alost v. United States*, No. 03-2377L, 2006 WL 3094126 (Fed. Cl. Sept. 5, 2006). Rather, each of these cases was decided after a full trial on the merits. In fact, *Brace* was decided only after the Court traveled to Pennsylvania to inspect the Plaintiffs' property first-hand. *Brace*, 72 Fed. Cl. at 346. The standards that apply to Plaintiffs' evidentiary burdens in a trial are vastly different that those that apply in a Motion to Dismiss, and consequently the evidentiary rules set forth in those decisions cannot serve as a basis for dismissing the case *sub judice* at this time.

At this Rule 12 phase Plaintiffs need not *prove* each element of their claim by a preponderance of the evidence, but must demonstrate only that they "have alleged nonfrivolous claims to allow this court to exercise subject matter jurisdiction over plaintiffs' lawsuit." *S.K.J. & Assocs., Inc. v. United States*, 67 Fed. Cl. 218, 223 (2005). In other words, to overcome Defendant's subject matter jurisdiction challenge, Plaintiffs need only provide sufficient evidence to prove that their takings claim is nonfrivilous. *Id.* Obviously, the affidavits Plaintiffs submitted testifying to the repeat flood events occasioned by the MR-GO project are more than sufficient to prove by a preponderance of the evidence that Plaintiffs' claims are nonfrivilous.

Furthermore, Defendant has not adequately challenged the factual allegations in Plaintiffs' Complaint to force such a factual inquiry. On the contrary, Defendant has merely challenged Plaintiffs' ability to ultimately prove each element of their claims. This is insufficient to shift the evidentiary burden onto Plaintiffs. The *S.K.J.* Court made this issue very clear:

> [S]ubject matter jurisdiction exists when a petitioner asserts a nonfrivolous claim: To the extent a successful claim against the government requires compliance with all statutory elements of the claim, failure of proof of an element of the cause of action means the petitioner is not entitled to the relief he seeks. To conclude in such a case that the petitioner loses because the forum is "without jurisdiction" is to obscure the nature of the defect. It would be more accurate to conclude that the petitioner has failed to prove the necessary elements of a cause for which relief could be granted. The forum has jurisdiction to hear the matter in the first instance--that is, subject matter jurisdiction existed--as long as the petitioner asserted nonfrivolous claims.

*Id.* at 222. In other words, when Defendant merely challenges Plaintiffs' ability to prove an element of their claims; that challenge does not implicate this Court's jurisdiction over the claim, and the Motion to Dismiss for Lack of Subject Matter Jurisdiction must be denied for want of evidence on the part of Defendant.

Amazingly, the contrary position has been taken by Defendant in its Motion to Dismiss. Defendant lays siege to the argument and claims that the MR-GO was not the direct natural or probable cause of the damage to Plaintiffs' injuries,[14] notwithstanding Plaintiffs' provision of sworn expert testimony to prove that the MR-GO acts as a "storm surge delivery system,"[15] effectively funneling waters that would otherwise be blocked or slowed by wetlands directly onto Plaintiffs' property. Similarly, although Defendant claims that these damages were not foreseeable, Plaintiffs provided testimony that the MR-GO had rapidly expanded over the past

[14] Defendant's Memorandum in Support of its Motion to Dismiss (Rec. Doc. 33) at 9.
[15] Declaration of Doctor Paul Kemp (Rec. Doc. 32) at 6.

several decades, is now more than triple its original width, is deeper, wider and transports a far greater volume of water than claimed by the Defendant. There is no dispute among the scientists that the MR-GO works as a deadly funnel.[16]

Defendant also argues that the flooding of Plaintiffs' property is not recurring,[17] however Plaintiffs provided sworn testimony that their property flooded at least twice in 2005 as a result of the MR-GO, and continues to do so to this very day. In light of this sworn testimony, Plaintiffs clearly have a nonfrivilous claim over which this Court has subject matter jurisdiction.

**5) Conclusion**

In sum, Defendant's combined reply of 20 November 2006 is an attempt to have this Court misapply the law, ignore the evidence which ***is*** admissible, and then dispose of a viable cause of action without a scrap of inquiry. The Defendant asks this Court to trust it because it is the Government, but it offers no evidence to support its contentions that its evidence is trustworthy and otherwise admissible. (In fact, some of its factual statements are patently untrue, such as Defendant's contention that the MR-GO is 500-650 feet wide.)[18] Defendant is attempting to confuse the issue with regard to the evidentiary burden that applies in a Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction. Ergo, the Motion *in Limine* should be granted and the Motion to Dismiss should be denied.

Respectfully submitted this 6th day of December, 2006.

s/ Stephen M. Wiles
F. Gerald Maples, T.A. (# 25960)
Stephen M. Wiles (# 17865)
Carlos A. Zelaya II (# 22900)
F. GERALD MAPLES, P.A.
902 Julia Street

[16] Declaration of Doctor Paul Kemp (Rec. Doc. 32) at 7.
[17] Defendant's Memorandum in Support of its Motion to Dismiss (Rec. Doc. 33) at 13.
[18] Defendant's Memorandum in Support of its Motion to Dismiss (Rec. Doc. 33) at 3-4.

New Orleans, LA 70113
Telephone: (504) 569-8732
Facsimile: (504) 525-6932
smwiles@fgmapleslaw.com

-and-

J. Wayne Mumphrey (# 9824)
MUMPHREY LAW FIRM, LLC
One Canal Place
365 Canal Street, Suite 2280
New Orleans, LA 70130
Telephone: (504) 569-0661
Facsimile: (504) 569-0665

-and-

John H. Musser, IV (# 9863)
201 St. Charles Avenue
Suite 2535
New Orleans, LA 70170
Telephone: (504) 566-1218
Facsimile: (504) 566-7185

**COUNSEL FOR PLAINTIFFS**
Rocco Tommaseo, Thomas Tommaseo, Rocky and Carlo, Inc., Steven Bordelon, Cynthia Bordelon and Steve's Mobile Home & R.V. Repair, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above and foregoing has been served upon all counsel of record via facsimile transmission and ECF electronic distribution on this 6th day of December, 2006.

s/ Stephen M. Wiles
Stephen M. Wiles