IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ROCCO TOMMASEO, et al. Plaintiffs | ) | |
| V. | ) | 1:05-cv-1119 SGB Hon. Susan G. Braden |
| THE UNITED STATES Defendant | ) | |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EXHIBITS ATTACHED THERETO**

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs Rocco Tommaseo, *et al.*, who respectfully submit the following in opposition to Defendant's Motion to Dismiss and in support of Plaintiffs' motion in *limine* to exclude exhibits attached to Defendant's Motion to Dismiss.[1]

**Facts the Defendant Cannot Avoid**

The Army Corps of Engineers would have this Court decide this case on facts that have little basis in reality. Some of these "facts" are actually legal conclusions disguised as facts, which conclusions are set forth in self-authored, self-serving studies penned by authors who appear to be less concerned with the truth than the liability implications of their findings. Others of Defendant's "facts" are gross distortions of reality such as Defendant's assertion that the MR-GO is only 650 feet wide (its authorized width more than four decades ago) rather than greater than 2,000 feet wide (its actual, measurable width today). Defendants have manufactured a third

[1] For brevity's sake, Plaintiffs will simply incorporate by reference the factual background set forth in their previously-filed memoranda.

category of "facts" by basing their reports on computer simulations of MRGO's effect on Katrina's storm surge (simulations in which the Army Corps manipulated the data inputs to ensure Government-friendly results) rather than actual data and measurements collected during and after Katrina. In other words, Defendants have tried several maneuvers to have this Court decide this case based upon a fictional universe whose parameters are set by the Defendant rather than the simple, straightforward facts, *i.e.* the truth. There are some facts, however, that the Defendant cannot avoid or dispute, and these facts lead to the inevitable conclusion that Plaintiffs' claims are valid and that Defendant's Motion to Dismiss should be denied. These facts are set forth below.

1) <u>The MR-GO significantly affects flooding and storm surge in New Orleans and the surrounding areas.</u>

In his declaration,[2] Dr. Paul Kemp gives a few examples illustrating MR-GO's effect on storm surge in and around New Orleans. First, he notes that the storm surges that were affected by the MR-GO (those measured in the Gulf Intracoastal Waterway and the Industrial Canal) were approximately 50% higher than those not affected by the MR-GO (those measured in Lake Pontchartrain).[3] Second, Dr. Kemp notes that the combined effect of the MR-GO and the levees surrounding it act as a "funnel," focusing the storm surge towards the Industrial Canal.[4] This conclusion is supported by the U.S. Senate Committee tasked with investigating the Katrina disaster, which found that:

> [a]s the eye approached New Orleans, Katrina shoved a 14 to 17 foot surge up a "funnel" created by hurricane protection levees at the convergence of the south bank of the MRGO and the north bank of the Gulf Intracoastal Waterway, and focused a torrent of water on the [Industrial Canal].[5]

---

[2] Attached hereto as Exhibit 1.
[3] Kemp Declaration (attached hereto as Exhibit 1) at 5.
[4] *Id.* at 5-6.
[5] *Id.* at 5-6, quoting U.S. Senate Committee on Homeland Security and Governmental Affairs, Hurricane Katrina: A Nation Still Unprepared (May 2006) at Chapter 4-4 (footnote omitted).

The funnel-effect theory is also supported by numerous post-Katrina studies.[6] Most importantly, Dr. Kemp points out that "even the Army Corps-sponsored study by the Interagency Performance Evaluation Task Force (IPET), released earlier this year, concluded that the confluence of the GIWW and the MR-GO created a substantial danger of elevating storm surge levels and water pressure in the Industrial Canal (IHNC) during hurricanes."[7] Ironically (though, perhaps, not surprisingly), the IPET report's conclusion ignores its own factual findings as well as similar findings contained in other recently-published Army Corps reports.[8] However, Defendant's willful blindness to the MR-GO's impact on New Orleans area flooding cannot alter the reality of the situation, as confirmed by the United States Senate and the myriad scientists and engineers who have studied this issue. Although the Defendant wishes to bury its own head in the sand, this Court must not follow suit.

