UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **ROCCO TOMMASEO, *et al.*** <br> **Plaintiffs** <br> **V.** <br> **THE UNITED STATES** <br> **Defendant** | **1:05-cv-1119 SGB** <br> **Hon. Susan G. Braden** |

**MOTION (AND INCORPORATED MEMORANDUM IN SUPPORT) TO COMPEL AND FOR THE IMPOSITION OF FEES AND EXPENSES**

NOW INTO COURT, through undersigned counsel, come Plaintiffs Rocco Tommaseo, Thomas Tommaseo, Rocky and Carlo, Inc., Steven Bordelon, Cynthia Bordelon, and Steve's Mobile Home & R.V. Repair, Inc. (on their own behalf and on behalf of all other persons similarly situated), who hereby move this Honorable Court for an Order compelling Defendant, The United States, to honestly and fully respond to the Rule 30(b)(6) Deposition Notice directed to Defendant. Plaintiffs further move that Defendant produce, authenticate, identify and explain all materials requested to be delivered in response to the Rule 30(b)(5) Request for Production of Documents incorporated into the deposition notice dated 1 May 2007.[1] Plaintiffs further move that the Court tax the Defendants with all fees, expenses and costs incurred with respect to the bringing of this Motion and the efforts attendant to reconvening and completing the aforementioned deposition and document production. Relief is requested pursuant to Rule 37(a)(4)(A) of the Rules of United States Court of Federal Claims.

[1] A copy of this Deposition Notice (which includes the document request) is attached as Exhibit 1.

**Procedural Background**

As the Court is aware, Plaintiffs are currently proceeding with discovery directed to those issues which the Court has indicated will require further briefing in the Fall of 2007.[2] The parties have been engaged in discovery directed to the statute of limitations issue (as codified at 28 U.S.C. § 2501). As directed by the Court in its Opinion of 29 March 2007,[3] Plaintiffs have been instructed to prove that the "effects" at issue in this litigation, the inverse condemnation claims attendant to activity in respect of the MR-GO project, were not "stabilized" until 17 October 1999 or thereafter.[4] Alternatively, the Plaintiffs are required by this Court's Order to prove that the "continued operation, maintenance and dredging" attendant to the modification, alteration, re-engineering and expansion of the MR-GO created the "situation" which caused the takings imposed upon these citizen Plaintiffs had not "stabilized" at any time prior to 17 October 1999.[5]

Further to those instructions of the Court, and several status conferences among counsel and the Court, including one subsequent to the issuance of the 29 March 2007 Opinion, discovery has been issued by Plaintiffs to examine these precise issues.[6] As the parties are required to report to the Court on 20 September 2007 with respect to the briefing schedule for the § 2501 issues extant in respect of Counts I and III of the First Amended Complaint, the Motion *sub judice* requires prompt resolution so that the parties can complete the discovery at hand.

---

[2] Status Report Order dated 19 July 2007, Rec. Doc. 46, attached as Exhibit 2.
[3] Rec. Doc. 39, attached as Exhibit 3.
[4] Rec. Doc. 39, page 8.
[5] *Id.*
[6] These issues are not, by their very nature, limited. Not only is the MR-GO a massive federal project, but the various issues extant in respect of the § 2501 issues in this case, *operation, maintenance, dredging, modification, expansion and stabilization* are not the type of issues which lend themselves to resolution by way of the incredibly limited discovery which the Defendant unilaterally seeks to impose upon these Plaintiffs. Plaintiffs are charged with assembling admissible evidence relevant to the § 2501 issues to prepare for the upcoming motion practice on this issue in the Fall. Rec. Doc. 46.

**Rule 30(b)(6)**

By agreement of counsel, and in recognition of the jurisprudence interpretive of Rule 30(b)(6) [both RCFC and FRCP], Plaintiffs' counsel operated under the assumption that service of the Notice at issue was going to result in a deposition during which persons most knowledgeable, or at least persons possessed of a working knowledge as to the topics delineated in the Rule 30(b)(6) Notice, would be produced with respect to each topic specified in the Notice.[7] Pursuant to these expectations, the deposing counsel, co-counsel, a court reporter and one of Plaintiffs' consultants appeared at the Army Corps of Engineers' offices on 12 June 2007, ready to proceed and obtain meaningful discovery on the § 2501 issues.

