Exhibit 4 To Motion To Compel And For Imposition of Fees and Expenses
Correspondence to Fred Disheroon from Stephen M. Wiles (May 2, 2007)

EXHIBIT
tabbies
4

LAW OFFICE

**F. GERALD MAPLES, P.A.**

F. Gerald Maples*
J. Stuart Kirwan, III †
Carlos A. Zelaya, II Δ
Stephen M. Wiles †
Alexander J. Williamson †
Laurent J. Demosthenidy †

* Licensed in AL, LA, FL & MS
† Licensed in LA
Δ Licensed in LA and VA

2 May 2007

**VIA FACSIMILE & E-MAIL**
**202.616.9667**

**File 06-1001**

Mr. Fred Disheroon
U.S. Department of Justice
Environment and Natural Resources Division
Special Litigation Unit
P.O. Box 7397
Ben Franklin Station
Washington, D.C. 20044-7397

*Re: Rocco Tommaseo, et al v. The United States*
*1:05-cv-1119 SGB*

Dear Mr. Disheroon:

You have indicated on several occasions, including our last telephone conference with Judge Braden, that you find it difficult to adequately respond to our discovery requests because you lack sufficient information about Plaintiffs' causes of action to place these requests into context. While I disagree with your assertions that Plaintiffs' claims are unclear on the face of the pleadings (including the many affidavits which we filed), I believe it would be helpful to explain it to you in this writing to give our discovery requests greater context. In this way, I hope that we can reach an agreement about the appropriate scope of jurisdictional (statute of limitations) discovery (or, failing same, to provide Judge Braden and Matt Spengler with our position).

Plaintiffs' causes of action are relatively straightforward. In essence, Plaintiffs are suing for the diminution in their property value caused by repeated flooding attendant to the MR-GO. The flooding is the result of wetlands loss and degradation caused by the construction, maintenance, dredging and use of the MR-GO. The MR-GO is a direct pathway from the Gulf of Mexico into the heart of our clients' properties; it allows excessive saltwater intrusion to kill marshes and wetlands. Furthermore, the constant dredging activities of the Corps, combined with the wave action caused by passing ships and barges, increase the rate of wetland loss. The loss of wetlands along the MR-GO has become so extreme that even relatively minor wind events now cause Plaintiffs' property to flood; tropical cyclones are simply devastating to these lands. These wind-caused floods occur so frequently that they constitute a flowage easement over the Plaintiffs' property. In short, in creating, dredging and operating the MR-GO, the Government has taken Plaintiffs' right to keep their land and improvements dry and usable.

902 JULIA STREET • NEW ORLEANS, LOUISIANA • 70113
PHONE: 504-569-8732 • FAX: 504-525-6932
(TOLL FREE) 866-548-7765

Defendant argues that because the MR-GO's original construction was several decades ago, Plaintiffs should be barred by the 6-year statute of limitations from asserting their causes of action. There are at least three reasons why Plaintiffs' claims are not time-barred.

First, numerous cases have held that a takings claim does not begin to accrue until the claim is ripe. *See, e.g., Royal Manor, Ltd. v. United States*, 69 Fed. Cl. 58, 61 (2005). Because Plaintiffs did not suffer repeated flooding until 2005, their claims did not accrue until 2005. While some of Plaintiffs' properties have flooded in the past as a result of large hurricane-related storm surges (such as that produced by Hurricane Betsy in 1965), no Plaintiff's property was subjected to regular flooding prior to 2005. In other words, prior to 2005, Plaintiffs' property flooded only as a result of direct hits by major hurricanes, but after 2005 their property began to flood on a regular basis. These more frequent flooding events are not necessarily associated with hurricane activity, but are also caused by tropical storms and/or strong winds; we have provided you with affidavits to this effect. A St. Bernard Parish property owner would not be able to assert a takings claim prior to 2005 because their property flooded only during the occasional major hurricane. After 2005, however, portions of St. Bernard Parish flood on a regular basis, which is an actionable taking. *See United States v. Cress*, 243 U.S. 316, 327-28 (1917).

Thus, while some of Plaintiffs' properties only used to flood as a result of hurricanes, they are now flooded every few months (or in some cases weeks) whenever the winds blow in the wrong direction. This pattern of intermittent flooding is precisely what the Supreme Court contemplated when it established the "intermittent but inevitably recurring overflows" standard in *Cress*. *Id.* at 329. Plaintiffs allege that the construction, maintenance and operation of the MR-GO caused this change by creating an ever-widening gap in the wetlands that formerly protected Plaintiffs' property from storm surge and wind-blown water. Moreover, the banks of the MR-GO act as a funnel, magnifying the height and the destructive capacity of storm surges and wind-blown waters, especially in its current manifestation of three to four times of the authorized width. Simply put, were it not for the MR-GO, Plaintiffs' property would remain dry except during the most severe/direct hit hurricane-induced storm surges.

