## UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ROCCO TOMMASEO, *et al.* ) | |
| ) | |
| Plaintiffs ) | |
| ) | 1:05-cv-1119 SGB |
| V. ) | Hon. Susan G. Braden |
| ) | |
| THE UNITED STATES ) | |
| ) | |
| Defendant ) | |

### REPLY MEMORANDUM TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED CLASS ACTION COMPLAINT

MAY IT PLEASE THE COURT:

In its Opposition to Plaintiffs' Motion for Leave to File their Second Amended Class Action Complaint, Defendant United States cites to no jurisprudence or statutory law. Defendant ignores the precedents cited in Plaintiffs' Motion for Leave, including cases from this very Court, that Plaintiffs should be provided leave to amend their Complaint further to Rule 15's provision that leave to amend is to be freely given when "justice so requires." Instead, Defendant offers legally irrelevant, and factually unsupported allegations carping about the "substance" of the proposed Second Amended Class Action Complaint. As the opposition of Defendant fails to refute the "freely given" policy underpinning Rule 15, and further fails to conclusively rebut the "good cause" demonstrated, Plaintiffs' Motion for Leave to File the Second Amended Class Action Complaint should be granted.

**Pick Your Poison**

Defendant criticizes the proposed Second Amended Class Action Complaint's factual detail, specification of additional representative parcels and delineation of causes of action and theoretical underpinnings of each despite defense counsel's relentless pleas for such additional detail. Now that Plaintiffs have provided further specifics and detail, Defendant stunningly objects to Plaintiffs' proposed Second Amended Class Action Complaint because Defense counsel finds the very detail and specification which he has requested to now be "grossly expansive." (Rec. Doc. 52 ¶ 4).[1]

For the reasons addressed below, Defendant's Opposition to Plaintiffs' Motion for Leave to Amend does not survive a Rule 15 analysis; Plaintiffs should be provided leave to file their Second Amended Class Action Complaint.

**Neither Rule 15, Nor the Tucker Act, Contain a Requirement that Plaintiffs Plead a Specific Date of Taking, Especially Given the Stabilization Doctrine Issues Extant.**

In the Opposition to Plaintiffs' Motion for Leave to Amend their Class Action Complaint (Rec. Doc. No. 52), Defendant asserts "the proposed amended complaint is insufficient as it does not in any place allege the purported date of taking of the properties so claimed [sic]." Rec. Doc. 52 ¶ 4. Defendant contends, without citation to legal authority or resort to logic, that alleging a specific date is important "because the various claims plaintiffs now assert will likely have different accrual dates." Rec. Doc. 52 ¶ 4, n. 1. Assuming, *arguendo*, that different Plaintiffs in this putative class action may have slightly different accrual dates, Defendant cites no authority, nor explains why specification of precise taking dates is required.[2] To the contrary, the jurisprudence detailing gradual takings (caused by natural processes such as saltwater intrusion, inundation and erosion) finds such arguments unavailing.

---

[1] This is not a recognized basis for opposition of a Rule 15 motion.
[2] Nor is there any linkage of Defendant's "theory" to Rule 15.

**This Suit Involves Physical Invasions, Not Regulatory Takings**

In *Cristina Inv. Corp. v. United States*, 40 Fed. Cl. 571 (1998), this Court explained the distinction between physical and regulatory takings. If the Plaintiffs *sub judice* were complaining of a regulatory (permit) taking, Defendant's argument might be worthy of consideration. However, this is a "continuous physical process"[3] suit. Ergo, the "stabilization principle" enunciated in *Dickinson v. United States*, 331 U.S. 745, 749 (1947), controls. As the Second Amended Class Action Complaint, on its face, avers that the physical taking continues today, unabated, Defendant's argument is inapplicable. *Id*.

Unlike some causes of action that may have specifically articulated pleading requirements, "[t]he Fifth Amendment expresses a principle of fairness and not a technical rule of procedure enshrining old or new niceties regarding 'causes of action'—when they are born, whether they proliferate, and when they die." *Id*. at 748. In cases involving gradual processes, "the owner is not required to resort either to **piecemeal** or premature litigation to ascertain the just compensation for what is really 'taken.'" *Id*. at 749 (emphasis added). The claim only accrues when "the consequences of inundation have so manifested themselves that a final account may be struck." *Id*.

