# In the United States Court of Federal Claims

No. 05-1119L
Filed: January 31, 2008
**TO BE PUBLISHED**

| | | |
|---|---|---|
| ROCCO TOMMASEO, THOMAS TOMMASEO, ROCKY AND CARLO, INC., STEVEN BORDELON, CYNTHIA BORDELON, and STEVE'S MOBILE HOME & R.V. REPAIR, INC., | * | Amended and Supplemental Pleadings, RCFC 15(a); |
| | * | Futility; |
| Plaintiffs, | * | Just Compensation Clause, U.S. CONST. amend. V; |
| | * | Motion For Leave To Amend Complaint; |
| v. | * | Prejudice; |
| | * | Standing; |
| THE UNITED STATES, | * | Subject Matter Jurisdiction; |
| | * | Undue Delay. |
| Defendant. | * | |

**F. Gerald Maples**, New Orleans, Louisiana, counsel for Plaintiffs.

**Fred Russell Disheroon**, United States Department of Justice, Environment and Natural Resources Division, Washington, D.C., counsel for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFFS' MOTION TO FILE A SECOND AMENDED COMPLAINT**.

**BRADEN, *Judge***.

On November 30, 2007, Plaintiffs filed a Motion To File A Second Amended (Class Action) Complaint[1] ("Pl. Mot. Leave"), together with a Proposed Second Amended Class Action Complaint ("Second Amend. Compl."). On December 17, 2007, the Government filed an Opposition ("Gov't Resp."), and on December 31, 2007, Plaintiffs filed a Reply ("Pl. Reply").

[1] The court has not considered the merits of Plaintiffs' Class Action Complaint at this juncture.

## I. RELEVANT FACTS.[2]

The Mississippi River Gulf Outlet ("MRGO") is a 76-mile, man-made navigation channel, designed and maintained by the United States Army Corps of Engineers ("Government"), that runs from the Gulf of Mexico to the Port of New Orleans. *See* First Am. Compl. ¶ 4. This federal project was authorized in 1956 to provide deep water vessels direct access between the Gulf of New Mexico and the Port of New Orleans for commercial and national defense purposes. *Id*. Construction began in 1958 and was completed in 1968. *See* Gov't Mot. Dis. at 3. The MRGO is 76 miles long and originally was authorized with a surface width of 650 feet, a bottom width of 500 feet, and a depth of 36 feet. First Am. Compl. ¶ 5. The MRGO is bordered on the east by Lake Borgne and on the west by marshland that lies between the MRGO and St. Bernard Parish. *Id*.; *see also* Gov't Mot. Dis. at 3.

The First Amended Complaint alleges that the MRGO is now significantly wider than the initial authorized size, *i.e.*, up to three times as wide in some areas. *See* First Am. Compl. ¶¶ 5-9. This increase in the width allegedly has occurred for two reasons. First, "the surface width [of the MRGO] was wider than the bottom width creating [a situation where] wake and wave action [from ships traveling along] the channel . . . continue[] eroding and widening [of the channel]" *Id*. ¶ 6. Second, the MRGO allows salt water from the Gulf of Mexico to flow into marshlands bordering St. Bernard Parish, damaging the wetlands that serve as a natural buffer against hurricane winds and storm surge: "[t]he wetland loss and deterioration from the MRGO . . . allowed for expanded tidal amplitude and duration, increasing the flooding risk to interior portions of St. Bernard Parish and Orleans Parish and further providing a direct line of access for hurricane-related storm surge to reach St. Bernard and Orleans Parishes." *Id*. ¶¶ 7, 8. In addition, Plaintiffs allege that where the MRGO merges with the Gulf Intracoastal Waterway, a "funnel" has been created that effectively causes storm surge from "any tropical storm or hurricane which passes in the vicinity of the MR-GO . . . into St. Bernard Parish and the Lower Ninth Ward [of New Orleans], flooding those lands time and time again." Pl. Resp. at 7.