2) <u>The MR-GO is much bigger now than it was when it was constructed by the Army Corps of Engineers, and has caused or contributed to a substantial loss of wetlands.</u>

Numerous Army Corps studies confirm that the MR-GO has expanded substantially over the past forty years, as the combination of saltwater intrusion and marine traffic turbulence continually eat away at the MR-GO's banks. As Dr. Kemp states in his Declaration, "[e]rosion on the northeast shore of the MR-GO between 1965 and 1981 ranged from 100 feet to 600 feet of direct shoreline recession, with rates of erosion measured between six to 26 feet per year; and the volume of erosion is calculated at 9,333,000 cubic yards during this period, or 583,000 cubic yards per year."[9]

The Army Corps recognized the ongoing problem in a 1988 erosion report which

---

[6] *Id.* at 6-7, quoting Ivor L. van Heerden, G. Paul Kemp, Wes Shrum, Ezra Boyd and Hassan Mashriqui, *Initial Assessment of the New Orleans Flooding Event During the Passage of Hurricane Katrina*, 2006, p. 4 (attached hereto as Exhibit 2); R.B. Seed, *et al.*, *Investigation of the Performance of the New Orleans Flood Protection Systems in Hurricane Katrina on August 29, 2005* (July 31, 2006), vol. 1, at p. 2-8.
[7] *Id.* at 7.
[8] *Id.* at 7-8. This is one of the many reasons why the Corps' self-serving IPET report is not admissible as evidence.
[9] *Id.* at 9.

predicted that the banks would continue to erode at a rate of fifteen linear feet per year.[10] The same Army Corps report noted that this steady erosion destroyed thousands of acres of prime marshland that historically protected inland communities from hurricane storm surge.[11] Despite these warnings, the erosion continues to the present day. All told, more than a hundred square miles of wetlands have been destroyed by the MR-GO.

There can be no dispute that the natural marshlands that once thrived to the South and East of New Orleans provided substantially greater hurricane protection for Plaintiffs' homes than the MR-GO. As Dr. Kemp notes, "[e]ven a study cited by the Army Corps in Interim Report concluded that marsh offers three times greater resistance to storm surge than a deep channel."[12] Dr. Kemp's other points on this issue are worth quoting in their entirety

> The prophylactic effect of marshlands is readily demonstrable by comparing areas that were protected and those unprotected by marshlands. During Katrina, four miles of levees exposed to open water along the MR-GO were destroyed and caused enormous destruction in St. Bernard Parish. By contrast, no Southeast Louisiana levee protected by wetlands or cypress forest failed under Katrina's onslaught…The Army Corps' own scientists have calculated that every three to four miles of healthy marsh reduces storm surge by one foot. Thus, in addition to barrier islands, wetlands offer the strongest and most natural and economical storm surge protection available. And given the rapid rate at which wetlands are being destroyed—a football field every half hour—it is appalling that the Army Corps failed to make any recommendations for immediate wetlands restoration and preservation in the Interim Report.[13]

These same conclusions were echoed by the U.S. Senate Committee tasked with investigating the Katrina disaster.[14]

3) <u>Plaintiffs' property will suffer flooding in the future as a result of the MR-GO.</u>

To make matters worse, the Defendant has no plans to restore the wetlands in and around

[10] *Id.*
[11] *Id.* at 10.
[12] *Id.* at 11.
[13] *Id.* (internal quotes and citations omitted).
[14] *Id.* at 12.

the MR-GO, or even to halt the disturbing trend of wetlands loss.[15] Without the protection of those wetlands, the flooding of Plaintiffs' property will continue indefinitely as the MR-GO will continue to act as a "funnel" which amplifies storm surge and directs it towards Plaintiffs' property. The Army Corps' current proposed solution to the MR-GO problem involves building an armored earthen dam south of Bayou La Loutre, however, as Dr. Kemp states in the attached Declaration, this will not resolve Plaintiffs' flooding problem more than twenty miles away from the proposed dam.[16]