**Alas, That Is Not What Transpired**

The global deficits which occurred during this particular discovery exercise were, quite frankly, the most astonishing refusal of a Rule 30(b)(6) deponent to honor its discovery obligations in litigation ever witnessed by counsel taking the deposition.[8]

As early as page 11 in the deposition of Michelle Daigle, the only person produced by Defendant in response to this very technical deposition notice, which delves

---

[7] The Defendant did not obtain a Protective Order pursuant to Rule 26(c) prior to this deposition. During the telephone status conference on 4 May 2007 among counsel and the Court (before this deposition was conducted), all counsel advised the Court that they expected very little dispute concerning the scope of the deposition, the topics to be covered and the documents to be produced. Consequently counsel and the Court agreed that they would proceed with the deposition, and only return to the Court in the event that there were problems. This status conference took place as a result of an exchange of letters among counsel which were provided to the Court. The letter of the undersigned counsel dated 2 May 2007 is attached as Exhibit 4. The 24 April 2007 letter of Fred Disheroon is attached as Exhibit 5.

[8] This includes decades of high stakes litigation involving matters such as the capsize of D/S SEACREST (with the attendant loss of life of all hands, save for 5 Malaysian scuba divers {Gulf of Thailand, 3 November 1989, Typhoon Gay; months of deposition in Bangkok, Thailand}; comprehensive global warming litigation {*Comer v. Murphy Oil, U.S.A., Inc.*, No.: 1:05-cv-00438 (S.D. Miss.)}; years of depositions in litigation arising out of an explosion and fire resulting in the destruction of the Chevron Oil Company Refinery in Pascagoula, Mississippi, 1986; and litigation of claims under foreign discovery rules for weeks of depositions in the Cayman Islands {*Spomer v. Aggressor, Intl., Inc.*, 807 So.2d 267 (La. App. 1 Cir. 2001)}.

into the exact issues the Court specified needed to be examined (by way of its 29 March 2007 Opinion), Ms. Daigle readily admitted that she was not the person most knowledgeable as to any of the topics set forth in the notice. This was evident given her being assigned to the "MR-GO Dredging Department" for the first time in January of 2006, many months after the primary events at issue in this litigation.[9] When the absolute unfamiliarity of the witness with any of the issues extant in this litigation was established, and that was combined with the witnesses' employment history (during the "look back" period assigned by the Court in this case, *viz.* 17 October 1999), the sole testifying witness freely admitted that she was not involved in any activity which would place her in the position to be responsive to the deposition notice.[10]

Although this may be a laborious process, the undersigned counsel feels compelled to specify various pages in the deposition transcript which indicate the absolute failure of Defendant to produce any meaningful witnesses, not to mention the complete failure to produce any documentation[11] of any moment at the deposition.[12] Ms.

[9] Hurricanes Katrina and Rita occurred in the Summer and Fall of 2005, not to mention subsequent recurrent flooding events in Yscloskey and other areas of St. Bernard Parish. Hurricane Lily was also a portent; she flooded one of the MR-GO affected parcels in the Fall of 2002, despite making landfall at Intracoastal City, Louisiana (well over 100 miles to the West of the parcels at issue *sub* judice, and only as a Category 1 hurricane). Extensive dredging was undertaken by the Corps in the MR-GO to remedy the problems caused in St. Bernard Parish as a result of that weather event many miles away. The Plaintiffs indicate that this is when they began to believe that the MR-GO was truly becoming a problem of such magnitude as to interfere with their property rights. Expansive dredging was also undertaken by the Corps in the MR-GO with respect to silting problems visited upon it by Hurricane Ivan in September of 2004. That hurricane made landfall at Orange Beach, Alabama, nearly 200 miles away.

[10] The deposition transcript is attached as Exhibit 6. Counsel is attaching the condensed deposition transcript, copied on one side of the pages only, to accommodate the e-filing requirements and for the convenience of the Court and counsel opposite.

[11] Only Deposition Exhibits 3 (a handwritten recitation of cubic yards pumped by the Dredge Wheeler, which has been determined to be incomplete), 11 (a map which was found under the conference table glass), 12 (a black and white copy of that same field map), and 13 (a small sketch drawn by the witness to illustrate a point) were produced by the Defendant. Not even the professional courtesy of a telephone call was received prior to Plaintiffs' counsel arriving to receive a functional "nothing" in response to the Rule 30(b)(5) document request. This warrants action pursuant to Rule 37(a)(4)(A), RCFC.