Second, and alternatively, in the event that Plaintiffs' cause of action actually accrued prior to 2005 (if, for example, accrual began at some theoretical point in time at which Plaintiffs should have anticipated that the MR-GO would cause this repeat flooding of their properties), then the statute of limitations tolled until the conditions that produced the takings stabilized. *See, e.g., United States v. Dickinson*, 331 U.S. 745, 746 (1947). Plaintiffs respectfully submit that the rapid wetlands loss caused by the MR-GO has been continuous since its construction, and continues today at an ever-increasing pace. Far from reaching stasis, the conditions that caused Plaintiffs' claims are actually rapidly deteriorating, and the Corps continued to contribute to the problem by dredging (into the

Summer of 2005) and operating the MR-GO. Thus, the statute of limitations cannot bar Plaintiffs' claims so long as the problem continues to worsen. The Corps' own studies indicate that conditions at the MR-GO are not likely to improve in the near future; we seek to confirm this in the contemplated discovery.

Third, several cases indicate that the statute of limitations tolls so long as the Government is taking steps to mitigate the problem that resulted in the taking. *See, e.g.*, *Banks v. United States*, 314 F.3d 1304 (Fed. Cir. 2003). The materials we have uncovered to date indicate that the Corps undertook an extensive mitigation program to stabilize the banks of the MR-GO and slow or prevent the erosion and other deleterious effects. These efforts continued until well past 17 October 1999, and therefore tolled the statute of limitations. We seek testimonial confirmation of that from your client by way of the Rule 30(b)(6) Deposition Notice.

In short, Plaintiffs' arguments related to Defendant's statute of limitation defenses are that: 1) the claim did not accrue until 2005 when Plaintiffs' property began to experience recurrent flooding; 2) alternatively, if Plaintiffs' claims accrued prior to 2005, then they will toll until the conditions stabilize; and 3) (also alternatively) if Plaintiffs' claims accrued prior to 2005, then they were tolled by the Corps' efforts to mitigate the flooding caused by the creation, maintenance and operation of the MR-GO. I will attempt to address each of the concerns expressed in your 24 April 2007 with references to one or more of these three arguments. I will use the same numbering system you used in your letter for ease of reference, and then refer to paragraphs of the Rule 30(b)(6) Notice, as did you.

1. We certainly have no problems coordinating the depositions as you request, as it will save all parties considerable trouble and expense. We rescheduled the depositions to the dates you requested yesterday.

2. I have attached my correspondence of 12 April 2007 which is self-explanatory. We are entitled to updated responses from your clients.

Paragraph 1: With regard to your comment about the dredging contracts, I would simply note that we have recently obtained information indicating that the Corps executed several contracts related to the dredging of the MR-GO that were not provided when I visited the Corps' offices. Perhaps the best way to approach this problem would be to have the Corps provide us with a complete list of the contracts for dredging services to be performed in the MR-GO within the relevant 6-year time frame, plus a witness to discuss the specifics of the activity.

Paragraph 2: The task force to which I referred is a creation of your client. This information is relevant to Plaintiffs' stabilization argument as it shows that the wetlands

surrounding the MR-GO continued to deteriorate during the relevant six-year time period, and that the conditions which caused the flooding of Plaintiffs' properties had not yet stabilized.

Paragraph 3: The information we requested about this study also relates to Plaintiffs' stabilization argument, and thus it is clearly within the scope of discovery allowed by Judge Braden's order. While I understand your unwillingness to offer testimony which you believe would waive the deliberative process privilege, my review of the jurisprudence and commentary indicates that privilege protects only opinions, not facts.[1] Furthermore, it does not protect opinions that were formulated after the agency had reached a formal conclusion.[2] Thus, while you are free to attempt to assert the privilege when we ask questions that call for a pre-decision opinion, it is not appropriate for you to use the privilege to shield post-decision opinions or facts. We have every right to depose a witness to determine the factual underpinnings of the report, as well as any facts that were left out of the report of your client's task force.