**Dickinson and Its Progeny Vitiate the Defendant's Substantive Complaints, and Defendant Has Offered No Legally Cognizable Impediment to the Amendment Sought.**

"*Dickinson* warned against applying an excessively rigid rule when the government takes property through a gradual physical process." *Hansen v. United States*, 65 Fed. Cl. 76, 125 (2005); *see also Forsgren v. United States*, 64 Fed. Cl. 456, 458 (2005) (holding "[t]he Supreme Court has discouraged courts from applying the principles of accrual too strictly."). Because of the inherent uncertainty in determining the accrual of a claim involving gradual natural

---

[3] 40 Fed. Cl. at 573.

processes, "*[a]dopting a date of taking must often be done in a somewhat imprecise manner*." *Barnes v. United States*, 538 F.2d 865, 873 (Ct. Cl. 1976) (emphasis added).  As not all takings involve neatly-packaged government actions of finite temporal and geographic scope, some uncertainty is inherent in "continuous physical process suits."[4]  In such cases, "fixing the exact date of taking must be a jury verdict sort of thing," sorted out with the substantive merits of the case. *Drakes Bay Land Co. v. United States*, 424 F.2d 574, 587 (Ct. Cl. 1970).

In the case *sub judice*, Plaintiffs have alleged takings via natural and gradual processes attendant to the construction, dredging, maintenance and operation of the MRGO and its sequelae.  Other than perhaps determining the measure of damages at trial, the exact date of taking is irrelevant to the current Rule 15 inquiry.  All of the Plaintiffs, both old and new, have brought their claims within six years of when "the consequence of inundation have so manifested themselves that a final account may be struck."  Plaintiffs have referred to the disastrous effects of Hurricane Katrina (which struck 29 August 2005), problems manifest forward of 2002 (Hurricane Lili), repetitive "good" and "bad" weather appropriation of private property forward of 17 October 1999 by the sequelae of the MRGO project, plus other named tropical cyclones and recurrent "ordinary" weather events.  Plaintiffs have specified particular actions of the United States Army Corps of Engineers, such as the problematic dredging of the MRGO from October 1999 through August of 2005, which establish a taking within six years of the filing of the Original Complaint in October 2005.

**Defendant's Opposition Fails to Address Any Relevant Rule 15 Issue**

There is no legal authority that Plaintiffs can find—and Defendant has cited none—that indicates that Plaintiffs must plead a specific date of taking (regardless of whether this case is certified as a class action or not).  The Supreme Court has mandated flexibility in determining

---

[4] *Cristina Inv. Corp.*, 40 Fed. Cl. at 573.

when takings caused by "continuous physical processes" occur, and the United States Court of Federal Claims has repeatedly held that the exact date of taking is sometimes "imprecise," to ultimately be determined by the finder of fact at trial. This is a Rule 15 Motion for Leave to Amend, not a trial on the substantive merits of Plaintiffs' claims.

### Plaintiffs Have Maintained the Consistent Theory that the MRGO Project is a Taking for Public Purpose without Just Compensation

Contrary to Defendant's assertion that the Proposed Second Amended Class Action Complaint modifies the claims of the originally named Plaintiffs, the proposed amended pleading merely expands upon what Plaintiffs pled in the Original and First Amended Class Action Complaints. Defendant incorrectly states that the Proposed Second Amended Class Action Complaint "essentially drop[s] the causal mechanism as Hurricane Katrina and other 'tropical cyclonic weather events" and now seeks recovery for a taking because of the alleged effects of the Mississippi River Gulf Outlet Project (MRGO) over an unstated but obviously long period of years." Rec. Doc. 52 ¶ 5.

From the beginning, Plaintiffs have alleged the same basic set of facts concerning the MRGO project; the Proposed Second Amended Class Action Complaint expands and further clarifies what Plaintiffs previously alleged. For example, the Original Class Action Complaint discussed the effects of saltwater intrusion, alleging "[t]he creation of the MRGO allowed salt water from the Gulf of Mexico to flow further inland into the marshes of St. Bernard Parish thereby killing plants and vegetation which had served to hold land and soil in place." Rec. Doc. 1 ¶ 6. Also in the Original Class Action Complaint, Plaintiffs made allegations concerning dredging of the MRGO channel, specifically averring "the United States, acting through the U.S. Army Corps of Engineers, has repeatedly dredged the bottoms of the MRGO removing soil that had eroded…and placing the dredged soil into the Gulf of Mexico rather than attempting to

restore the marshlands of St. Bernard Parish." Rec. Doc. 1 ¶ 7. The Original Class Action Complaint devoted exactly one paragraph to Hurricane Katrina's specific role in the takings at issue. In the two years following the filing of the Original Complaint, other homeowners and business have felt further impacts attendant to the MRGO project.