On August 29, 2005, Hurricane Katrina landed on the southeastern Louisiana Gulf Coast near New Orleans, causing "catastrophic damage." *See* Gov't Mot. Dis. Ex. E at 1 (RICHARD D. KNABB ET AL., NAT'L HURRICANE CENTER, TROPICAL CYCLONE REPORT HURRICANE KATRINA (2005)). The National Hurricane Center ("NHC") reported that Hurricane Katrina generated a "massive storm surge" that reached "15 to 19 feet . . . in eastern New Orleans [and] St. Bernard Parish" and peaked at 27.8 feet along the Mississippi Gulf Coast. *Id*. at 9. This storm surge was so large that it "severely strained the levee system in the New Orleans area. . . . [and] overtopped large sections of

---

[2] The relevant facts recited herein were set forth in *Tommaseo* v. *United States*, 75 Fed. Cl. 799 (2007) ("*Tommaseo I*"), and also were derived from: Plaintiffs' January 13, 2006 First Amended Class Action Complaint ("First Am. Compl."); Defendant's October 4, 2006 Motion to Dismiss ("Gov't Mot. Dis.") and Exhibit E thereto ("Gov't Mot. Dis. Ex. E"); and Plaintiffs' November 2, 2006 Response ("Pl. Resp.").

the levees east of New Orleans, in Orleans Parish and St. Bernard Parish[.]" *Id*. The resulting flood devastated St. Bernard Parish. *Id*. at 9-11; First Am. Compl. ¶ 11.

Plaintiffs are resident property owners in St. Bernard or Orleans Parishes or are Louisiana corporations with a principal place of business in St. Bernard Parish. *See* First Am. Compl. ¶¶ 2, 10. The First Amended Complaint alleges that Plaintiffs suffered "massive flooding and destruction of [their] property" by Hurricane Katrina, and that, "but for the creation and maintenance of the MRGO by the United States, the flooding and devastation of Plaintiffs' property would not have occurred." *Id*. ¶¶ 11-13. After Hurricane Katrina, Plaintiffs' property has been subjected to repeated flooding, even during minor weather events, because of the wetland loss associated with the MRGO. *Id*. ¶¶ 22-24.

## II. PROCEDURAL HISTORY.

On October 17, 2005, Plaintiffs filed a class action in the United States Court of Federal Claims, alleging that the Government deprived Plaintiffs of their property in violation of the Just Compensation Clause of the Fifth Amendment to the United States Constitution ("Just Compensation Clause"). On October 24, 2005, Plaintiffs filed a Disclosure Statement pursuant to Rule of the United States Court of Federal Claims ("RCFC") 7.1.

On January 13, 2006, a First Amended Complaint was filed that included three counts. *See* First Am. Compl. ¶¶ 15-29. On January 17, 2006, the Government filed an Answer. On March 7, 2006, the parties filed a Joint Preliminary Status Report. On March 17, 2006 and July 18, 2006, the court convened telephone status conferences. On July 18, 2006, the court issued a Scheduling Order requiring any dispositive motions to be filed on or before September 18, 2006.

On August 16, 2006, Plaintiffs filed a Motion to Compel Discovery Responses, together with five exhibits. On September 5, 2006, the Government filed a Response. On September 7, 2006, Plaintiffs filed a Reply. On September 7, 2006, the court convened a hearing to consider Plaintiffs' August 16, 2006 Motion to Compel. On September 8, 2006, the court entered an Order, denying Plaintiffs' August 16, 2006 Motion to Compel, as premature, and directing the Government to file any motion to dismiss by September 30, 2006. On October 2, 2006 the Government filed a Motion for an Enlargement of Time, which the court granted.

On October 4, 2006, the Government filed a Motion to Dismiss, pursuant to RCFC 12(b)(1), together with five supporting exhibits. On November 2, 2006, Plaintiffs filed a Motion *In Limine* to exclude those exhibits. On November 2, 2006, Plaintiffs filed a Declaration of Counsel in opposition of Government's October 4, 2006 Motion to Dismiss. On that same date Plaintiffs filed a Statement of Contested Material Facts in opposition to the Government's Motion to Dismiss, as well as a Response to the Government's October 4, 2006 Motion to Dismiss. On November 20, 2006, the Government filed a Reply to Plaintiffs' November 2, 2006 Response and a Response to Plaintiffs' November 2, 2006 Motion *In Limine*. On December 6, 2006, Plaintiffs filed a Reply to the Government's November 20, 2006 Response.

On January 27, 2007, Plaintiffs filed an *Ex Parte* Motion for Leave to File a Supplemental Memorandum in Opposition to the Government's Motion to Dismiss and proposed Supplemental Memorandum with four exhibits. On February 2, 2007, the Government filed an Opposition. On February 7, 2007, the court issued an Order granting Plaintiffs' January 27, 2007 *Ex Parte* Motion for Leave to File a Supplemental Memorandum. On February 21, 2007, Plaintiffs filed a Supplemental Memorandum in Opposition to Defendant's Motion to Dismiss.