There is simply no dispute that the MR-GO project[17] destroyed a huge swath of wetlands between Plaintiffs' property and the Gulf of Mexico. Nor can the Defendants dispute that the destruction of these wetlands destroyed Plaintiffs' most effective shield against Hurricanes Katrina and Rita. Furthermore, there can be no dispute that in the absence of this shield the MR-GO acted as a storm surge shortcut, a system which delivered an amplified storm surge dozens of miles inland and directly to Plaintiffs' front door. Finally, there is no dispute that the Army Corps has no plans to remedy this situation in the immediate future, and that it will happen over and over again until steps are taken to restore the wetlands that once protected Plaintiffs' property. Thus, Plaintiffs' property will, for the foreseeable future, continue to flood whenever there is any significant hurricane activity near Louisiana, not to mention the flooding occasioned by far less significant weather events, as noted in the declarations of Brad Robin[18] and Edward J. Robin, Sr.[19]

These are the simple, straightforward facts that the Defendant would have this Court ignore in favor of the half-truths contained in their self-serving report. The Court should decline

---

[15] *Id.*
[16] *Id.* at 10.
[17] Especially the constant dredging by the Army Corps, which continued in the MR-GO through August of 2005.
[18] This was previously filed, but is attached hereto as Exhibit 3 for the Court's convenience.
[19] This was previously filed, but is attached hereto as Exhibit 4 for the Court's convenience.

to resolve this case using Defendant's distorted and prepackaged facts, but should instead consider what scientists and experts in the real world are saying.

**Defendant's Exhibits are not Admissible Under *Daubert***

The exhibits attached to Defendant's Motion to Dismiss are not admissible under the relevant standards for scientific/technical evidence. The admissibility of this evidence is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Although Rule 702 is couched in terms relating to expert witness testimony, its standards apply to all forms of scientific or technical evidence, including reports and studies. *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 591 (1993) (noting that 702 applies to either "evidence or testimony"). In *Daubert*, the Supreme Court held that while Rule 702 "allow[ed] district courts to admit a somewhat broader range of scientific testimony than would have been admissible under [the old rule], *they leave in place the 'gatekeeper' role of the trial judge in screening such evidence*." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997) (emphasis added); *see also Daubert*, 509 U.S. at 589 (noting that while Rule 702 displaced the former system of determining admissibility of evidence, it did not deprive the Court of the obligation of "screening such evidence"). The *Daubert* screening standards are generally described as follows:

> (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of

> standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 275 (5th Cir. 1998). In a nutshell, *Daubert* and Rule 702 require the trial court to ensure that scientific and technical evidence is both relevant and reliable. *See, e.g.*, *Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 581 (5th Cir. 2001).

Defendant failed to establish either the relevancy or the reliability of their technical evidence. Defendant discussed none of the five *Daubert* factors required to establish admissibility when it submitted the Exhibits, nor subsequently in its briefing, nor did it provide evidence which reflects the relevancy or reliability of its Exhibits. In short, there is simply nothing on the record which would be sufficient to enter the Defendant's Exhibits into evidence.

**Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss should be denied and Plaintiffs' Motion in Limine should be granted.

Respectfully submitted this 21st day of February, 2007.

s/ Stephen M. Wiles
F. Gerald Maples T.A. (LA#25960)
Stephen M. Wiles (LA# 17865)
Carlos A. Zelaya, II (LA#22900)
F. GERALD MAPLES, P.A.
902 Julia Street
New Orleans, LA 70113
Telephone: (504) 569-8732
Facsimile: (504) 525-6932

-and-

J. Wayne Mumphrey (LA#9824)
MUMPHREY LAW FIRM, LLC
One Canal Place
365 Canal Street, Sute 2280
New Orleans, LA 70130
Telephone: (504) 569-0661
Facsimile: (504) 569-0665

-and-
John H. Musser, IV (LA# 9863)
201 St. Charles Avenue; Suite 2500
New Orleans, LA 70170
Telephone: (504) 599-5964
Facsimile: (504) 566-7185

**CERTIFICATE OF SERVICE**

I hereby certify that by filing the foregoing pleading via the ECF for the U.S. Court of Federal Claims a copy of the above and foregoing will be served on counsel for the United States, Fred Russell Disheroon, at fred.disheroon@usdoj.gov this 21st day of February, 2007.

s/Stephen M. Wiles
Stephen M. Wiles