[12] On pages 13 and 108 of the deposition transcript, Ms. Daigle, the testifying witness on behalf of the United States of America, freely admitted that she had not "been in dredging" for the 15 years prior to

Daigle, a very pleasant person, freely admitted that she did not review the deposition notice and exhibits by stating that she "really did not go through them."[13] Ms. Daigle further specified that she did not see exhibits 4-6 to the Notice of Deposition before Plaintiffs' counsel questioned her.[14] The same was true in respect of the Rule 30(b)(5) document request.

**A Brief Pause to Discuss the Rule 30(b)(5) Issues**

The deposition notice incorporated a Rule 30(b)(5) request for production of documents. Ms. Daigle freely admitted, at page 27 of her deposition, that she had no documents to produce and that she had not even looked for any.

Pages 31-39 of the deposition transcript are worthy of the Court's particular review as defense counsel admitted that he made no effort (prior to the day before the deposition) to even look for documents in response to the Rule 30(b)(5) Request, nor did he even extend the professional courtesy of contacting the deposing counsel so they could discuss how to best proceed given the fact that there was going to be an abject failure to produce any documentation at the deposition. This conduct, combined with the willful failure of the Defendant to even look for any documents responsive to the Rule 30(b)(5) Document Requests, not to mention the Defendant's failure to produce even one person who was the person most knowledgeable as to any of the Rule 30(b)(6) topics,[15] demonstrates the need for judicial intervention. Consequently, with respect to the Rule 30(b)(5) document production, there was a complete, total and abject failure of the

---

calendar year 2005. Not only does this remove her from having any knowledge with respect to many of the principal events at issue which occurred in the Summer and Fall of 2005, but it also completely takes her out of the realm of prior knowledge for the look back period commencing on 17 October 1999.

[13] Page 17 of the transcript.

[14] Page 26.

[15] See *King v. Prat & Whitney*, 161 F.R.D. 475, 476 (S.D. Fla. 1995); *Protective Nat. Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267 (D. Neb. 1989); *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121 (M.D.N.C. 1989).

Defendant to provide the documentation which was requested.[16] Consequently, Plaintiffs respectfully move for a court order requiring the Defendant to produce the requested documents (as set forth in the Rule 30(b)(5) Request for the Production of Documents), plus "appropriate persons to authenticate, identify and explain" each of the requested documents, per the specific terms of the Notice.

The Defendant's attempt to satisfy its document production obligation by essentially saying "Go look in the document repository in the FTCA litigation concerning levee failure," I*n re: Katrina Canal Breches Litigation*, C.A. No. 05-4182, is not acceptable for several reasons.

First, this was sprung on Plaintiffs' counsel for the first time during the deposition.[17] Second, Defense counsel admitted that he did not even bother to look for responsive documents until the day before the deposition. The witness admitted that she did not, at any time, search for responsive documents. Third, this conduct was in breach of specific promises (to produce at least *some* documents at this deposition). See Exhibit 5 for Defense counsel's promise to do so.

Next, there is the prohibited "document dump"[18] which was attempted as a last minute tactic to avoid the responding party's obligations.[19] A legal analysis is provided below to demonstrate that this conduct of Defendant is illegal.

[16] Particular instances where this documentation was not provided, in addition to the foregoing matters cited to the Court, are found on pages, 41, 44, 63, 88 and 91-95 of the transcript.

[17] See pages 28-37. It is quite noteworthy for purposes of the Defendant's § 2501 defense that the Corps representative admitted that she did not "have a single piece of paper that proves that the MR-GO project had stabilized prior to 17 October 1999." Page 37. This admission is conclusive and binding upon Defendant. *Stone v. Morton Int'l Inc.*, 170 F.R.D. 498, 500 (D. Utah 1997).

[18] *United States S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574 (M.D.N.C. 2002).

[19] *Stiller v. Arnold,* 167 F.R.D. 68, 71 (N.D. Ind. 1996).

**Duty of Producing Party to Specify**

Normally, the "time and cost burden of perusing documents in order to supply answers to discovery requests" is on the party seeking information. *United States Securities & Exchange Comm'n v Elfindepan, S.A.*, 206 F.R.D. 574, 576 (M.D.N.C. 2002). However, when the requesting party makes a *prima facie* case that the use of Rule 33(d)[20] is inadequate "to the task of answering discovery....,[t]he burden then shifts to the producing party to justify use of Rule 33(d) instead of answering the interrogatories." *Id.*