Paragraph 4: See paragraph 3, *supra*, with regard to your assertion of the deliberative process privilege. In addition, I would note that the information contained in the *Science* article is highly relevant to Plaintiffs' stabilization argument. Plaintiffs are entitled to question the Corps about its official position with regard to the facts and opinions set forth in the *Science* article. Specifically, we are entitled to know whether the Corps agrees, disagrees or has no official position regarding the *Science* article's conclusions. Official positions are absolutely not covered by the deliberative process privilege as they are part of the public record.[3]

---

[1] *See, e.g.*, *Cobell v. Norton*, 213 F.R.D. 1, 6 (D.D.C. 2003) (noting that "it is well-established that discussions of objective facts, as opposed to opinions or recommendations, are not protected by the [deliberative process] privilege"); *see also Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882 (5th Cir. 1981) ("Thus, the courts have uniformly held that such purely factual information is not protected by the privilege."). For a more comprehensive outline of the application of the deliberative process privilege, *see* Charles Alan Wright, *Official Information—Deliberative Process Privilege*, 26A Fed. Prac. & Proc. Evid. § 5680 (2007).

[2] *Tax Analysts v. I.R.S.*, 294 F.3d 71, 80 (D.C. Cir. 2002) (noting that the deliberative process privilege applies to "'predecisional communications' reflecting an agency's internal deliberations, but not communications that explain a decision that has already been made"), citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151-52 (1975).

[3] *Tax Analysts*, 294 F.3d at 80. Furthermore, the privilege applies solely to documents, not to live testimony. *See Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (applying the privilege only to "documents").

Paragraph 6: See paragraphs 3 and 4, *supra*, with regard to your assertion of the deliberative process privilege. Here we seek factual information regarding the dredging activity.

Paragraph 7: Hurricane Cindy hit the New Orleans area in June 2005, contrary to your assertions. We are entitled to discover your client's information regarding flood events during the period specified by Judge Braden.

Paragraph 8: How can it be that no work was authorized on the MR-GO since 1999? There are tens of millions of dollars in dredging contracts alone. We are clearly entitled to explore these issues within the time period specified by Judge Braden.

Paragraph 9: We are clearly entitled to discover your client's records of tropical cyclonic storms[4] and flooding of the Plaintiffs' property during the time period specified by Judge Braden. These records cut at the heart of the issue: When did the flooding become so frequent as to begin the statute of limitations?

Paragraph 10: See paragraphs 3 and 4, *supra*, with regard to your assertion of the deliberative process privilege. Please note that you cannot shield discovery of facts, only opinions. To the extent that the investigations are ongoing, the interim opinions may be protected, but the facts gathered as a result of the investigation are not protected by privilege.

Paragraph 11: Here we seek records of activity within the relevant time period.

Paragraph 12: This deals with the mitigation issue noted in *Banks v. United States*, *supra*.

Paragraph 13: The flood events for which we have requested information are relevant to Plaintiffs' ripeness argument. Specifically, Plaintiffs will demonstrate that the number of flood events has dramatically increased in the last few years, and that the flooding recurs so frequently that it amounts to the Government taking a flowage easement. The frequency of the flooding events is a critical component of that analysis, and the Government's records indicating the frequency and severity of the flooding on Plaintiffs' property will demonstrate just how frequent these events have become.

Paragraph 14: This information is also relevant to Plaintiffs' ripeness claims. Plaintiffs assert that the number of flood events related to the MR-GO has dramatically

---

[4] In your letter you contend that you are unsure of the meaning of "tropical cyclonic storms." Please use the accepted meteorological definition employed by an agency of your client, NOAA.

increased over the past few years, and the number of claims submitted to the Government for flooding would be highly relevant to that analysis. We are entitled to discover these matters during the period specified by Judge Braden.

Paragraph 15: We are entitled to a live witness and the records. Please provide same.

Paragraph 17: See paragraphs 3, 4 and 10, *supra*, with regard to your assertion of the deliberative process privilege.

Please advise if there is any argument here. If not, please deliver the agreed upon package to Judge Braden's chambers as soon as possible. Thank you for that courtesy, and we look forward to meeting you in person next month.

Cordially,

Stephen M. Wiles

SMW/let
Enclosure
cc: F. Gerald Maples (via e-mail, w/encl.)
J. Wayne Mumphrey (via e-mail, w/encl.)
Wayne B. Mumphrey (via e-mail, w/encl.)
Clayton Connors (via e-mail, w/encl.)
Carlos A. Zelaya (via e-mail, w/encl.)
John Musser, IV (via e-mail, w/encl.)
Rick Tonry (via e-mail, w/encl.)
Mark Romley (via e-mail, w/encl.)