In the Original Class Action Complaint Plaintiffs alleged that the MRGO created a direct line of access for hurricane-related storm surge to reach upper St. Bernard Parish (Rec. Doc. 1 ¶ 9); however, at no time have Plaintiffs retracted that allegation. The additional allegations made in the proposed Second Amended Class Action Complaint expand on what Plaintiffs have previously alleged; these refined pleadings are not at all incompatible with the allegations made in the first two versions of the Complaint.[5] At the risk of oversimplification, a plain reading of the Original and First Amended Class Action Complaints specifies that the construction, modification dredging, expansion, maintenance and operation of the MRGO project caused many problems. The channel eroded up to five times beyond its authorized width, killed marshland, and provided direct access for hurricane and other storm surges caused by tropical weather events to invade the interior of St. Bernard Parish. The proposed Second Amended Class Action Complaint does not change what Plaintiffs have already alleged. The proposed Amendment avers that the effects of the MRGO project are now worse than were realized when the Original Complaint was filed. It no longer takes a hurricane to flood significant portions of the area in question—even on sunny days, wind blowing in certain directions can cause extensive flooding of Plaintiffs' properties. The new representative Plaintiffs are exemplars of this type of appropriation. Plaintiffs are not alleging that the problems attendant to the MRGO project are "different," rather, Plaintiffs are providing specification of the precise takings at issue, via exemplar parcels and specification of the mechanics and hydrology involved.

---

[5] Drafted in the immediate aftermath of Hurricane Katrina.

**Plaintiffs' Claims, Including those of the St. Bernard Parish Government are Compensable Takings Which Will Provide Further "Clarification," as Defendant Requested.**

At common law, a private property owner possessed the "'absolute right…in the free use, enjoyment, and disposal of all his acquisitions.'" *Hansen*, 65 Fed. Cl. at 98 (citing 1 WILLIAM BLACKSTONE, COMMENTARIES 138).  "The Fifth Amendment clearly protects interests in real property, such as the Owners' interests in the land and buildings." *Chancellor Manor v. United States*, 331 F.3d 891, 901 (Fed. Cir. 2003) (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1016 n. 7 (1992)).  In analyzing the dimensions of the ownership interest allegedly taken by a federal project, "it is well accepted that law other that the Constitution itself, often state law, defines what property is." *Hansen*, 65 Fed. Cl. at 123.

With Louisiana's civil law tradition, full ownership has been traditionally defined in terms of *usus* (the right to use and enjoy the property), *fructus* (the right to enjoy the fruits of the property); and *abusus* (the right to alienate the property). *Rodrigue v. Rodrigue*, 218 F.3d 423, 436-37 (5th Cir. 2000).  The Louisiana Civil Code defines full ownership as the "right that confers on a person direct, immediate, and exclusive authority over a thing.  The owners of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law." La. Civ. Code art. 477 (West 2007).

In the case *sub judice*, Plaintiffs have specified (in their proposed Second Amended Class Action Complaint) multiple ways in which the MRGO project and its sequelae have appropriated private property rights (established by Louisiana law) for a public purpose without just compensation.  The Complaint at issue alleges that the United States Army Corps of Engineers has taken, at the very least, a flowage easement (servitude of flowage or drainage in civilian argot) over their properties.  Consequently, each Plaintiff's ability to use and enjoy their respective property (*usus* and *fructus*) has been effectively taken.  In another example, where

7

property owners are forced to elevate buildings and equipment due to the increased frequency of flooding attendant to the MRGO project and its sequelae, their ability to use and enjoy their property has been taken.[6] Furthermore, where a Plaintiff such as the St. Bernard Parish Government cannot sell or use its property (due to the reduced property values and recurrent flooding events caused by the MRGO project), its *abusus* has also been taken. In summary, the entire "bundle of rights" has been taken by the federal project at issue.