On March 29, 2007, the court filed a Memorandum Opinion and Order holding that: (i) the court has jurisdiction to adjudicate the claims in Plaintiffs' January 13, 2006 First Amended Class Action Complaint and named Plaintiffs are ordered to further amend "to allege sufficient facts of ownership of the properties at issue to establish standing;" (ii) Count II is not ripe for adjudication and is dismissed; (iii) the Government's October 4, 2006 Motion to Dismiss concerning the *Ridge Line* inquiry is denied as premature, without prejudice, "but may be reasserted after discovery is completed;" (iv) Plaintiffs are ordered to show cause why Counts I and III are not barred by the statute of limitations; and (v) Plaintiffs' November 2, 2006 Motion *In Limine* is denied. *See Tommaseo I*, 75 Fed. Cl. at 807 (2007).

On June 14, 2007, Plaintiffs filed a Corrected Motion For Leave To File Declaration And Exhibits, which the court granted in a June 20, 2007 Order. Plaintiffs filed a June 21, 2007 Declaration of Mr. Wayne B. Mumphrey and supporting exhibits. In addition, Plaintiffs also filed an August 7, 2007 Motion To Compel And For Imposition Of Fees And Expenses, with six supporting exhibits, and moved for the court to order the Government to: respond to Plaintiffs' RCFC 30(b)(6) Deposition Notice; and "produce, identify, authenticate, and explain all materials requested to be delivered in response to the [RCFC] 30(b)(5) Request For Production Of Documents[.]"

Following a September 13, 2007 Status Conference, the court issued a September 17, 2007 Order Granting In Part And Denying In Part Plaintiffs' August 7, 2007 Motion To Compel and ordering the Government to "provide Plaintiff with an index of the documents under control of the United States in a Joint Electronic depository, subject to In Re Katrina Canal Breaches Litigation, under seal." On October 16, 2007, a Discovery Protocol Order was issued, which contained two clerical changes to the September 17, 2007 Order.

On November 30, 2007, Plaintiffs filed a Motion To File A Second Amended Class Action Complaint ("Pl. Mot. Leave"), together with a Proposed Second Amended Class Action Complaint ("Second Amend. Compl."). On December 17, 2007, the Government filed an Opposition ("Gov't Resp."), and on December 31, 2007, Plaintiffs filed a Reply ("Pl. Reply").

## III. DISCUSSION.

### A. Jurisdiction.

The Tucker Act, 28 U.S.C. § 1491(a)(1), authorizes the United States Court of Federal Claims to render judgment and award money damages on any claim against the United States based on the United States Constitution, an Act of Congress, a regulation of an executive department, or an express or implied contract with the United States. *See United States* v. *Testan*, 424 U.S. 392, 397-98 (1976). The United States Supreme Court, however, has held that the Tucker Act does not create any substantive right for monetary damages. *See United States* v. *Mitchell*, 445 U.S. 535, 538 (1980). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages in order for the court to have jurisdiction. *See Khan* v. *United States,* 201 F.3d 1375, 1377 (Fed. Cir. 2000).

In *Tommaseo I*, the court determined that it had subject matter jurisdiction, pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(2), to adjudicate claims alleged in the January 13, 2006 First Amended Complaint. *See Tommaseo I*, 75 Fed. Cl. at 807 ("The court has determined that it has jurisdiction to adjudicate the claims in Plaintiffs' January 13, 2006 First Amended Class Action Complaint[;] however, the named Plaintiffs are hereby ordered to further amend to allege sufficient facts of ownership of the properties at issue to establish standing."); *see also* First Am. Compl. ¶ 1 ("This is a claim seeking compensation from the United States for the taking of private property for public use pursuant to Amendment V of the U.S. Constitution.").

The court also determined that the "First Amended Complaint . . . does not allege when the named Plaintiffs became property owners in . . . St. Bernard or Orleans Parishes, an essential fact to establish standing." *See Tommaseo I*, 75 Fed. Cl. at 803 (citing *Dow* v. *United States*, 357 U.S. 17, 20-21 (1958) (holding that a plaintiff seeking just compensation for a taking under the Fifth Amendment must be the owner of the property at the time of the taking)); *see also Cavin* v. *United States*, 956 F.2d 1131, 1134 (Fed. Cir. 1992) ("Without undisputed ownership of the [] property [at issue] at the time of the takings, [the plaintiffs] cannot maintain a suit alleging that the Government took their property without just compensation."); *Lacey* v. *United States*, 595 F.2d 614, 619 (Ct. Cl. 1979) ("The person entitled to compensation for a taking of property by the Government is the owner of the property at the time of the taking.") (citation omitted).