Rule 33(d) of the Rules of the Court of Federal Claims is identical to FRCP 33(d). *AAB Joint Venture v. United States*, 75 Fed. Cl. 448, 452 (2007). Since the 1980 Amendment to the Federal Rules of Civil Procedure, "federal courts have strictly construed the rule [Rule 33] to require a responding party to specifically direct the requesting party to the documents which contain the answer to the interrogatory. *Id.* The Rules were amended "to prevent abuse of the business records option." *Rainbow Pioneer # 44-18-04A v. Hawaii-Nevada Investments Corp.*, 711 F.2d 902, 906 (9th Cir. 1983). "The option afforded by Rule 33(d) is not a procedural device for avoiding the duty to give information. *In re G-I Holdings, Inc.*, 218 F.R.D. 428, 438 (D. N.J. 2003). The producing party cannot "avoid answers by imposing...a mass of business records from which the answers cannot be ascertained by a person unfamiliar with them. Rather, the responding party has a 'duty to specify, by category and location' the records from which he knows the answers to the interrogatories can be found." *Id.* When a producing party fails to provide "detailed specification by category and location of responsive documents,

[20] As there are no Rule 30(b)(5) cases on point, and as Rule 30(b)(5), RCFC, specifically incorporates the procedure of Rule 34, Rule 33(d) [interrogatory document production] cases are applicable here. Rule 34 cases are also provided, *infra*.

the burden of deriving the answers to the interrogatories is not the same for the parties; rather it would be easier for persons employed by the defendants to locate responsive documents." *O'Connor v. Boeing North America, Inc.*, 185 F.R.D. 272, 278 (C.D. Cal. 1999). **Chief Judge Damich of the Court of Federal Claims has observed that "[a] simple offer to produce unspecified documents or a general reference to a pile of documents will not suffice."** *AAB Joint Venture,* 75 Fed. Cl. at 452 (emphasis added). Therefore, when a defendant "refers broadly to all documents produced in response to requests for production of documents…[it] has not met its duty of specificity in order to rely on RCFC 33(d) in answering Plaintiff's interrogatories." *Id.*

**Rule 34 Cases**

Under Rule 34, a party producing documents "cannot attempt to hide a needle in a haystack by mingling responsive documents with large numbers of nonresponsive documents." *Hegemeyer North America, Inc., v. Gateway Data Sciences Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004).[21] While Rule 34 does not require a responding party to organize and label the documents as they would be kept in the ordinary course of business, the "producing party 'has an obligation to organize the documents in such a manner that [the requesting party] may obtain, with reasonable effort, the documents responsive to their requests.'" *Oklahoma, ex rel. Edmondson*, 2007 WL 1498973, at *3 (N.D. Okla. May 17, 2007) (quoting *Williams v. Taser Intern., Inc*, 2006 WL 1835437, at * 7 (N.D. Ga. June 30, 2006). In other words, "simply directing the requesting party to the file cabinets and saying, 'Here are our documents as they are kept in the ordinary

[21] This is exactly what Defendant is trying here by directing Plaintiffs to a document repository, of over a million pages, involving FTCA claims concerning breaches of the levees and collapse of the flood walls of the 17th Street Canal, the London Avenue Canal, the Industrial Canal and the flooding from the Orleans Avenue Canal in New Orleans. None of that is at issue in this Fifth Amendment litigation concerning St. Bernard Parish.

course of business,' would be wholly insufficient to satisfy the producing party's obligations under Rule 34." *Id.* Instead the producing party that elects to use Rule 34 "must either direct the responding party to the location or locations within its files where documents responsive to each of their specific requests may be found, or provide a key or index to assist the responding party in locating the responsive documents. *Id.* The Defendant has done none of this here and it should be called to task for this misconduct.

**Back to the Rule 30(b)(6) Deposition**

Frankly, the best evidence of what the Defendant failed to do in response to its discovery obligations is set forth in the deposition transcript; it should be reviewed by the Court side by side with the notice.[22] The cases cited in footnote 15, *supra*, demonstrate that the entity Defendant is required to produce one or more persons with requisite knowledge to testify; the mere act of presenting a human body to speak on its behalf is not sufficient.[23] In fact:

> If the designated deponent cannot answer those questions, then the corporation has failed to comply with its Rule 30(b)(6) obligations and may be subject to sanctions, etc. The corporation has an affirmative duty to produce a representative who can answer questions that are both within the scope of the matters described in the Notice and are known or reasonably available to the corporation. Rule 30(b)(6) delineates this affirmative duty.