### The Proposed Second Amended Class Action Complaint Does Not Expand the Scope of Potential Plaintiffs; Defendant Ignores That This Case Has Always Been a Putative Class Action for All of St. Bernard Parish and the Lower Ninth Ward of the City of New Orleans

Defendant seems to forget that this case is a parish-wide class action.[7] The requirements of a class action, in addition to numerosity, include common questions of law and fact, that the claims of the representative parties are ***typical*** (not "exactly alike"), and that the named plaintiffs will ***fairly and adequately*** be representative of all claims (*i.e.* the claims of the named plaintiffs do not have to be precisely the same as the putative class members they prospectively represent). See *Barnes v. United States*, 68 Fed. Cl. 492, 498 (2005) (holding "[l]ike the commonality requirement, typicality does not require the representative parties' claims to be identical to the putative class members."). Additionally, given the scope of the taking alleged (affecting thousands of property owners), the proposed amended class action is a fair and efficient way to address the appropriation of private property by the MRGO project versus having the proposed newly-named plaintiffs file a second suit for appropriation of their immovable property by the MRGO project (as Defendant suggests).[8] *See* RCFC 23; *Barnes*, 68 Fed. Cl. at 494.

---

[6] Diminution in value also appends to the repeat flood events.
[7] Plaintiffs are not yet requesting a class certification hearing, and the Court addressed this issue during a telephone conference over a year ago. Further, RCFC 23 provides this Court with the flexibility to manage the case in such as fashion as to show that Defendant's complaints and criticisms in this regard (in its Opposition to Motion for Leave to Amend Complaint) (Rec. Doc. No. 52) are without merit.
[8] Only to have the "new" suit be consolidated with this one via Rule 20.

In Plaintiff's Original Complaint, the action was brought on behalf of the named Plaintiffs and "all other persons similarly situated (*i.e.* property owners residing, owning property and/or engaging in commercial enterprises in St. Bernard Parish, Louisiana which property was taken by the United States for a public purpose….)" Rec. Doc. 1 ¶ 24. The First Amended Class Action Complaint described Plaintiffs as "residents of Louisiana who owned real property with improvements thereon, including both residential and commercial property in southeast Louisiana." Rec. Doc. 10 ¶ 10. Also, in the Request for Class Certification section of the First Amended Class Action Complaint, Plaintiffs averred that they brought the action "individually and on behalf of all other persons similarly situated (*i.e.* property owners residing, owning property and/or engaging in commercial enterprises in St. Bernard or Orleans Parish, Louisiana whose property was appropriated by the United States….). Rec. Doc. 10 ¶ 27. Naming additional plaintiffs, all of whom own immovable property in St. Bernard Parish or in the Lower Ninth Ward of New Orleans, areas already named in prior pleadings, does not prejudice Defendant nor does it change the essence of what Plaintiffs have already pled.

The MRGO channel, which is longer, deeper and wider than the Panama Canal, is of sufficient size and scope to potentially affect an entire parish (St. Bernard Parish) and part of another (Orleans Parish).[9] Any taking of this scale (in which thousands of property owners have been affected) may result in slightly different consequences for different property owners. By Defendants' logic, few, if any, class actions would be possible in a takings case.[10] Rule 23 provides the mechanism for this undertaking.

---

[9] The City of New Orleans is coterminous with Orleans Parish. The neighborhood known as the Lower Ninth Ward, while a part of the City of New Orleans, occupies the same geographic polder as St. Bernard Parish. The Lower Ninth Ward borders the northwestern terminus of the MRGO, ergo its inclusion in the First Amended Class Action Complaint as well as the Proposed Second Amended Class Action Complaint seeks to define the northern reach of the affected grand parcel.

[10] See *Barnes*, 68 Fed. Cl. at 498 (holding "[w]ere…[individualized damage determinations] determinative, there scarcely would be a case that would qualify for class status in this court or any other….").

As for nature of the takings specified in the proposed Second Amended Class Action Complaint, Defendants mislabel these descriptions as 'new" causes of action. The added detail in the proposed pleading "clarifies"—per Defendant's request—what Plaintiffs seek. For instance, Defendant complains that the interruption of operations by flooding of proposed new plaintiff Port Ship Service, Inc. constitutes a different cause of action because the proposed Second Amended Class Action Complaint refers to the more frequent closure of the locks along Bayou Bienvenue (which borders Port Ship Service, Inc.'s property). A proper reading of the proposed Second Amended Class Action Complaint reveals that the more frequent closure of the locks is a direct, natural and probable consequence of destruction of the marshes (caused by saltwater intrusion, land loss, flooding and other effects attendant to the MRGO project). In addition to the recurrent inundation, these problems force more frequent closures of the Bayou Bienvenue locks (which need to be open for Port Ship Service, Inc. to conduct its business) and, in the words of the *Original* Class Action Complaint, "plaintiffs have been deprived of the continued operation of their commercial ventures…." Rec. Doc. 1 ¶ 16. The example of Port Ship Service, Inc. and via the specific allegations in the proposed Second Amended Class Action Complaint, and Plaintiffs' desire to name additional parties plaintiff only, serve to more clearly define how the common problems attendant to the MRGO project have affected the property interests of various representative plaintiffs in hydrologically and topographically diverse areas within St. Bernard Parish and the Lower Ninth Ward of New Orleans.