In addition, the court determined that since Counts I [3] and III [4] of the First Amended Complaint did not specify the precise dates of the alleged takings, Plaintiffs were ordered to show cause why Counts I and III, as pled, were not barred by the statute of limitations.[5] *See Tommaseo I*, 75 Fed. Cl. at 804-05 ("In this case, if Plaintiffs' takings theory is premised on the creation of the MRGO, to satisfy the statute of limitations, [then] Plaintiffs would have to establish that the effects from the 'creation' of the MRGO were not 'stabilized' until on or after October 17, 1999, *i.e.*, six years prior to filing the October 17, 2005 Complaint. If Plaintiffs' theory is premised on the expansion of the MRGO by 'continued operation, maintenance, and dredging,' to satisfy the statute of limitations, Plaintiffs would have to establish that the 'situation' created by these activities was not 'stabilized' until on or after October 17, 1999.") (citing 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.")).

---

[3] "Count I - Permanent Taking of Property" alleges that: "As a natural and direct result of the creation of the MRGO and the continued operation, maintenance, and dredging thereof, the plaintiffs have been deprived of the use, occupancy, and enjoyment of their real property and the improvements thereon thereby resulting in a permanent taking of their property for public use." First Am. Compl. ¶ 16.

[4] "Count III - Permanent Taking of Flowage Easement" alleges that: "The flooding of plaintiffs' property is recurring and is necessarily incident to and an inevitable consequence of the creation and maintenance of the MRGO [whereby] the United States has created a flowage easement on plaintiffs' property thereby resulting in a permanent taking of plaintiffs' property for a public purpose." First Am. Compl. ¶¶ 24-25.

[5] In *Tommaseo I*, the court observed that:

> Plaintiffs' First Amended Complaint does not state concise or clear allegations. *See e.g., compare* First Am. Compl. ¶ 12 ("[The] flooding was a direct, natural or probable result of the *creation* of the MRGO *and the continued operation, maintenance,* and *dredging* thereof[.]") (emphasis added), *with id.* ¶ 13 ("[B]ut for the *creation and maintenance* . . . the flooding . . . would not have occurred.") (emphasis added), *with id.* at ¶ 24 ("The flooding . . . is . . . an inevitable consequence of the *creation and maintenance* of the MRGO.") (emphasis added), *with id.* at Prayer ¶ (a) ("[P]roperty was taken . . . through *the construction and continued operation, maintenance and dredging*[.]"). *See* RCFC 8(e), 12(e), 15(a). When Plaintiffs respond to the court's Show Cause Order, Plaintiffs should further amend their [C]omplaint not only to state the required facts to establish standing, but also to state facts sufficient to identify their takings theory in a concise and clear manner, so that the court can properly resolve the statute of limitations issue.

75 Fed. Cl. at 805, n.5.

The court also determined that Count II of the Complaint was not ripe for adjudication since the MRGO is not closed. *See Tommaseo I*, 75 Fed. Cl. at 803; *see also* First Am. Compl. ¶ 19 ("[O]nly in the event that the MRGO is closed and [P]laintiffs' real property can be redeveloped in the future, [then] [P]laintiffs have been deprived of the use, occupancy, and enjoyment of their real property for the indefinite future and have suffered a temporary taking of their real property.").

**B. The Court's Resolution Of Plaintiffs' Motion For Leave To File A Second Amended Complaint.**

**1. Governing Precedent.**

Pursuant to RCFC 15(a), "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave to amend shall be freely given when justice so requires." RCFC 15(a). The United States Supreme Court has held, interpreting Fed. R. Civ. P. 15(a), that:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as *undue delay*, *bad faith* or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, *undue prejudice* to the opposing party by virtue of allowance of the amendment, *futility* of amendment, etc.-the leave sought should, as the rules require, be "freely given."

*Foman* v. *Davis*, 371 U.S. 178, 182 (1962) (citation omitted) (emphasis added).

**2. The Court's Resolution.**

The Government argues that the court should not allow Plaintiffs leave to file a Second Amended Class Action Complaint, pursuant to Rule 15(a), because: (1) the (Proposed) Second Amended Complaint confuses the issues by asserting factually dissimilar claims; (2) justice does not require allowance of the Amendment, because it includes proposed additional Plaintiffs with dissimilar claims; and (3) the Second Amended Complaint is futile, because it does not allege a specific date of the taking of the properties at issue. *See* Gov't Resp. at 2-5.