[22] Again, the Defendant did not obtain a Rule 26(c) Order relieving the Defendant of its obligations to respond to discovery. Although a gentleman's agreement was in place trying to work this out, the absolute stiff-arm which Plaintiffs' counsel received on 12 January 2007 upon arrival at the Corps' offices for the deposition was certainly not contemplated. By way of example, page 97 of the deposition transcript indicates that the sole testifying witness was not the person most knowledgeable with respect to topic 1. The same applies with respect to topic 2 (page 99), topic 4 (page 110), topic 10 (page 123), topic 11 (page 124), topics 12, 13 and 14 (page 126), topic 16 (page 127), and the clincher on page 145 (where the sole testifying witness indicated she possessed no knowledge with respect to the specific dredging inquiries set forth in the Notice).

[23] *Quantachrome Corp. v. Micro Metrics Instrument, Corp.*, 189 F.R.D. 1967 (S.D. Fla. 1999).

*King v. Pratt & Whitney,* 161 F.R.D. at 476. This affirmative obligation on the part of an entity defendant is also set forth in Wright & Miller, Federal Practice and Procedure § 2103 n. 7.1 (2007).

**Necessity of This Discovery to the Proceedings at Issue**

As fully specified to the Court in the previous Motion to Compel filed by Plaintiffs,[24] the open issues for discovery are precisely those which this Court needs to determine with respect to the 28 U.S.C. § 2501 issues. Cases which indicate the fact intensive nature of the § 2501 inquiry include, in addition to those previously cited to the Court in this case, *Ingrum v. U.S.,* 2007 WL 1932981 (Fed. Cl. 2007); *King v. United States,* 427 F.2d 767 (Fed. Cl. 1970); *Barnes v. United States,* 538 F.2d 865 (Fed. Cl. 1976); and *Banks v. United States*, 314 F.3d 1305 (Fed. Cir. 2003) (discussing mitigation as an impediment to a successful § 2501 Motion).

This Court's ruling of 29 March 2007 indicates that Plaintiffs must provide evidence demonstrating that "stabilization" had not yet occurred (by 17 October 1999) with respect to the expansion of the MR-GO by virtue of the "continued operation, maintenance, and dredging." Rec. Doc. 39, page 8.

The critical nature of the discovery sought by Plaintiffs here is highlighted by the recent companion cases of *Banks v. United States,* 76 Fed. Cl. 686 (Fed. Cir. 2007) and *Banks v. United States,* 76 Fed. Cl. 698 (Cl. Ct. 2007). The *Banks* litigation demonstrates that claimants must be diligent in their efforts to provide the District Court with the proper assemblage of evidence in respect of § 2501 issues.

Another issue of which the Plaintiffs here are mindful is the relationship of the § 2501 issues to the requirements of *Ridge Line, Inc. v. United States*, 346 F.3d 1345 (Fed.

[24] Rec. Docs. 20, 21 and 23.

Cir. 2003) and *Moden v. United States,* 404 F.3d 1335 (Fed. Cir. 2005). Plaintiffs here are diligently pursuing these items in discovery, especially considering the admonitions of this Court indicating that Plaintiffs must be prepared to fully demonstrate causation to ensure standing. Any such failure could result in the fate which befell the Plaintiffs in *Nicholson v. United States,* No. 05-1259 L (Order of Dismissal of 27 July 2007, Rec. Doc. 41 in that case). Particular emphasis is directed to the failings specified on pages 16-21). See also, *N'West La. Fish & Game Preserve Comm. v. United States,* 446 F.3d 1285 (Fed. Cir. 2006). The relationship between the § 2501 issues and the threshold proof required to properly bring a physical invasion takings case are such that inquiry is also required into certain of those issues to guard against summary dismissal.

Consequently, Plaintiffs' counsel is diligently pursuing these matters in discovery such that evidence can be assembled for consideration by the Court with respect to this Fall's expected motion practice.

**Misconduct of Counsel Opposite**

Rule 30(b)(1) of the Rules the United States Court of Federal Claims prohibits speaking objections and other conduct which would be detrimental to the fair examination of a deponent. However, counsel opposite's disdain for this Rule is clearly set forth in pages 21-22 of the deposition transcript. The following exchange is educational:

> MR. WILES: Okay. Let's have an agreement. I appreciate your explanation, but let's have an agreement going forward that we don't have any speaking or coaching objections of the witness. Is that okay?
> MR. DISHEROON: No, it's not okay.