**Conclusion**

Defendant conveniently ignores the style of the Original Class Action Complaint, First Amended Class Action Complaint and the proposed Second Amended Class Action Complaint. Plaintiffs have maintained a consistent geographic scope throughout (with the sole exception

being the addition of the Lower Ninth Ward of the City of New Orleans in the First Amended Class Action Complaint well over a year ago). As such, anyone owning immovable property in St. Bernard Parish or the Lower Ninth Ward, who have been adversely affected by repetitive flood events (linked to the MRGO project), is a putative class member. The proposed Second Amended Class Action Complaint "adds" plaintiffs who were already putative class members from the First Amended Class Action Complaint. Plaintiffs request leave to deliver that which the Defendant requested: "clarification." These proffered Plaintiffs specify additional grand parcels, plus the amended pleading articulates the taking allegations and theories with respect to each.

The oddity of the Opposition to this Motion is that defense counsel complained, at every turn, about the lack of "specificity" and/or "clarity" in Plaintiffs' Complaint. The proposed Second Amended Class Action Complaint provides outstanding detail, articulating exactly how the MRGO project and its sequelae have affected a taking. To provide further clarity, Plaintiffs provided detail as to how the MRGO project has affected geographically, hydrologically and topographically diverse areas ("grand parcels") of St. Bernard Parish, plus the Lower Ninth Ward of the City of New Orleans.

RCFC 15 and its jurisprudence[11] confirm that leave to amend is to be "freely given." The proposed Second Amended Class Action Complaint provides additional detail as to the mechanics of the takings resulting from the MRGO project, plus it details the implicated state law issues. Defendant's suggestion that the proposed additional Plaintiffs should file separate suits runs counter to the goal of judicial economy, especially as Plaintiffs have, beginning with the Original Complaint, styled their suit as a putative class action.

---

[11] *See ATK Thiokol, Inc. v. United States*, 76 Fed. Cl. 654, 663 (2007); *Hall v. United States*, 74 Fed. Cl. 391, 394 (2006).

11

For the above reasons, as well as the reasons posited in Plaintiff's Motion for Leave to File the Second Amended Class Action Complaint (Rec. Doc. No. 51), leave to file the Second Amended Class Action Complaint should be granted. During the telephone status conference of 5 December 2007, this Court remarked that the very objections lodged (by defense counsel) to the proposed amendment, were "not unusual," nor did the Court find the "changes" offered by the proposed amendment to be problematic.  The Motion for Leave should be granted.

        s/F. Gerald Maples
        F. Gerald Maples, T.A. (LA# 25960)
        federal@geraldmaples.com
        Stephen M. Wiles (LA# 17865)
        smwiles@fgmapleslaw.com
        Carlos A. Zelaya, II (LA# 22900)
        czelaya@fgmapleslaw.com
        F. GERALD MAPLES, P.A.
        902 Julia Street
        New Orleans, LA  70113
        Telephone: (504) 569-8732
        Facsimile: (504) 525-6932

        -and-

        J. Wayne Mumphrey (LA# 9824)
        MUMPHREY LAW FIRM, LLC
        One Canal Place
        365 Canal Street, Suite 2280
        New Orleans, LA 70130
        Telephone: (504) 569-0661
        Facsimile: (504) 569-0665

        -and-

        John H. Musser, IV (LA# 9863)
        201 St. Charles Avenue, Suite 2500
        New Orleans, LA  70170
        Telephone: (504) 599-5964
        Facsimile: (504) 566-7185

        -and-

                                          Richard A. Tonry (LA # 12859)
                                          Tonry and Ginart, LLC
                                          2114 Paris Road
                                          Chalmette, LA 70043
                                          Telephone: 504-271-0471
                                          Facsimile: 504-271-6293

## **CERTIFICATE OF SERVICE**

     I hereby certify that by filing the foregoing pleading via the ECF for the United States Court of Federal Claims, a copy of the above and foregoing will be served upon counsel for the United States, pursuant to the E-Noticing System, this 31st day of December, 2007. A courtesy copy is also being directly e-mailed to Messrs. Disheroon and Romley.

                                          s/F. Gerald Maples
                                            F. Gerald Maples