**a. The Government Has Not Established "Undue Delay" Or "Bad Faith."**

Plaintiffs contend that the Motion to File a Second Amended Complaint was not unduly delayed, because the Government had sufficient notice of the proposed additional Plaintiffs and their claims. *See* Pl. Mot. Leave at 4-7 (specifying that the Government had notice of the proposed

additional parties' claims based on: documents in the record,[6] deposition testimony,[7] and representative property ownership within the geographical areas named in the October 17, 2005 Complaint).[8] Plaintiffs also indicate that the Second Amended Complaint is necessary, because the "effects of the MRGO project are now worse than were realized when the Original Complaint was filed." *See* Pl. Reply at 6 ("It no longer takes a hurricane to flood significant portions of the area in question[.]"). In addition, Plaintiffs argue that the Second Amended Complaint is a good-faith effort to provide more clarity to Government requests. *See* Pl. Mot. Leave at 3 (referring to Government's repeated requests for clarification of Complaint).

The Government's response does not assert any "undue delay" in Plaintiffs' filing their Motion For Leave to File a Second Amended Class Action Complaint, nor does the Government assert that Plaintiffs have filed the motion in "bad faith." *See Foman*, 371 U.S. at 182. Nor does the court discern that Plaintiffs' Motion To File A Second Amended Complaint presents any "undue delay," or exercise of "bad faith." First, the Government had sufficient notice of the claims in the (Proposed) Second Amended Complaint, because these claims arise from the same transaction as the October 17, 2005 Complaint and the January 13, 2006 First Amended Complaint. *See, e.g.*, Oct. 17, 2005 Compl. ¶¶ 12, 14-16, 20-22 (alleging a permanent taking of property based on the creation, continued operation, maintenance, and dredging of the MRGO or, alternatively, creation of a drainage easement on Plaintiffs' property); Jan. 13, 2006 Amend. Compl. ¶¶ 15-17, 21-25 (amending October 17, 2005 Complaint to allege that the MRGO has caused recurring flooding, resulting in a taking of Plaintiffs' property); Second Amend. Compl. ¶¶ 4-56 (amending First Amended Complaint to specify the ways in which flooding allegedly has interfered with Plaintiffs' property rights, listing properties and dates of acquisition, and clarifying the types of meteorological and environmental events that caused flooding allegedly from the creation, dredging, and maintenance of the MRGO).

---

[6] *See, e.g.*, Pl. Mot. Leave at 4 ("On 21 June 2006, Plaintiffs . . . filed a Declaration into the record including the tax records and other documents demonstrating ownership of the properties of the first group of named Plaintiffs. Further, the Declaration also specified properties owned by the St. Bernard Parish Government. The St. Bernard Parish Government seeks to be formally added as a named Plaintiff in the proposed Second Amended Class Action Complaint, as do other geographically, hydrologically and topographically representative property owners. Months of notice have been provided to Defendant.").

[7] *See, e.g.*, Pl. Mot. Leave at 4 ("Edward Robin is an 82 year old resident of Yscloskey, Louisiana[.] Mr. Robin was deposed on 13 June 2007; he was cross-examined at length by defense counsel[.]"); *see also* Pl. Mot. Leave Ex. 2 (June 13, 2007 Deposition of Edward Robin, Sr.).

[8] *See, e.g.*, Pl. Mot. Leave at 5 ("Port Ship Service, Inc. ("PSSI") is a company located in St. Bernard Parish which also seeks to be added as a representative party plaintiff . . . . There can be no prejudice or surprise to the Defendant as this suit has been filed as a St. Bernard Parish-wide class action.").

The court acknowledges that additional Plaintiffs, and specific facts relating thereto, were added to the (Proposed) Second Amended Complaint, partly in response to the court's request for clarification regarding the accrual dates of Plaintiffs' claims. *See Tommaseo I*, 75 Fed. Cl. at 804-05 ("In this case, if Plaintiffs' takings theory is premised on the creation of the MRGO, to satisfy the statute of limitations, [then] Plaintiffs would have to establish that the effects from the 'creation' of the MRGO were not 'stabilized' until on or after October 17, 1999, *i.e.*, six years prior to filing the October 17, 2005 Complaint.).[9] Although the exact circumstances surrounding each alleged taking varies, in the initial Complaint, the First Amended Complaint, and the (Proposed) Second Amended Complaint, the underlying "transaction" at issue remains the same, *i.e.*, that Plaintiffs' property was taken, under a "continuous physical process," by the creation, maintenance, and dredging of the MRGO. *See Snoqualmie Tribe of Indians* v. *United States*, 178 Ct. Cl. 570, 587 (1967) ("[N]otice is the test, and it is built-into the rule's requirement that the amended pleading arise out of the same 'conduct, transaction, or occurrence.'").