That was just the beginning. Rather than belabor the point, counsel does wish to point out to the Court that instructions not to answer were repeatedly issued; exemplars are

found on pages 83 and 84 of the deposition transcript. That is clearly improper. Jurisprudence which confirms that such conduct's improper include: *Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000); *Nutmeg Ins. Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504 (W.D. La. 1988); *Fondren v. Republic American Life Ins. Co.*, 190 F.R.D. 597, 600 (N.D. Okla. 1999); *Boyd v. Univ. of Maryland Med. Sys.*, 173 F.R.D. 143, 144 (D. Md. 1997).

**Conclusion**

Pursuant to this Court's instructions for the parties to proceed apace with discovery directed at the § 2501 issues, and in accordance with this Court's ruling of 29 March 2007,[25] counsel for Plaintiffs has been attempting to do as directed by Your Honor. However, counsel for Plaintiffs have been thwarted at every turn in their attempts to properly conduct the Rule 30(b)(6) Deposition of the United States and obtain the Rule 30(b)(5) Document Production which was to occur contemporaneously with that deposition. This can best be described as a poor day in the annals of discovery. Consequently, Plaintiffs hereby move for an Order compelling the Defendant to:

1. Produce appropriate witnesses (an excellent place to start would be the individuals identified by Ms. Daigle as being the actual "persons most knowledgeable" with respect to the topics set forth in the Notice) in New Orleans on a convenient date and time;[26]

2. That, given the stiff-arm provided in respect of the Rule 30(b)(5) document production which was to take place on 12 June 2007, without even so much of

[25] Rec. Doc. 39.

[26] It should be noted that Defense counsel is scheduled to return to New Orleans to conduct further depositions in this case in the coming weeks, so we should be able to schedule the completion of the original Rule 30(b)(6) Deposition during that time.

a "warning" telephone call to counsel for Plaintiffs, that Defendant not only be required to bring appropriate witnesses to authenticate, identify and explain the documents it is to produce (as specifically requested in the Notice), but to also deliver those documents to the undersigned counsel for Plaintiffs within 10 days (so that they can be reviewed in advance of the deposition to save time);

3. That Defendant be admonished that if it continues with its obstructive conduct, that sanctions will be issued pursuant to Rule 37 of the Rules of the United States Court of Federal Claims; and

4. That all costs, expenses and attorneys fees attendant to the research, preparation and filing of this Motion to Compel, as well as the reconvening of the deposition, be taxed upon the recalcitrant party, the Defendant.

Plaintiff's counsel does not take the averments set forth in this Motion lightly. However, in many decades of practicing law, Plaintiffs' counsel can honestly aver to the Court that this is the single most amazing entity deposition that he has ever attended when it comes to "you get nothing." The Plaintiffs' counsel clearly believes that if he ever instructed his client not to produce any documents pursuant to a Rule 30(b)(5) document production, and failed to produce a single witness knowledgeable as to any topics set forth in a Rule 30(b)(6) Deposition Notice, that he would be called upon to show cause why sanctions should not issue.

Emotions run high in cases of this nature, where peoples lives have been completely upset, their property taken from them, their livelihoods extinguished, and many of their family members died. The clients of the undersigned counsel are frankly

stunned that this is how they are being treated by the very lawyers whose salaries are funded by taxes paid by the Claimants. Consequently, Plaintiffs respectfully pray that the Court issue appropriate Orders to move this matter forward.

Respectfully submitted this 7th day of August, 2007.

s/F. Gerald Maples
F. Gerald Maples T.A. (LA# 25960)
Stephen M. Wiles (LA# 17865)
Carlos A. Zelaya, II (LA# 22900)
F. GERALD MAPLES, P.A.
902 Julia Street
New Orleans, LA 70113
Telephone: (504) 569-8732
Facsimile: (504) 525-6932

-and-

J. Wayne Mumphrey (LA# 9824)
MUMPHREY LAW FIRM, LLC
One Canal Place
365 Canal Street, Sute 2280
New Orleans, LA 70130
Telephone: (504) 569-0661
Facsimile: (504) 569-0665

-and-

John H. Musser, IV (LA# 9863)
201 St. Charles Avenue; Suite 2500
New Orleans, LA 70170
Telephone: (504) 599-5964
Facsimile: (504) 566-7185

**CERTIFICATE OF SERVICE**

I hereby certify that by filing the foregoing pleading via the ECF for the United States Court of Federal Claims, a copy of the above and foregoing will be served upon counsel for the United States, pursuant to the E-Noticing System this 7th day of August, 2007. A courtesy copy is also being directly e-mailed to Messrs. Disheroon and Romley.

s/F. Gerald Maples
F. Gerald Maples