Second, the timing of the Second Amended Complaint, approximately two years after filing the October 17, 2005 Complaint, is not excessive. *See ATK Thiokol* v. *United States*, 76 Fed. Cl. 654, 661 (2007) (granting Plaintiff leave to amend seven years after filing the initial complaint). Third, the Amendment is, in part, in response to a court order and the Government's request for clarification. *Id*. at 661-62 (allowing amendment in response to court invitation to amend and to respond to Government concerns that First Amended Complaint did not specify the entire relief requested).

On March 29, 2007, the court ordered Plaintiffs to amend the First Amended Complaint to specify when Plaintiffs allegedly became property owners to satisfy jurisdictional requirements. *See Tommaseo I*, 75 Fed. Cl. at 803 ("The court will afford the named Plaintiffs leave to further amend to satisfy this jurisdictional requisite."). Subsequently, the Government has requested further clarification of the Plaintiffs' claims. *See* Gov't Resp. at 2-5 (arguing that the (Proposed) Second Amended Complaint still does not provide greater clarity).

Because Plaintiffs seek to amend the Complaint in response to the court's March 29, 2007 ruling and the Government's requests, the Amendment comes only two years after the filing of the October 17, 2005 Complaint, and the (Proposed) Second Amended Complaint alleges claims that arise from the same transaction as the initial Complaint and First Amended Complaint, the court has determined that the Plaintiffs' motion was filed in good faith and without undue delay.

#### b. The Government Has Not Established "Prejudice."

[9] For example, the (Proposed) Second Amended Complaint claims a taking resulting from frequent lock closures due to encroaching salt water from the MRGO. *See* Second Amend. Compl. ¶ 42 ("[T]he rising salt water results in [the Government's] more frequent closures of the locks on Bayou Bienvenue, a natural bayou that flows into the MRGO. Every time the locks are closed, [Port Ship Services, Inc.], whose property lies adjacent to Bayou Bienvenue, cannot operate its business, which costs the company money.").

The Government argues that the (Proposed) Second Amended Complaint "further confuses the issues" by: modifying the claims of the parties named in the January 13, 2006 First Amended Complaint; and naming additional plaintiffs,[10] with factually dissimilar claims. *See* Gov't Resp. at 2-3 ("[Plaintiffs] have gone from alleging that a hurricane was at least a significant contributing cause of their alleged flood damages, to alleging multiple claims[.]"). Therefore, the Government urges the court not to allow Plaintiffs leave to amend, because the factual and legal dissimilarities among the proposed additional Plaintiffs "add several new and different causes of action." *Id.* at 2 ("[J]ustice does not require this honorable Court to allow this grossly expansive and more confusing amended complaint."). Specifically, the Government contends that the additional claims create complicated questions regarding varying accrual dates for statute of limitations purposes. *Id.* at 2-3 (arguing that each new claim would have a different accrual date).

Plaintiffs respond that the proposed additional Plaintiffs are property owners that better represent the alleged harmful effects of the MRGO and the specific means by which such harm was caused. *See* Pl. Reply at 6 ("It no longer takes a hurricane to flood significant portions of the area in question–even on sunny days, wind blowing in certain directions can cause extensive flooding of Plaintiffs' properties. The new representative Plaintiffs are exemplars of this type of appropriation."). In addition, Plaintiffs argue that the (Proposed) Second Amended Complaint does not alter the basic factual claims and legal theory set forth in the initial and First Amended Complaint. *See* Pl. Reply at 5-6 (confirming that the Plaintiffs continue to aver that the creation, maintenance, and dredging of the MRGO directly and indirectly caused, extensive and increased flooding of Plaintiffs' properties, and that Hurricane Katrina only played a partial role in causing damage).

The court has determined that the (Proposed) Second Amended Complaint does not prejudice the Government, because the Government had sufficient notice of the potential of additional Plaintiffs and claims. Amended pleadings may be unduly prejudicial if they cause "unfair surprise to the opposing party, unreasonably broaden the issues, or require additional discovery." *Cooke* v. *United States*, No. 06-748, 2007 U.S. Claims LEXIS 383, at *5-6 (Fed. Cl. Dec. 6, 2007). The proposed additional Plaintiffs are individual and corporate residents of St. Bernard Parish, Louisiana, and the Lower Ninth Ward of the City of New Orleans, and, like the initial Plaintiffs, allege "continuous physical process" takings, based on the creation, maintenance, and dredging of the MRGO. *Compare* Jan. 13, 2006 Amend. Compl. ¶¶ 10, 22 ("Plaintiffs are residents of Louisiana who owned real property with improvements thereon including both residential and commercial property in southeast Louisiana . . . . Following the destruction of plaintiffs' property in August 2005, on or about September 24, 2005 Hurricane Rita struck the Louisiana coast causing another storm surge to travel up the MRGO, leading to a second flood of St. Bernard and Orleans Parishes and plaintiffs' property.") *with* Nov. 30, 2007 Second Am. Compl. ¶¶ 11-12 ("Plaintiffs are residents of St. Bernard Parish who owned immovable property, most of which included improvements thereon, both residential and commercial, in St. Bernard Parish, Louisiana. The same applies to the properties in the Lower Ninth Ward of the City of New Orleans . . . . On 29 August 2005 Hurricane

[10] The proposed additional Plaintiffs include: the St. Bernard Parish Government; the Robin family; Port Ship Services, Inc.; and the Adams' of the Lower Ninth Ward. *See* Pl. Mot. Leave at 7.

Katrina pushed a storm surge through the MRGO, into St. Bernard Parish and the Lower Ninth Ward of the City of New Orleans. The result was massive flooding and the destruction of plaintiffs' property.").

Despite the Government's claim that the proposed Plaintiffs raise new legal theories that rely on facts distinct from those previously alleged, the (Proposed) Second Amended Complaint belies this claim. *See* Second Am. Compl. ¶ 9 (all alleging "continuous physical process" takings that "are the direct, natural, or probable consequence of the MGRO project[.]"). Moreover, Plaintiffs have consistently asserted, in the original and amended complaints, that the named Plaintiffs represent "all other persons similarly situated." *See* Oct. 17, 2005 Compl. ¶ 2; *see also* Jan. 13, 2006 Amend. Compl. ¶ 2 (naming Louisiana residents of and corporations with their principal places of business in St. Bernard Parish and the Lower Ninth Ward as the Plaintiffs). Therefore, because the proposed additional Plaintiffs in this Complaint impose no unforeseen liability on the Government, the court has determined that a Second Amended Complaint does not unduly prejudice the Government. *See* RCFC 15(a); *see also Foman*, 371 U.S. at 182 (citation omitted) ("In the absence of any apparent or declared reason-such as . . . undue prejudice to the opposing party by virtue of allowance of the amendment . . . the leave sought should, as the rules require, be "freely given.").

The court also has determined that the (Proposed) Second Amended Complaint serves the interest of justice, and rejects the Government's argument to the contrary, because adjudicating the proposed additional Plaintiffs' claims serves the interest of judicial efficiency. The initial Plaintiffs and the proposed additional Plaintiffs together allege a "continuous physical process" taking of property within St. Bernard Parish and the Lower Ninth Ward by the United States for a public purpose, *i.e.*, the creation, maintenance, and dredging of the MRGO. *See* Second Amend. Compl. ¶¶ 4-14 (alleging that the maintenance and expansion of the MRGO has directly and indirectly caused repeated flooding of Plaintiffs' property). Although the circumstances and extent of each Plaintiff's injury may vary, each relies on a common set of facts and the same legal theory. *See Barnes* v. *United States*, 68 Fed. Cl. 492, 498 (2005) (allowing class certification for Navy employees even though the Government's liability to each plaintiff differ). Requiring the proposed Plaintiffs to file separate suits would be inefficient and burden the parties. *Id.* at 496 (clarifying that commonality of law and facts sufficient for class certification requires the plaintiffs' claims to share essential characteristics to the extent that "resolution of some of the legal or factual questions that qualify each member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.") (quoting *Moore* v. *Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).

Therefore, the court has determined that the facts and legal claims asserted in the Second Amended Complaint are sufficiently similar that separate adjudication of the proposed additional Plaintiffs' claims would not serve the interest of justice.

**c. The Government Has Not Established "Futility."**

The Government argues that the (Proposed) Second Amended Complaint fails to state a claim, because it does not allege a date of taking of the properties at issue. *See* Gov't Resp. at 3

("[T]he proposed amended complaint is insufficient as it does not in any place allege the purported date of taking of the properties so claimed."). In addition, the Government asserts that the claims of the St. Bernard Parish Government are partially invalid. *Id.* at 4 (arguing that the alleged taking of 90 properties from the St. Bernard Parish Government, based on the inability to alienate such properties or the need to elevate new structures, cannot serve as a "proper basis for an alleged Fifth Amendment taking of private property[.]").

Plaintiffs respond that the takings claims asserted here do not require alleging any specific date of the taking. *See* Pl. Reply at 2-3 (characterizing Plaintiffs' claims as a physical process suit, which does not require allegations of a precise date of taking, but rather allows the trier of fact to determine the date of the taking); *see also United States* v. *Dickinson*, 331 U.S. 745, 749 (1947) (A "continuing process of physical events" taking claim does not arise "until the situation becomes stabilized," such that "the consequences of inundation have so manifested themselves that a final account may be struck."). Plaintiffs argue that the alleged Government activity manifested to the extent that a "final account may be struck" only within the relevant six-year statute of limitations, *i.e.*, since or after October 17, 1999. *Id.* at 4 (quoting *Cristina Inv. Corp.* v. *United States*, 40 Fed. Cl. 571, 579 (1998)); *see also Barnes* v. *United States*, 538 F.2d 865, 873 (Ct. Cl. 1976) (Because of the inherent uncertainty in determining the accrual of a claim involving gradual natural processes, "[*a*]*dopting a date of taking must often be done in a somewhat imprecise manner*.") (emphasis added); *Tommaseo I*, 75 Fed. Cl. at 804-05 ("In this case, if Plaintiffs' takings theory is premised on the creation of the MRGO, to satisfy the statute of limitations, [then] Plaintiffs would have to establish that the effects from the 'creation' of the MRGO were not 'stabilized' until on or after October 17, 1999, *i.e.*, six years prior to filing the October 17, 2005 Complaint."). Plaintiffs also argue that the St. Bernard Parish Government's claims are valid takings claims, because they allege that the MRGO has prevented the St. Bernard Parish Government from selling or using parish property. Pl. Reply at 8 ("[W]here a Plaintiff such as the St. Bernard Parish Government cannot sell of use its property (due to the reduced property values and recurrent flooding events caused by the MRGO project), its [right to alienate the property] has also been taken.").

The court has determined that the Government has not established futility. *See Phillips* v. *United States*, 77 Fed. Cl. 513, 520 (2007) (denying leave to amend because the court determined as a matter of law that the contract at issue was insufficient to establish jurisdiction and no additional facts could alter this interpretation). A finding of futility "requires the [c]ourt to determine that the proposed amendment is subject to dismissal or so wholly and patently lacking in merit that it cannot possibly succeed." *Centech Group, Inc.* v. *United States*, 78 Fed. Cl. 658 (2007). The facts, as alleged in the (Proposed) Second Amended Complaint, clarify Plaintiffs' continuous physical process taking claims as "stabilized" on or after October 17, 1999. Therefore, the court declines to determine they are facially insufficient for the purposes of this motion. *See, e.g.*, Second Am. Compl. ¶ 22 ("This federal project, continually operated, maintained, and dredged (*through August 2005*) by the [Army] Corps of Engineers and its contractors, gradually destroyed these properties, via saltwater erosion and saltwater intrusion, the consumption of more than 20,000 acres of protective tree stands, marshland and vegetation, all of which previously acted as a protective buffer[.]") (emphasis added); *Id.* ¶ 24 ("Because [Plaintiffs'] respective parcels have been subject and are *currently subjected* to increasingly disruptive effects attendant to the *continuous* operation,

maintenance and dredging of the federal MRGO project, the combined effect of the unending destruction of the protective tree stands, vegetation and marsh barrier, plus the creation of the funnel for saltwater intrusion and storm surge, has deprived Plaintiffs of the full use and enjoyment of their respective parcels, resulting in a taking for a public purpose, without just compensation.") (emphasis added); *Id*. ¶ 45 ("The practical result of the erosion and saltwater intrusion by the *ever expanding* MRGO project is that property owners in much of the Lower Ninth Ward are at least partially deprived of their ability to use, enjoy and alienate their immovable property.") (emphasis added).

In light of the requirement in RCFC 15(a) that leave to amend "shall be freely given when justice so requires," the court has determined that Plaintiffs' Motion For Leave To File A Second Amended Class Action Complaint should be granted. *See* RCFC 15(a); *see also Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971) ("[G]rant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court.").

## IV. CONCLUSION.

For the aforementioned reasons, Plaintiffs' November 30, 2007 Motion For Leave Of Court To File A Second Amended Class Action Complaint is granted.

**IT IS SO ORDERED**.

**s/ Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**