## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SAINT BERNARD PARISH GOVERNMENT<br>AND OTHER OWNERS OF REAL PROPERTY<br>IN SAINT BERNARD PARISH OR THE<br>LOWER NINTH WARD OF THE CITY OF<br>NEW ORLEANS,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 05-1119 L<br>)<br>)   Judge Susan G. Braden<br>)<br>)<br>)<br>) |

## UNITED STATES' RESPONSES TO PLAINTIFFS' PROPOSED FINDINGS OF FACT

Defendant United States submits respectfully this response to proposed findings of fact Plaintiffs submitted in association with their post-trial memorandum. See Pls.' Proposed Findings of Fact, filed Apr. 13, 2012 (ECF No. 184-1). By responding to Plaintiffs' proposed findings, the United States does not concede that any fact included herein is relevant to the legal elements Plaintiffs must prove to succeed on their takings claims. The United States included a discussion of all the material facts germane to the legal elements Plaintiffs must prove in its opening post-trial memorandum. See U.S.' Post-Trial Mem. at 3-24, filed Apr. 13, 2012 (ECF No. 181) (U.S.' Mem."). Despite the voluminous documentary evidence Plaintiffs now seek to introduce into the record, the factual background pertinent to the legal issues in this matter is limited and largely undisputed.

Nor does the United States' response constitute a waiver of its objections to the admissibility of any materials cited herein. The United States preserves and re-asserts all the general and specific evidentiary objections made at trial and in the United States' previous

filings.  See, e.g., Joint Submission of Exs. Offered Into Evidence, filed Mar. 23, 2012 (ECF No.

178) ("Joint Exhibit List"); U.S.' Mot. to Exclude Robinson Material Not Independently

Admissible in this Action, filed Dec. 5, 2011 (ECF No. 157) ("United States' Motion to

Exclude").[1]

The United States responds to Plaintiffs' proposed findings of fact as follows:

**A.**    **Geography**

1.    Agreed.  The United States notes, however, that this proposed finding of fact is offered without support from the trial record.  The document cited in support of this finding was not referenced or introduced at trial in this matter.

2.    The United States objects to this proposed finding of fact.  Plaintiffs' proposed finding is offered without support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.

3.    Agreed.  The United States notes, however, that this proposed finding of fact is offered without support from the trial record.  The document cited in support of this finding was not referenced or introduced at trial in this matter.

4.    Agreed.

5.    Agreed.

6.    Agreed.

7.    Agreed.

8.    The United States agrees that in 1965, Congress passed the Flood Control Act of 1965, Pub. L. No. 89-298, 79 Stat. 1073, authorizing the construction of a hurricane protection system for the Lake Pontchartrain vicinity.  See 79 Stat. at 1077.  The remainder of this proposed finding of fact is offered without support from the trial record.  At trial, Plaintiffs introduced and discussed only limited excerpts of SPX.169, stating that "[t]his document again, Your Honor, we're providing excerpts because it's a very lengthy document."  Tr. of Trial ("Tr.") at 825:25 to 826:2 (Colatriano).  Plaintiffs introduced only pages ES-11 (Tr. at 826-27); ES-12 (Tr. at 827-28); 3-14 (Tr. at 828-29); and 3-8 (Tr. at 1048).  The portion of SPX.169 upon which this proposed finding rests was not referenced or introduced at trial in this matter.

---

[1] By referencing these filings as illustrative, the United States does not waive objections made in any other filings in these proceedings.

9.      The United States objects to this proposed finding of fact.  Plaintiffs' proposed finding is offered without support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  As discussed in the United States' response to Plaintiffs' proposed finding number eight, Plaintiffs introduced and discussed only limited excerpts of SPX.169.  The portion of SPX.169 upon which this proposed finding rests was not referenced or introduced at trial in this matter.  This proposed finding also purports to rest on SPX.220, Robinson JX-285, and PX 98.2.  These materials were not referenced or introduced at trial in this matter.

10.     Agreed.

11.     The United States objects that this proposed finding is simply a recitation of Dr. Kemp's erroneous opinion about the MRGO's supposed influence on storm surge during Hurricane Katrina, and an unsupported extension of that opinion to all "major storms." For the reasons discussed at trial, Dr. Kemp's opinion that the MRGO is responsible for flooding during Hurricane Katrina is flawed; moreover, because Dr. Kemp (like all of the plaintiffs' experts in Robinson) relied solely on an analysis of Hurricane Katrina, there is no basis to extend that opinion to any other storm.  This proposed finding also cites a "Post-Authorization Change Report," identified as SPX.146.  This document was not referenced or introduced at trial in this matter.  For the reasons stated in the United States' Motion to Exclude and the Joint Exhibit List, this document is not part of the trial record, and the United States objects to Plaintiffs' reliance upon it here.  Furthermore, Plaintiffs' selected quotation from this document is cited out of context and distorts the meaning of this document.

## B.   **Plaintiffs**

### 1.   **Robin Plaintiffs**

12.     Agreed.

13.     Agreed.

14.     Agreed.

15.     Agreed.

16.     The United States objects that this proposed finding is offered without support from the trial record.  The United States did not object to admission of the documents (SPX.1012 or SPX.1156) upon which this finding is based, but those documents do not indicate when Plaintiff Edward Robin, Sr. acquired any property.

17.     The United States objects that this proposed finding is offered without support from the trial record.  The United States did not object to admission of SPX 1156, upon which this

finding is based, but that document does not indicate when Plaintiff Edward "Pete" Robin, Jr. acquired any property.

18.    Agreed.

19.    Agreed.

20.    Agreed.

21.    Agreed.

22.    Agreed.

23.    The United States objects to proposed fact number twenty-three.  Yscloskey Developments #5, LLC is not a named Plaintiff to this action, and its property ownership interests are not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

24.    Agreed.

25.    Agreed.

26.    The United States opposes this proposed finding of fact.  This proposed finding is incomplete and misleading to the extent that it implies that Plaintiff Robin suffered permanent damages as a result of Hurricane Katrina.  Robin did testify that Hurricane Katrina destroyed structures on this property, but there is no evidence that flood waters from Hurricane Katrina, or the possibility of future flooding, prevented Robin from rebuilding on this property.

27.    The United States agrees that Brad Robin's testimony supports this statement.  But the proposed finding of fact is not relevant to Plaintiffs' claims, which are premised upon the alleged uncompensated taking of a flowage easement.  The Court has already ruled that Plaintiffs are entitled to recover, if at all, for the impact to their land, not for the alleged frustration of business opportunities.  See St. Bernard Parish v. United States, 88 Fed. Cl. 528, 549 (2009) (dismissing Plaintiffs' claims for "'lost benefits' and 'profits' of Plaintiffs' 'commercial ventures'").   In addition, there is no evidence that flood waters from Hurricane Katrina, or the possibility of future flooding, prevented Robin Seafood from rebuilding the wholesaling part of its business.

28.    The United States agrees that Brad Robin's testimony supports this statement.

29.    The United States opposes this proposed finding of fact.  This proposed finding is offered without support from the trial record.  At the indicated page of the trial transcript (Tr. at 651), Robin testified that Hurricane Katrina resulted in thirty inches of water in his home, not that his residence was destroyed.

30.     The United States agrees that Brad Robin's testimony supports this statement.

31.     The United States agrees that Brad Robin's testimony supports this statement.

32.     The United States agrees that Brad Robin's testimony supports this statement.

33.     The United States agrees that Brad Robin's testimony supports this statement.

34.     The United States agrees with the first sentence of this proposed finding.  The United States opposes the remainder of this proposed finding of fact.  Brad Robin testified that when Hurricane Betsy passed, his house did not flood; Robin then agreed with the statement that "water levels c[a]me up in the area," stating "Correct.  It came up eight feet."  Tr. at 625:17-19 (Robin).  In the indicated page of the transcript, he did not testify that water reached "eight feet at the Robins' property in the Shell Beach area," as this proposed finding asserts.

35.     The United States opposes this proposed finding of fact.  This proposed finding is incomplete and misleading.  Robin testified that Hurricane Ivan coincided with "six feet of water on our road."  Tr. at 626:25.  By "our road," Robin referred to the "road in Yscloskey," not a road Robin owned, as this proposed finding suggests.

36.     The United States opposes this proposed finding of fact.  This proposed finding is incomplete and misleading.  Robin testified that Hurricane Lili coincided with "six feet of water on our road."  Tr. at 626:10 (Robin).  By "our road," Robin referred to the "road in Yscloskey," not a road Robin owned , as this proposed finding suggests.

37.     The United States opposes this proposed finding of fact.  This proposed finding is incomplete and misleading.  Robin testified that by "northeast" wind, he meant a wind originating in the southeast and moving in a northwest direction.  See Tr. at 654:19-655:2 (Robin) (discussing DX-1).  As discussed in the United States' Post-Trial Brief, this testimony is inconsistent with the testimony of Plaintiffs' expert, Dr. Kemp, and instead confirms the expert testimony of Dr. Britsch that the "main hydraulic connection to the Gulf is through [backchannel] waterways, not through the MRGO."  U.S.' Mem. at 73-74 (quoting Tr. at 987:7-10 (Britsch)).

Plaintiffs' proposed finding thirty-seven is also incorrect.  In the pages indicated, Robin did not testify that flooding during non-storm sustained winds started flooding his property "by approximately 2002," as this proposed finding of fact states.  Instead, Robin agreed with Plaintiffs' counsel that this new phenomenon has been happening "now more often than it did before the passage of [Hurricane] Katrina."  Tr. at 647:23-25; see also Dep. of Brad Robin at 48 (Oct. 13, 2010) ("B. Robin Dep.")  ("Q: And how long have you noticed that condition?  A: Prior to Katrina, it [i.e., flooding] wasn't that normal.  Now, it's just – if we have a northeast wind, we have water on the property and the road.  Q: And so you said prior to Katrina it wasn't that normal.  I mean, is that a pretty definite break?  I mean, before 2005 you almost never saw that condition?  A: You seen it several

times, but not as much as you see now.  As we – what I'm trying to say is it's getting worser [sic] as it goes along.").  Robin's observation that flooding got worse after Hurricane Katrina is consistent with Robin's other testimony that Hurricane Katrina dramatically impacted the physical landscape surrounding his properties.  See id. at 631:15-18 (Robin) (discussing destruction of ridges, trees and shrubbery during Hurricane Katrina); id. at 650:2-651:8 (Robin) (describing loss of trees and shrubbery after Hurricane Katrina).

38.    The United States objects that this proposed finding is incomplete and misleading.  Robin testified that if there is a "northeast wind for three days . . . we got water on our property."  Tr. at 647:21-22 (Robin).  In addition, Robin testified that the extent of flooding differs on other factors too: "How much – depending on the tide that come in – northeast wind, you might have six inches on the property, in some cases, a foot in others.  The further you get away from the road where the land gets lower, you get more water."  B. Robin Dep. at 48:19-24.

39.    The United States opposes this proposed finding of fact which the evidence cited does not support.  At the transcript page indicated, Robin did not testify how long flood waters typically remain on his property after the wind stops.

40.    The United States objects that this proposed finding is misleading and lacks support in the trial record.  On the transcript pages indicated, Robin did not testify that flooding during low-wind events can cause flooding that blocks access to his properties or covers the properties with water.  Rather, on the pages indicated, Robin spoke specifically about Tropical Storm Lee, a storm that caused flooding in numerous states.  The fact that Tropical Storm Lee coincided with floods on certain properties including, as Plaintiffs emphasized at trial, a property approximately five miles from the MRGO, see Tr. at 641:5-6 (Robin), demonstrates nothing about the alleged impact of the MRGO.

41.    The United States objects that this proposed finding of fact is incomplete and misleading.  Robin did not testify about stronger winds "necessitating a faster evacuation," as this proposed finding of fact states.  On the indicated pages, he did not use the word "evacuation" at all – he simply stated that if the wind "gets into the 15 to 20 or gusts, then you know you got less time to get out of there [as compared to 8 to 15 mile-an-hour winds]."  B. Robin Dep. at 49:9-12.

42.    The United States objects that this proposed finding is misleading and notes that the trial record contradicts the proposed finding.  At the transcript pages indicated, Robin did not testify that the frequency of non-storm flooding has increased since 2002.  Instead, Robin agreed with Plaintiffs' counsel that this new phenomenon has been happening "now more often than it did before the passage of [Hurricane] Katrina."  Tr. at 647:23-25 Robin); see also B. Robin Dep. at 48 ("Q: And how long have you noticed that condition?  A: Prior to Katrina, it [i.e., flooding] wasn't that normal.  Now, it's just – if we have a northeast wind, we have water on the property and the road.  Q: And so you said prior to Katrina it wasn't that normal.  I mean, is that a pretty definite break?  I mean, before 2005 you almost never saw that condition?  A: You seen it several times, but not as much as you

see now.  As we – what I'm trying to say is it's getting worser [sic] as it goes along.").
This testimony – that flooding got worse after Hurricane Katrina – is consistent with
Robin's other testimony that Hurricane Katrina dramatically impacted the physical
landscape surrounding his properties.  See id. at 631:15-18 (Robin) (discussing
destruction of ridges, trees and shrubbery during Hurricane Katrina); id. at 650:2-651:8
(Robin) (describing loss of trees and shrubbery after Hurricane Katrina).

43.    The United States objects that this proposed finding is misleading; the documents cited
do not support the proposed finding.  At the first transcript page cited, Tr. at 598, Robin
testified that he owns undeveloped properties in Hopedale and Delacroix.  He testified
that he never attempted to develop the Hopedale property, but he had "built [it] up with
material . . . mud and stuff like that."  Tr. at 598:16-21.  Robin offered no testimony that
he placed this material on this property in response to flooding the MRGO caused or that
the material was even intended to prevent flooding.  Robin offered no testimony to
support Plaintiffs' assertion that "the flooding continues" on this property.

With respect to the Delacroix property, Robin testified that he "put a little bit of landfill"
there.  Tr. at 598:25 (Robin).  Robin offered no testimony that he placed this material on
this property in response to flooding the MRGO caused , or that the material was even
intended to prevent flooding.  Robin offered no testimony to support Plaintiffs' assertion
that "the flooding continues" on this property.

At the second transcript page indicated, Robin testified that he "raised [the RV park
property] probably three foot, three and a half foot."  Tr. at 633:16-17 (Robin).  The only
testimony that "the flooding continues" is Robin's testimony about Tropical Storm Lee.
As discussed above in reply to Plaintiffs' proposed finding number forty-two, that
testimony about Tropical Storm Lee demonstrates nothing about the alleged impact of the
MRGO, and is entirely irrelevant to this lawsuit.

44.    The United States objects that this proposed finding of fact is incomplete and misleading,
and the documents indicated do not support the proposed finding.  In the trial transcript
pages indicated, Robin testified that during Tropical Storm Lee one of his properties – the
RV park – was flooded by three feet of water, and an empty field, which Robin does not
own, "looked like a lake."  Tr. at 635:11-14 (Robin).  The photographs cited in support of
this proposed finding purport to show flooding Tropical Storm Lee caused.  One of the
photographs depicted water on a road in a location approximately four miles from
Robin's seafood processing facility.  See Tr. at 636:20-21 (Robin) (discussing SPX-
1053A).  Another photograph depicted property approximately five miles from the
MRGO.  See id. at 641:5-6 (Robin) (discussing SPX-1053H).  Robin did not provide any
testimony suggesting that any of the photographs depicted any of his properties.  Also, as
discussed above in reply to Plaintiffs' proposed finding number forty-two, Robin's
testimony about Tropical Storm Lee demonstrates nothing about the alleged impact of the
MRGO.

### 2. **Plaintiff PSSI**

45.  The United States agrees with the first sentence of this proposed finding of fact. The United States objects that the second sentence of this proposed finding is incorrect and the record materials cited do not support the proposed finding. At the trial transcript pages indicated, Rod Willhoft explained that Port Ship Service, Inc. ("PSSI") acquired the property on Paris Road in the early 1980s. See Tr. at 841:12-13 (Wilhoft). Willhoft did not discuss flooding on that property. At the deposition transcript pages indicated, Willhoft discussed the frequency of gate operations, not flooding events. See Dep. of Port Ship Serv., Inc. at 39-40 (taken Oct. 20, 2010) ("PSSI Dep.").

46.  Agreed.

47.  Agreed.

48.  Agreed.

49.  Agreed.

50.  Agreed.

51.  Agreed.

52.  The United States objects that this proposed finding is incomplete and misleading. Willhoft testified that "We have a small levee on one side of the property" intended to protect the property "from just normal tidal flooding." Tr. at 842:4-9 (Willhoft). There is no evidence that the levee was constructed because of the MRGO or was ever intended to protect against storm surge resulting from hurricanes, like Hurricane Katrina, or tropical storms, like Tropical Storm Lee.

53.  Agreed.

54.  The United States agrees that Willhoft testified that repairs to the PSSI facility on Paris Road "probably took at least two years, I would imagine. The timeframe's a little hard to remember now exactly." Tr. at 844:25-845:2 (Wilhoft). There is no evidence that the length of time necessary to repair the PSSI facility was extended due to standing water or inevitably recurring flooding on this property.

55.  The United States objects that this proposed finding is incomplete and misleading. When asked to explain at what point in time he started noticing "more flooding and faster flooding," Willhoft answered "It just seems – it just seems to accelerate as the years go on. I don't have a pinpoint date for that really." PSSI Dep. at 30:2-9. Willhoft then clarified: "I don't know if I would say [that there has been a pattern since he's owned the property], but in recent years, it's been much worse. I don't remember it flooding from normal tidal flooding way back when. I mean, there might have been a couple isolated

incidents, but I'm not sure." Id. at 30:14-19.  When asked for a ballpark date – "are we talking five, ten, fifteen, how many years?" – Willhoft responded "Ten years." Id. at 30:20-23.  Furthermore, at trial, PSSI described only a single flood on the Paris Road property after Hurricane Katrina, explaining that Tropical Storm Lee resulted in some flooding on this property.  See Tr. at 847:17-848:3 (Willhoft).

56.     The United States objects that this proposed finding of fact is incomplete and misleading.  When asked to describe the impacts of flooding on the property on Paris Road, Willhoft explained that "it depends on the extent of the flooding.  Sometimes you can drive on the property, you know, in a foot of water or so.  Sometimes it's too deep to drive through unless, you know, you'll get water in your vehicle."  PSSI Dep. at 36:13-18.  Further, at trial, PSSI described only a single flood on the Paris Road property after Hurricane Katrina, explaining that Tropical Storm Lee resulted in some flooding on this property.  See Tr. at 847:17-848:3 (Willhoft).

57.     The United States objects that this proposed finding is incomplete and misleading.  Willhoft testified that "We have a small levee on one side of the property" intended to protect the property "from just normal tidal flooding."  Tr. at 842:4-9 (Wilhoft).  Willhoft also testified that "I have a bulkhead in the front of the property."  PSSI Dep. at 34:10-11.  There is no evidence that the levee was constructed because of the MRGO, or that was ever intended to protect against storm surge resulting from hurricanes, like Hurricane Katrina, or tropical storms, like Tropical Storm Lee.

58.     The United States agrees that Willhoft did so testify, but his testimony demonstrates why Plaintiffs' claim fails on the merits.  He testified that after storms, "large sections of [the marsh] disappear and just become water."  PSSI Dep. at 48:13-14.  According to Willhoft, the deterioration of marsh adjacent to his property "was highly accelerated when Hurricane Katrina came through."  Id. at 47:23-24.  If Willhoft is correct, his testimony suggests that Hurricane Katrina and not the MRGO caused this flooding.  See U.S.' Mem. at 75.  In addition, the evidence proved at trial that a 1947 hurricane caused much of the wetlands loss in the area of Bayou Bienvenue.  See SPX.704 at 106; Britsch Test. at 12 (DX-208, Fig. 2); id. at 29:5-7 ("[L]arge areas of land loss north of the 40 Arpent Levee near Bayou Bienvenue were attributed to erosion during a 1947 hurricane.").

59.     Agreed.

60.     The United States opposes this proposed finding of fact.  The proposed finding is incomplete and misleading.  Willhoft testified that he has observed an acceleration in how often the floodgates are closed.  See Tr. at 847:7-11 (Wilhoft); PSSI Dep. at 39:19-20.  When asked when this change started, Willhoft explained that "I think it has progressed over the years, but it's definitely worse since Katrina and some of the other[] [hurricanes]."  PSSI Dep. at 40:2-4 (Wilhoft).  As explained in the United States' Post-Trial Brief, if Willhoft is correct, his testimony suggests that Hurricane Katrina, and not the MRGO, caused this alleged flooding.  See U.S.' Mem. at 75.

61.     Agreed.

62.     Agreed.  Tropical Storm Lee caused flooding throughout Louisiana and in numerous
        other states, not just on PSSI's property.  The fact that Tropical Storm Lee coincided with
        floods on certain properties demonstrates nothing about the alleged impact of the MRGO.

**3.  Tommaseo Plaintiffs**

63.     Agreed.

64.     The United States objects that this proposed finding of fact because the trial record does
        not support the proposed finding.  At the cited deposition transcript page, Tommaseo did
        not say anything about flooding during an eastern wind.  Plaintiffs likely intended to cite
        page fifty-eight of Tommaseo's deposition.  If so, this proposed finding of fact is
        incomplete and misleading.  At page fifty-eight of his deposition, Tommaseo stated that
        winds of some unknown strength would flood his property "[s]ix inches, eight inches."
        Dep. of Tommoso Tommaseo at 58:13-18 (Oct. 18, 2010) ("Tommaseo Dep.").  Notably,
        Tommaseo also stated that this type and degree of flooding has occurred regularly from
        the time he acquired the property in the late 1990s.  Id. at 58:24-59:2.  There is no
        evidence that this flooding results from the MRGO, but even if there was, the six-year
        statute of limitations bars this claim.  This testimony provides another reason why the
        Court should reject Plaintiffs' claim.

        The second sentence of this proposed finding of fact misrepresents Tommaseo's
        testimony, and is incomplete and misleading.  At the indicated page of his deposition,
        Tommaseo offered the following explanation of why he thinks this property floods more
        after Hurricane Katrina:

>       A:      I think it's [i.e., flooding] more now.  Yes, because of the BP
>       situation, I mean, just because we've been going town there more
>       frequently during that time.
>
>       Q:      So you've been down there more frequently, so you personally
>       have experienced it more often?
>
>       A:      Yes, uh-huh.
>
>       Q:      Do you have any other independent reason to believe that it is
>       occurring more often or it's simply that you're observing it more often?
>
>       A:      Just observing it more often.

        Tommaseo Dep. at 61:14-62:1.  The fact that Tommaseo sees more flooding now simply
        because he visits the property more often now further demonstrates why the Court should

reject his claim.  Even if Tommaseo's observation was accurate, his testimony suggests that Hurricane Katrina and not the MRGO caused this flooding.  See U.S.' Mem. at 75.

65. Agreed.

66. Agreed.

67. The United States opposes this proposed finding of fact.  The United States renews and re-asserts its objection to the admission of all evidence related to properties not listed in Plaintiffs' operative complaint.  See U.S.' Mot. to Exclude (1) All Evidence Relating to Props. Not Identified in the Third Am. Compl., & (2) All Evidence Related to Props. Pls. Did Not Own at the Time Pls. Assert their Claims Accrued, filed Nov. 23, 2011 (ECF No. 150).  Several of the properties listed in this proposed finding of fact relate to these inadmissible documents.

68. The United States opposes this proposed finding of fact.  The United States renews and re-asserts its objection to the admission of all evidence related to properties not listed in Plaintiffs' operative complaint.  See id.  Several of the properties listed in this proposed finding of fact relate to these inadmissible documents.

69. Agreed.

70. Agreed.

71. Agreed.

72. Agreed.

73. Agreed.

74. The United States agrees that Tommaseo testified that he "had water approximately four feet inside" his house, but not "four to six feet of water," as this proposed finding of fact states.  Tommaseo Dep. at 36:10-11.

75. Agreed.  But there is no evidence that the length of time Mr. Tommaseo was unable to live in his home was extended due to standing water or inevitably recurring flooding on this property.

76. The United States objects that this proposed finding is misleading.  Tommaseo testified that Hurricane Katrina damaged several of his properties, but some of this damage was clearly unrelated to flood water.  For example, when discussing his properties on Delille and Standard Streets, Tommaseo described the damage "on the roofs [due to] a lot of wind damage.  On the inside, all the furniture and everything was just everywhere like in my house.  Things were floating around everywhere – in my house I'm talking about.  As

far as the rental properties, I [don't] know whether it was floating or not, but things were rearranged and mud was still inside the houses." Tommaseo Dep. at 168:7-13.

77.     The United States objects that this proposed finding is incomplete and misleading. Tommaseo testified that Hurricane Katrina destroyed houses on these properties. And in the very next sentence of his deposition, which Plaintiffs do not cite, Tommaseo testified that he has rebuilt houses on each of these properties. Tommaseo Dep. at 90:23-24.

78.     Agreed.

79.     Agreed. But there is no evidence that the length of time Mr. Tommaseo was unable to operate Rocky and Carlo's restaurant was extended due to standing water or inevitably recurring flooding on this property.

80.     Agreed.

81.     The United States objects that this proposed finding is incomplete and misleading. Tommaseo testified that he did not have to obtain any new permits because he was "grandfathered" in. Tommaseo Dep. at 39:1-3. Although the testimony is irrelevant to Plaintiffs' takings claims, after conferring with counsel during his deposition, Tommaseo testified that he understood current building codes require a house to be raised four feet. See id. at 39:12. Tommaseo did not testify that any federal agency requires any type of building permit or that any federal agency enforce the new building code he alleges, as this proposed finding of fact states.

82.     The United States objects that this proposed finding is incomplete and misleading. At the trial transcript page indicated, Tommaseo was asked whether he "ever went down to the Shell Beach, Yscloskey area "prior to the construction of the MRGO?" Tr. at 182:6-7 (Zelaya). Tommaseo answered "No." Id. at 182:11 (Tommaseo). Tommaseo stated that the first time he went there was in the late 1970s. See id. at 182:12-14.

83.     Agreed.

84.     Agreed.

### 4.  **Plaintiffs Steven and Cynthia Bordelon**

85.     The United States objects that this proposed finding of fact is incomplete and misleading. During his deposition, Stephen Bordelon ("Bordelon") testified that he could not remember when he acquired the property known as 3024 Lakewood Drive, Violet, St. Bernard Parish. Dep. of Steven Bordelon at 13:22-14:1 (Oct. 14, 2010) ("Bordelon Dep."). SPX.911 indicates that Bordelon and his wife, Cynthia Bordelon nee Bacala, acquired this property on January 27, 1993.

86.     The United States agrees that SPX.912 indicates that Steve's Mobile Home & R.V.
        Repair, Inc. ("Steve's") acquired the property known as 3209 East Judge Perez Drive,
        Meraux, St. Bernard Parish, on July 20, 1999.

87.     Agreed.

88.     Agreed.

89.     The United States agrees that Bordelon testified that he was not allowed to return to the
        area for approximately one month after Hurricane Katrina.  Bordelon Dep. at 17:21-22.
        There is no evidence that the federal government prevented the Bordelons' return, as this
        proposed finding of fact might suggest.  Instead, Bordelon testified that it was St. Bernard
        Parish – not the federal government – that was granting passes, and, therefore, apparently
        restricting access to this area.  See id. at 18:1-2.

90.     Agreed.  This proposed finding of fact, however, is not relevant to Plaintiffs' Fifth
        Amendment takings claims.

91.     The United States objects that the trial record does not support this proposed finding of
        fact.  At the cited page of his deposition transcript, Bordelon testified about his house, not
        his business's property.  The proposed finding is also incomplete and misleading.
        Bordelon testified that although the business property suffered significant damage during
        Hurricane Katrina, the facilities of Steve's RV were restored to the same operational
        capacity they had before the hurricane.  Bordelon Dep. at 30:4-9.

92.     Agreed.  But there is no evidence that the length of time Bordelon was prevented from
        returning this property to full operations was extended due to standing water or inevitably
        recurring flooding on this property.

### 5.  Plaintiffs Gwendolyn and Henry Adams

93.     The United States agrees that, according to SPX.1039, Plaintiff Gwendolyn Adams
        acquired the property identified as 2414 Deslonde St. on May 25, 1994.

94.     The United States objects that the record does not support this proposed finding of fact.
        Plaintiff Gwendolyn Adams testified that when she returned to check on her property
        after Hurricane Katrina, she " believe[d] it was November, but [was] not sure."
        Deposition of Henry & Gwendolyn Adams at 17:11-12(Oct. 15, 2010) ("Adams Dep.").
        When asked when she was able to access the house, Plaintiff Gwendolyn Adams
        responded:  "Right now, I can't really say.  It's unfortunate, but I've had a couple of
        seizures since that time and those dates are not with me, so I cannot tell you that."  Id. at
        18:1-4.

95.      Agreed.

13

96.     Agreed.  But this proposed finding of fact ignores the fact that Plaintiff Adams rebuilt her home in the same location as the original structure.  Adams Dep. at 20:3-10. Consequently, neither the flood waters resulting from Hurricane Katrina or any other storm, nor the risk of inevitably recurring flooding has hindered the Adams from rebuilding a home on this property.  See U.S. Mem. at 24.

97.     The United States objects that this proposed finding of fact is inaccurate, misleading and has no support in the trial record.  Plaintiff Gwendolyn Adams did not testify that she faced new building restrictions and elevation requirements "based on MRGO flooding and the threat of future MRGO flooding," as this proposed finding of fact falsely claims. Adams testified that when she rebuilt the house "there were many stipulations in rebuilding," including rebuilding to a higher elevation with deeper pilings.  Adams Dep. at 14:23-15:9.  There is no evidence that the United States imposed these new restrictions, as this proposed finding of fact wrongly suggests, and there is no evidence that these restrictions were adopted due to "MRGO flooding" or to protect against a supposed threat of "future MRGO flooding."

**6.  Plaintiff St. Bernard Parish Government**

98.     The United States objects that this proposed finding of fact improperly asserts a contention of law that the trial record contradicts.  None of the properties involved in this case have experienced inevitably recurring flooding, and Plaintiffs failed to show that any property flooded during any event (including during Hurricane Katrina) as a result of construction or maintenance of the MRGO.  As a factual matter, representatives of St. Bernard Parish testified that the Parish has records of only one flooding event post-Hurricane Katrina, and that this flooding incident took place outside the federal hurricane protection system.  See U.S.' Mem. at 17 & n.9; Tr. at 144:1-23 (Walsh).

99.     The United States opposes this proposed finding of fact.  The United States renews and re-asserts its objection to the admission of all evidence related to properties not listed in Plaintiffs' operative complaint.  See ECF No. 150.  Several of the properties listed in this proposed finding of fact relate to these inadmissible documents.

100.    Agreed.

101.    Agreed.

102.    Agreed.

103.    The United States objects that this proposed finding is misleading.  Further, to the extent that the proposed finding suggests that either federal government action or Hurricane Katrina floodwaters physically blocked Walsh's return to St. Bernard Parish for two weeks following that storm, the trial record does not support the proposed finding.  Walsh testified that she "came back to the Parish Government to secure some files about two weeks later. . . ."  Tr. at 118:7-9 (Walsh).

104.    Agreed.

105.    Agreed.

106.    The United States objects because the record does not support this proposed finding.  At the trial transcript pages cited, Walsh testified only that "a lot of those records were destroyed from what I understand."  Tr. at 119:19-20 (Walsh).  Walsh also preserved certain Parish records which she authenticated and testified about during trial.  See id. at 140-145.

107.    Agreed

108.    The United States opposes this proposed finding of fact, which is vague and misleading to the extent it suggests that St. Bernard Parish was unable to rebuild following Hurricane Katrina.  As proven at trial, St. Bernard Parish received approximately $7.1 million in flood insurance payments and, with the exception of work remaining on a municipal wastewater treatment plant, St. Bernard Parish expected the construction phase of the recovery program to be complete by the end of 2011.  Dep. of Michelle Walsh at 40:17-21 (Jan. 13, 2011); Dep. of Craig P. Taffaro, Jr. at 71:13-18 (Jan. 13, 2011).

109.    The United States agrees that Walsh testified that the government complex was "completed entirely [in] 2010" and that in "2009, I believe people started moving back into the complex."  Tr. at 127:8-10 (Walsh).

110.    The United States agrees that Walsh testified that flooding from Hurricane Katrina affected the fire stations in St. Bernard Parish.

111.    The United States agrees that Ms. Walsh testified that flooding from Hurricane Katrina affected Parish-owned buildings outside the federal hurricane protection system.

112.    Agreed.

113.    Agreed.

114.    The United States agrees that Walsh testified that she did not return to her home following Hurricane Katrina until "six weeks later."  Tr. at 122:18-19 (Walsh).  The United States objects that this proposed finding is misleading to the extent that it suggests federal government action or Hurricane Katrina floodwaters physically blocked Walsh from returning to her home for this length of time, which is a contention the trial record does not support.  In addition, Ms. Walsh's residence is not part of this lawsuit.

115.    Agreed.

116.    The United States objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

**C.      Wetlands as Surge Buffers**

117.    The United States objects that this proposed finding of fact is incomplete and misleading. In his several depositions, Greg Miller testified that, as general proposition, wetlands and marshes may, in some situations, play a role in providing a natural protection against storm surges and hurricanes.  See Dep. of Greg Miller at 26-27 (Apr. 16, 2008).  But Miller explained he could not quantify the magnitude of storm surge reduction wetlands might play in the area around the MRGO, or in any area.  Id. at 28; see also Dep. of Greg Miller at 69:3-7 (Feb. 10, 2011) ("It is too generalized of a question because there are too many other factors that go into the characteristics of the storm, the location of it, the location within the system. . . .").  Miller explained that he was not aware of any attempt to quantify a particular acreage of wetlands in this area with a corresponding storm surge reduction.  See id. at 67:4-9.  Dr. Kemp observed that the buffering impact of wetlands does not conform to a precise formula and "varies from storm to storm."  Tr. at 292:7-8 (Kemp).  Further, at trial, Plaintiffs offered no evidence demonstrating the difference the environmental impacts resulting from the MRGO might have had on storm surge in any storm other than Hurricane Katrina.  And Plaintiffs' evidence with respect to Hurricane Katrina was flawed.

In addition, some of the citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard these citations.

118.    Agreed.  But Plaintiffs offered no evidence concerning what difference the environmental impacts resulting from the MRGO might have had on storm surge during any storm other than Hurricane Katrina.  And Plaintiffs' evidence with respect to Hurricane Katrina was flawed in the several ways discussed in the United States' post trial brief.  See U.S.' Mem. at 41-61.  In addition, Dr. Kemp observed that the buffering impact of wetlands does not conform to a precise formula and "varies from storm to storm."  Tr. at 292:7-8 (Kemp).

119.    The United States objects that this proposed finding is incomplete and misleading.  As the Plaintiffs' citation indicates, Dr. Britsch did not express an opinion specific to wetlands, but instead testified that "in general, land areas serve as storm buffers and influence the hydrology."  Britsch Test. at 24:18-22.  Dr. Britsch then testified "that most of the land loss experienced in the St. Bernard Delta is unrelated to the MRGO."  Id. at 25:5-6.

120.    The United States objects that this proposed fact finding is incomplete and misleading. The storm surge reduction estimate was not an attempt to measure storm surge reduction relevant to any particular property or this geographic area.  There is no evidence in the trial record that this estimate is relevant to any Plaintiffs' property.  In addition, some of the citations offered in support of this finding were not referenced or introduced at trial in

this matter.  For the reasons stated in the United States' Motion to Exclude and the Joint Exhibit List, these materials are not part of this trial record, and the Court should disregard these citations.  Furthermore, as discussed in the United States' Post-Trial Brief, the trial record establishes that the most significant portion of the land loss in the St. Bernard Delta occurred during the construction of the MRGO, or immediately thereafter.  Def.'s Post-Trial Br. at 77 n.31.  Plaintiffs failed to present any technical or scientific evidence explaining how the condition which they allege is the cause of flooding on their properties could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

121.    The United States objects that this proposed finding of fact is incomplete and misleading.  The storm surge reduction estimate was not an attempt to measure storm surge reduction relevant to this geographic area, but instead was apparently based on data from Calcasieu Lake and from the Grand Chenier marsh.  See Kemp Written Test. at 231 n. Fig. 6.58.  There is no evidence in the record that this estimate is relevant to any of Plaintiffs' properties.  The trial record establishes that the most significant portion of the land loss in the St. Bernard Delta occurred during the construction of the MRGO, or immediately thereafter.  See U.S.' Mem. at 77 n.31.  Plaintiffs failed to present any technical or scientific evidence explaining how the condition which they allege is the cause of flooding on their properties could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

122.    The United States objects that some of the documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of the trial record, and the Court should disregard these citations.  The United States further objects that Plaintiffs presented no expert analysis concerning whether or to what extent the "quality of wetlands" affected storm surge during any storm event other than Hurricane Katrina, and presented no evidence showing how or whether the quality of any wetlands adjacent to Plaintiffs' properties has impacted flooding on those properties.

123.    The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of the trial record, and the Court should disregard this proposed finding.

124.    The United States opposes this proposed finding of fact, which is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of the trial record, and the Court should disregard this proposed finding.

Furthermore, the trial record establishes that the most significant portion of the land loss in the St. Bernard Delta is unrelated to the MRGO, see Britsch Direct Testimony at 25:4-6, and occurred before the construction of the MRGO, or immediately thereafter, see

U.S.' Mem. at 77 n.31. Plaintiffs failed to present any technical or scientific evidence explaining how the condition which they allege is the cause of flooding on their properties could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

### D. MRGO's Destruction of Wetlands

125. The United States objects that this proposed finding is offered without any support from the trial record. The documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of the trial record, and the Court should disregard this proposed finding.

126. The United States agrees that Plaintiffs have accurately quoted a portion of SPX.1154. That draft document's estimate that MRGO "resulted in the conversion of 19,400 acres of wetlands and 4,750 acres of shallow open water to deep open water or spoil," which is sourced to a 1999 EPA-commissioned study, see SPX.1154 at 1-13 (citing USACE, *Habitat Impacts of the Construction of the MRGO* (1999)), is, in the explicit language of the report itself, "especially speculative," and conflicts with the more precise results of the peer-reviewed land loss study Dr. Britsch presented in his direct testimony. See Tr. at 971:23-974:11 (Britsch). Dr. Britsch's peer-reviewed study, which the plaintiffs' experts in Robinson affirmatively relied upon , was not challenged during trial in this case. Dr. Britsch's more precise study calculates that only 7,087 acres out of 103,870 acres of land lost in the St. Bernard Delta from 1932-2001 is attributable to MRGO.

In addition, the United States objects that certain of the documents cited in support of Plaintiffs' proposed finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard these citations.

127. The United States objects that this proposed finding of fact, which asserts that the United States did foresee the "environmental consequences of the MRGO" is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims. Plaintiffs must prove not that the United States could have foreseen a potential set of circumstances in which indirect effects of the MRGO might exacerbate storm surge in the region; Plaintiffs must instead prove that inevitably recurring flooding (not ecological changes in nearby wetlands or alleged increased storm surge during one particular storm) is the direct, natural, or probably result of construction or operation of the MRGO. This proposed finding is also offered without any support from the trial record. The documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding.

### 1. Initial Construction of MRGO Destroyed Wetland Buffer

128. The United States agrees that the MRGO was constructed through wetlands in the 1950s. But Plaintiffs' admission is one of several reasons why the Court should reject Plaintiffs'

claims. The unrebutted evidence establishes that the most significant portion of the land loss in the St. Bernard Delta occurred before the construction of the MRGO, or immediately thereafter. <u>See</u> U.S.' Mem. at 77 n.31 (citing DX-208, Fig. 2, at 9). Plaintiffs failed to present any technical or scientific evidence explaining how the condition which they allege is the cause of flooding on their properties could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

In addition, certain of the documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of the trial record, and the Court should disregard these citations.

129.   The United States does not disagree that MRGO was cut through wetlands, but objects that there is no support in the trial record or the supporting citations offered here for the assertion that MRGO's location "maximized wetland destruction and resulting flooding on Plaintiffs' properties" or resulted in any flooding on Plaintiffs' properties at all. In addition, certain of the materials cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of the trial record, and the Court should disregard these citations.

## 2.   **Erosion of MRGO's Banks Destroyed Wetland Buffer**

130.   The United States opposes this proposed finding of fact. The first sentence of this proposed finding of fact is offered without citation, and therefore is offered without support from the trial record. Furthermore, all but three of the documents cited in support of this finding – <u>Robinson</u> JX-195, Estopinal's trial testimony, and Dr. Kemp's written testimony – were not referenced or introduced at trial in this matter. All of the cited documents (except for these three) are not part of this trial record, and the Court should disregard these citations.

In addition, <u>Robinson</u> JX-195 demonstrates conclusively that the vast majority of the MRGO channel widening occurred well before 1985. <u>See</u> <u>Robinson</u> JX-195 at pdf. 132-35. Plaintiffs failed to present technical or scientific evidence explaining how the condition which they allege is the cause of flooding on their properties could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

131.   The United States opposes this proposed finding of fact. This proposed finding is offered without any support from the trial record. The documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding.

In addition, <u>Robinson</u> JX-195 demonstrates conclusively that the vast majority of the MRGO channel widening occurred well before 1985. <u>See</u> <u>Robinson</u> JX-195 at pdf. 132-35. Plaintiffs failed to present technical or scientific evidence explaining how the condition which they allege is the cause of flooding on their properties could exist for

decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

Further, the figures referenced in paragraph 131 are misleading and inaccurate.  As Dr. Britsch testified at trial, the measurements presented in these figures, and which purport to be calculations of MRGO-caused erosion, improperly incorporate pre-existing water bodies and exaggerate the extent of the erosion actually resulting from the expansion of MRGO's borders.  See Tr. at 974:12-978:3 (Britsch).

132.   The United States objects that the trial record does not support this proposed finding.  All but one of the documents cited in support of this finding – SPX.163 – were not referenced or introduced at trial in this matter.  All of the cited documents (except for SPX.163) are not part of this trial record, and the Court should disregard these citations.

133.   The United States objects that the trial record does not support this proposed finding.  All but one of the documents cited in support of this finding – Dr. Kemp's trial testimony at 244:3-18 – were not referenced or introduced at trial in this matter.  All of the cited documents (except for Dr. Kemp's trial testimony at 244:3-18) are not part of this trial record, and the Court should disregard these citations.

134.   The United States objects that the trial record does not support this proposed finding.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  The United States further objects that its purported "acknowledgement" of the effect of ship wakes on the MRGO is not a fact relevant to any element of Plaintiffs' Fifth Amendment takings claims.

135.   The United States opposes this proposed finding of fact.  All but one of the documents cited in support of this finding – Willhoft's trial testimony at 839-40 – were not referenced or introduced at trial in this matter.  All of the cited documents (except for Willhoft's trial testimony at 839-40) are not part of this trial record, and the Court should disregard these citations.  In addition, Plaintiffs acknowledge the statements cited in proposed finding 135 are statements of individuals or entities "outside the government" and therefore constitute inadmissible hearsay.  The United States further objects that the effect of ship wakes on the MRGO is not a fact relevant to any element of Plaintiffs' Fifth Amendment takings claims.

136.   The United States opposes this proposed finding of fact.  In contrast to this proposed finding of fact, in the pages of the trial testimony cited, Dr. Britsch testified that a shoreline loss measurement purporting to measure the erosion attributed to the MRGO was, in several cases, "exaggerated because it incorporates some previous water bodies." Tr. at 976:25-977:1 (Britsch).  When asked "if someone used that calculation to represent the acreage of land that was lost due to dredging and erosion by the MRGO, what would your view be of that?" Dr. Britsch answered "it could exaggerate that number."  Id. at 977:23-978:2 (Britsch).

20

### 3. Corps' Failure to Construct Foreshore Protection

137. The United States objects that this proposed finding is offered without any support from the trial record. The documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. The United States further objects that the Corps' alleged prediction of "dramatic widening" of the MRGO is not a fact relevant to any element of Plaintiffs' Fifth Amendment takings claims.

138. The United States objects that this proposed finding is offered without any support from the trial record. The documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. The United States further objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

139. The United States objects that this proposed finding is offered without any support from the trial record. The documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. The United States further objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

140. The United States objects that this proposed finding is offered without any support from the trial record. The documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. The United States further objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

141. The United States objects that this proposed finding is offered without any support from the trial record. The documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. The United States further objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

142. The United States objects that this proposed finding is offered without any support from the trial record. The documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. The United States further objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

143.   The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  The United States further objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

144.   The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding. The United States further objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

145.   The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  The United States further objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

146.   The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding. The United States further objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

147.   The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding. The United States further objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

148.   The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding. The United States further objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

149.   The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the

Court should disregard this proposed finding.  The United States further objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

150.   The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  The United States further objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

151.   The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.

### 4.  Saltwater Intrusion Destroyed Wetland Buffer

152.   The United States opposes this proposed finding of fact.  All but one of the documents cited in support of this finding – SPX.1154 – were not referenced or introduced at trial in this matter.  All of the cited documents (except for SPX.1154) are not part of this trial record, and the Court should disregard these citations.  Further, the estimate of wetlands loss presented in the draft Ecosystem Restoration Study is, in the explicit language of the report itself, "especially speculative," and conflicts with the more precise results of the peer-reviewed land loss study Dr. Britsch presented in his direct testimony.  See Tr. at 971:23-974:11 (Britsch) (discussing SPX.1154 at 1-13) (citing USACE, *Habitat Impacts of the Construction of the MRGO* (1999)).  Dr. Britsch's peer-reviewed study, the plaintiffs' experts in the Robinson relied upon affirmatively was not challenged during trial in this case.  Dr. Britsch's more precise study calculates that only 7,087 acres out of 103,870 acres of land lost in the St. Bernard Delta from 1932-2001 is attributable to MRGO.

In addition, the fact that the United States intends to initiate a comprehensive ecosystem restoration plan – as set forth in SPX.1154 – provides another reason why the Court should reject Plaintiffs' claims because the ecological situation is now vastly different from the ecological situation upon which Plaintiffs' experts based their analysis.  See U.S.' Mem. at 59.

153.   The United States agrees that Dr. Britsch provided the cited expert opinion in the Robinson matter.  The parties agree, however, that any increase in salinity resulting from the MRGO – even if shown to be causally-related to increased flooding on Plaintiffs' properties – occurred decades ago.  See, e.g., Pls.' Proposed Findings of Fact at 61, Fig. 4 (noting increase in 1962).  Like Plaintiffs' argument about the increased conveyance capability the MRGO allegedly poses, and like Plaintiffs' argument about the MRGO's alleged impact on wetlands, Plaintiffs failed to present technical or scientific evidence

explaining how an increase of salinity could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

154.    The United States objects that all but two of the documents cited in support of this finding – Dr. Britsch's trial testimony at 961:21-22 and SPX 1154 – were not referenced or introduced at trial in this matter.  All of the cited documents (except for Dr. Britsch's trial testimony at 961:21-22 and SPX.1154) are not part of this trial record, and the Court should disregard these citations.

The United States agrees that any increase in salinity resulting from the MRGO – even if shown to be causally-related to increased flooding on Plaintiffs' properties – occurred decades ago.  Like Plaintiffs' argument about the increased conveyance capability the MRGO allegedly poses, and like Plaintiffs' argument about the MRGO's alleged impact on wetlands, Plaintiffs failed to present technical or scientific evidence explaining how an increase of salinity could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

155.    Agreed.  But the graph provides another reason why the Court should reject Plaintiffs' claims.  The graph demonstrates that any increase in salinity resulting from the MRGO – even if shown to be causally-related to increased flooding on Plaintiffs' properties – occurred decades ago.  Like Plaintiffs' argument about the increased conveyance capability the MRGO allegedly poses, and like Plaintiffs' argument about the MRGO's alleged impact on wetlands, Plaintiffs failed to present technical or scientific evidence explaining how an increase of salinity could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

156.    Agreed.  But the proposed finding of fact provides another reason why the Court should reject Plaintiffs' claims because it demonstrates that any increase in salinity resulting from the MRGO – even if shown to be causally-related to increased flooding on Plaintiffs' properties – occurred decades ago. Like Plaintiffs' argument about the increased conveyance capability the MRGO allegedly poses, and like Plaintiffs' argument about the MRGO's alleged impact on wetlands, Plaintiffs failed to present technical or scientific evidence explaining how an increase of salinity could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.  In addition, the fact that the salinity levels have decreased since closure of the MRGO in 2009 provides another reason why the Court should reject Plaintiffs' claims because the ecological situation is now vastly different from the ecological situation upon which Plaintiffs' experts based their analysis.  See U.S.' Mem. at 59.

157.    The United States objects that all but three of the documents cited in support of this finding – SPX.163, Dr. Britsch's trial testimony at 899:2-6 and 937:21-23, and SPX.1154 – were not referenced or introduced at trial in this matter. All of the cited documents

(except for SPX.163, Dr. Britsch's trial testimony at 899:2-6 and 937:21-23, and SPX.1154) are not part of this trial record, and the Court should disregard these citations.

In addition, the proposed finding of fact provides another reason why the Court should reject Plaintiffs' claims because it demonstrates that any increase in salinity resulting from the MRGO – even if shown to be causally-related to increased flooding on Plaintiffs' properties – occurred decades ago. Like Plaintiffs' argument about the increased conveyance capability the MRGO allegedly poses, and like Plaintiffs' argument about the MRGO's alleged impact on wetlands, Plaintiffs failed to present technical or scientific evidence explaining how an increase of salinity could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit

158. Agreed. The United States objects, however, that all but one of the documents cited in support of this finding – Robinson JX-195 – were not referenced or introduced at trial in this matter. All of the cited documents (except for Robinson JX-195) are not part of this trial record, and the Court should disregard these citations. In addition, the testimonial statements to which Plaintiffs cite represent inadmissible hearsay.

159. Agreed. However, the United States objects that all but one of the documents cited in support of this finding – Robinson JX-195 – were not referenced or introduced at trial in this matter. All of the cited documents (except for Robinson JX-195) are not part of this trial record, and the Court should disregard these citations.

160. The United States objects that all but one citation offered in support of this finding – Dr. Kemp's trial testimony at 263:6-264:3 and 521:22-25 – were not referenced or introduced at trial in this matter. All of the offered citations (except for Dr. Kemp's trial testimony at 263:6-264:3 and 521:22-25) are not part of this trial record, and the Court should disregard these citations.

161. The United States opposes this proposed finding of fact, which the trial record does not support and which mischaracterizes the pre-MRGO environment in the St. Bernard Polder. The first sentence of this proposed finding of fact is offered without citation, and therefore is offered without support from the trial record. The remainder of this proposed finding of fact is offered without any support from the trial record. The documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. In addition, several of the documents referenced are the product of non-parties, and therefore represent inadmissible hearsay.

This proposed finding also contradicts the actual evidence presented at trial, which proved that the St. Bernard Polder was a net land loss environment before the MRGO's construction, that significant wetlands loss in the Golden Triangle area adjacent to the most populous part of the Polder took place before the MRGO and was the result of natural forces, and that a combination of land loss, subsidence, and sea level rise is

largely responsible for changes in the tides and flooding in the region.  See Britsch Test. at 3, 12-19, 29.

162.    Agreed.  But the proposed finding of fact provides another reason why the Court should reject Plaintiffs' claims because it demonstrates that any "changes to the area" – even if shown to be causally-related to increased flooding on Plaintiffs' properties – occurred decades ago.  Plaintiffs failed to present technical or scientific evidence explaining how these "changes to the area" could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

163.    Agreed.  But the proposed finding of fact provides another reason why the Court should reject Plaintiffs' claims.  Robin testified that "since Katrina[,] there's no more ridges. There's no more trees.  It's plain."  Tr. at 631:18-20 (Robin).  This testimony suggests that these changes to the geographic features are likely the result of natural forces – primarily Hurricane Katrina – not the MRGO.  See U.S.' Mem. at 75.

164.    The United States opposes this proposed finding of fact, an assertion of technical opinion which was none of the experts in this case addressed.  Further, all but two of the documents cited in support of this finding – SPX.163 and SPX.1154 – were not referenced or introduced at trial in this matter.  All of the cited documents (except for SPX.163 and SPX.1154) are not part of this trial record, and the Court should disregard these citations.  In addition, several of the documents referenced are the product of non-parties, and therefore represent inadmissible hearsay.

165.    The United States opposes this proposed finding of fact, an assertion of technical opinion which was none of the experts in this case addressed, and which the trial record contradicts.  The trial evidence proved that the St. Bernard Polder was a net land loss environment before the MRGO's construction, that significant wetlands loss in the Golden Triangle area adjacent to the most populous part of the Polder took place before the MRGO as a result of natural forces, and that a combination of land loss, subsidence, and sea level rise are largely responsible for changes in the tides and flooding in the region.  See Britsch Test. at 3, 12-19, 29.  Furthermore, all but three of the citations offered in support of this finding – SPX.1154, Dr. Kemp's trial testimony, and Estopinal's trial testimony – were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX.1154, Dr. Kemp's trial testimony, and Estopinal's trial testimony) are not part of this trial record, and the Court should disregard them.

166.    The United States objects that this proposed finding is offered without any support from the trial record.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  The statements quoted in the proposed finding also represent inadmissible hearsay.  Further, this proposed finding, which concerns the United States' purported knowledge of the effects of salinity upon freshwater wetlands is not relevant to any element of Plaintiffs' Fifth Amendment Takings claims.

167.	The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  Further, this proposed finding, which concerns the United States' purported knowledge of the effects of salinity upon freshwater wetlands is not relevant to any element of Plaintiffs' Fifth Amendment Takings claims.

168.	The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  Further, these out-fo-court statements of non-parties represent inadmissible hearsay.  In addition, this proposed finding, which concerns the United States' purported knowledge of the effects of salinity upon freshwater wetlands is not relevant to any element of Plaintiffs' Fifth Amendment Takings claims.

169.	The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  Further, this proposed finding, which concerns the United States' purported knowledge of the effects of salinity upon freshwater wetlands is not relevant to any element of Plaintiffs' Fifth Amendment Takings claims.

170.	The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  Further, this proposed finding, which concerns the United States' purported knowledge of the effects of salinity upon freshwater wetlands is not relevant to any element of Plaintiffs' Fifth Amendment Takings claims.

**E.	Scope of MRGO's Destruction of Wetland Buffer**

171.	The United States objects that this proposed fact finding is vague, misleading, and overstates the role of the MRGO in causing land loss in the St. Bernard Polder.  Dr. Britsch's peer-reviewed study, which the plaintiffs' expert in <u>Robinson</u> relied upon affirmatively, and was not challenged during trial in this case, calculates that only 7,087 acres out of 103,870 acres of land lost in the St. Bernard Delta from 1932-2001 is attributable to MRGO.  Further, all but one of the documents cited in support of this finding – SPX.704 – were not referenced or introduced at trial in this matter.  All of the cited documents (except for SPX.704) are not part of this trial record, and the Court should disregard these citations.

In addition, this proposed finding of fact is one of several reasons why the Court should reject Plaintiffs' claims. The unrebutted evidence established that the most significant portion of the land loss in the St. Bernard Delta occurred during a time contemporaneous with the construction of the MRGO, or immediately thereafter. See U.S.' Mem. at 77 n.31. Plaintiffs failed to present any technical or scientific evidence explaining how the condition which they allege is the cause of flooding on their properties could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

172. The United States objects that this proposed finding is offered without any support from the trial record. The documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. In addition, Mr. Gagliano's out-of-court statements constitute inadmissible hearsay. Finally, this proposed finding, which concerns the United States' purported knowledge of the effects of the MRGO on wetlands is not relevant to any element of Plaintiffs' Fifth Amendment Takings claims.

173. The United States objects that this proposed finding is offered without any support from the trial record. The documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. In addition, the conclusions of the Coast 2050 report and Mr. Gagliano's out-of-court statements constitute inadmissible hearsay.

174. The United States objects that this proposed finding is offered without any support from the trial record. The documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. In addition, out-of-court statements cited constitute inadmissible hearsay.

175. The United States agrees that Dr. Britsch testified that of 103,870 acres lost in the St. Bernard Delta since 1932, only 7,087 acres– approximately seven percent – was directly attributable to the MRGO.

176. Agreed.

177. The United States objects that this proposed finding of fact is inaccurate. The trial record thoroughly contradicts the proposed finding. Contrary to the proposed finding of fact, when Dr. Britsch was asked about the significance of the pre-MRGO land loss, he testified that:

> I think the relevance of the 1932 data being on this map is to show that land loss was occurring prior to the construction of the MRGO as part of the natural process of the destruction of deltaic systems. So I think it does serve a purpose to illustrate that land loss didn't just start occurring when the MRGO was constructed. It was

occurring prior to the MRGO and it's going to continue on into the
future.  It's a natural process.

Tr. at 915:10-18 (Britsch).  Plaintiffs' assertion that "Dr. Britsch was unable to explain
the significance of comparing losses caused by the MRGO since 1958 with losses caused
by other processes since 1932" is wrong.

In addition, all but one of citations offered in support of this finding – Dr. Britsch's trial
testimony – were not referenced or introduced at trial in this matter.  None of the cited
materials (except for Dr. Britsch's trial testimony) are part of this trial record, and the
Court should disregard these citations.

178.   The United States agrees that Dr. Britsch presented land loss maps focusing on a smaller
       area for his expert report in Robinson.  This was entirely appropriate.  The Robinson case
       concerned different Plaintiffs, related to properties located in different locations, and
       focused on different legal issues.  As Dr. Britsch explained at trial, the underlying land
       loss study he performed focused more broadly on the entire Louisiana coast and pre-dates
       this litigation.  See Tr. at 895:16-896:7 (Britsch); id. at 979:4-9 (Britsch).  Dr. Britsch
       presented a larger area for the Court's consideration in this case because "it does a good
       job of illustrating the location of the property that we're talking about in relation to the
       St. Bernard delta as a whole."  Id. at 979:15-19 (Britsch).  Dr. Britsch explained that "this
       area is experiencing a lot of land loss, some of which is related to MRGO, but most of
       which is not.  Lots of erosion, lots of shoreline loss, very close proximity to large open
       bodies of water."  Id. at 979:18-22 (Britsch).  "[B]ecause the Plaintiffs' properties were
       spread out over quite a large area," Dr. Britsch appropriately "wanted to make sure [he]
       incorporated areas that [he] thought were influencing the tides and the water levels in
       those areas."  Id. at 979:22-980:1 (Britsch).

179.   The United States objects that this proposed finding is incomplete and misleading.  Dr.
       Britsch stated that he participated in the work that ultimately is reflected in some portions
       of the MRGO Ecosystem Restoration Plan Draft EIS – the "geologic input."  Tr. at
       931:21-932:2 (Britsch).  Dr. Britsch clarified that he did not agree the MRGO caused all
       of the loss of swamp and marsh habitats discussed in the cited document.  See id. at
       933:23-24 (Britsch).  In addition, all but one of the documents cited in support of this
       finding – Dr. Britsch's trial testimony – were not referenced or introduced at trial in this
       matter.  All of the cited documents (except for Dr. Britsch's trial testimony) are not part
       of this trial record, and the Court should disregard these citations.

180.   Agreed.

181.   Agreed.  Dr. Britsch testified at trial that the calculations of loss presented in the Draft
       EIS vacillate between a discussion of "land converting to water" and "habitat loss."  Tr.
       at 938:21-23 (Britsch).  To the extent that the Draft EIS presents calculations of actual
       land loss, it draws from a 1999 EPA-commissioned study that on its face acknowledges
       that its "very rough estimates" of loss are, in the explicit language of the report itself,

"especially speculative." See SPX.1154, Appendix V (USACE, *Habitat Impacts of the Construction of the MRGO* (1999)); see also SPX.0773 at 52 ("The estimate of increased land loss is especially speculative"). These speculative estimates made for purposes of justifying broad environmental remediation projects are contradicted by the precise results of the peer-reviewed land loss study Dr. Britsch presented in his direct testimony, and upon which the Robinson Plaintiffs' relied in their trial presentation in that matter. See Tr. at 972:14-974:11.

182.    Agreed. As Dr. Britsch pointed out at trial, the 1999 EPA-commissioned study presents only "very rough estimates" of loss that are, in the explicit language of the report itself, "especially speculative." See SPX 1154, Appendix V (*Habitat Impacts of the Construction of the MRGO* (USACE, 1999); see also SPX 0773 at 52 ("The estimate of increased land loss is especially speculative"). The precise results of the peer-reviewed land loss study Dr. Britsch presented in his direct testimony -- the study the plaintiffs' experts in Robinson relied upon affirmatively -- contradict these speculative estimates made for purposes of justifying broad environmental remediation projects. See Tr. at 972:14-974:11 (Britsch).

183.    The United States objects that this proposed finding of fact relies entirely upon documents that were not referenced or introduced at trial, and are therefore not part of the trial record in this case. The Court should disregard this proposed finding for that reason. The United States also notes that several of the documents cited in this paragraph refer to estimates of "habitat conversion," which is not land loss, and which estimates are not comparable to Dr. Britsch's calculations of land converted to water. See, e.g., Tr. at 951:9-24 (Britsch). Finally, each of these third-party documents represent inadmissible hearsay which the Court may not consider.

184.    The United States objects that this proposed finding of fact is incomplete and misleading. When questioned about saltwater intrusion, Dr. Britsch stated that "saltwater intrusion . . . leads to habitat change and may contribute somewhat to land loss, but that was more of a habitat change thing we were talking about in the previous trial [i.e., the Robinson case]." Tr. at 906:23-907:1 (Britsch). Dr. Britsch's focus in this case was on land loss, as opposed to habitat change, because "that's what is most important in affecting the hydrology of the area." Id. at 907:1-4 (Britsch).

185.    Agreed.

186.    The United States objects to this proposed finding of fact. The trial record thoroughly contradicted this proposed finding. Dr. Britsch agreed that the widening of the MRGO was responsible for a certain amount of erosion and land loss immediately adjacent to the channel. See Britsch Test. at 20:13-15. But Dr. Britsch's peer-reviewed land loss study, conducted years before litigation in this case commenced, determined that the majority of the total land loss occurring in the St. Bernard Delta resulted from several other non-MRGO processes, and has been accelerating over time since long before the MRGO was constructed. See id. at 3-4, 6-25; DX 208, Fig. 2. Plaintiffs' experts did not perform any

work or present any opinions that are contrary to Dr. Britsch's land loss work. Indeed, the plaintiffs in the Robinson matter, whose trial presentation the Plaintiffs here rely on heavily, did not criticize but instead adopted and relied upon Dr. Britsch's land loss work in that case. See Robinson JX-195 at 5-1 ("The data for landloss calculations were derived from multiple USACE landloss maps by Britsch and Dunbar").

187.   The United States objects that this proposed finding of fact is incomplete and misleading in that it suggests that the cited 1972 report contradicts Dr. Britsch's trial opinion. Dr. Britsch did not present expert opinions about the destruction of habitat, and discussed subsidence in terms of its effect on flooding. Specifically, Dr. Britsch opined that the combination of subsidence and sea level rise are critical factors that expose Plaintiffs' low elevation properties to the possibility of flooding. See, e.g., Tr. at 991:10-17 (Britsch) ("In the sense that the land is sinking and sea levels are rising, I estimated a half a foot in the last 50 years. Half a foot may not seem like a lot of change, but in areas that are only slightly above sea level, a half a foot can make the difference between whether your land is flooded or not. So that can be a big difference.").

188.   The United States agrees that Dr. Britsch did not attempt to quantify habitat change in the St. Bernard Polder. The United States observes that Plaintiffs, who bear the burden of proof in this case, did not provide any expert analysis on this issue. Dr. Britsch did observe that the calculations in the Draft MRGO Ecosystem Restoration Study Environmental Impact Statement were self-described as "estimates," and were not comparable to the scientific work that underlies his calculations of land loss. See Tr. at 972:7-973:21 (Britsch). The Draft Environmental Impact Statement also relies upon the speculative conclusions of a 1999 EPA-commissioned study which states that "it is difficult to know the exact location of habitats 35 years ago" and that its "estimate of increased land loss is especially speculative." SPX.773 at 45, 52.

Separately, the assertion that Dr. Britsch was part of the "project delivery team that verified the accuracy of the draft EIS's estimates," is inaccurate and misleading. Dr. Britsch testified that he provided geologic input to that draft report. See Tr. at 932:2. Plaintiffs' citation to the trial transcript at 941:13-16 provides only Plaintiffs' counsel's assertion, and not Dr. Britsch's agreement, that Dr. Britsch was involved in "verifying" the "quantification of MRGO impacts." Dr. Britsch did not agree that he was involved in verifying the calculations in the draft EIS, which are drawn from a 1999 EPA-commissioned report that Dr. Britsch was not involved with. See id. at 942:11-18 (Britsch); 943:12-22 (Britsch).

189.   The United States objects that this proposed finding is offered without any support from the trial record. The documents cited in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. In addition, each of these third-party documents represent inadmissible hearsay that the Court may not consider.

**F.**    **MRGO Funnel**

190.    The United States objects that all but one of the citations offered in support of this finding – Dr. Kemp's trial testimony – were not referenced or introduced at trial in this matter. All of the cited documents (except for Dr. Kemp's trial testimony) are not part of this trial record, and the Court should disregard these citations.  In addition, the third party statements that Plaintiffs cite constitute inadmissible hearsay.

191.    The United States objects that all but one of the citations offered in support of this finding – Dr. Kemp's trial testimony – were not referenced or introduced at trial in this matter. All of the cited documents (except for Dr. Kemp's trial testimony) are not part of this trial record, and the Court should disregard these citations.  In addition, the third party statements that Plaintiffs cite constitute inadmissible hearsay.

192.    The United States opposes this proposed finding of fact.  The United States objects that all but two of the citations offered in support of this finding – the citations to Dr. Kemp's trial testimony and SPX.479 – were not referenced or introduced at trial in this matter. All of the cited materials (except for Dr. Kemp's trial testimony and SPX.479 (offered as Robinson JX-195)) are not part of this trial record, and the Court should disregard these citations.

This proposed finding of fact is also one of several reasons why the Court should reject Plaintiffs' claims.  To the extent the MRGO acts as a "funnel," that has been the case since the construction of the MRGO, or immediately thereafter.  Plaintiffs failed to present any technical or scientific evidence explaining how the condition which they allege is the cause of flooding on their properties could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

193.    The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  In addition, the third party statements that Plaintiffs cite constitute inadmissible hearsay.

This proposed finding of fact is also one of several reasons why the Court should reject Plaintiffs' claims.  To the extent the MRGO acts as a "funnel," that has been the case since the construction of the MRGO, or immediately thereafter.  Plaintiffs failed to present any technical or scientific evidence explaining how the condition which they allege is the cause of flooding on their properties could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

194.    The United States opposes this proposed finding of fact. Plaintiffs' arguments related to the alleged funnel effect cannot prove a takings claim because the funnel effect condition

no longer exists.  Plaintiffs' expert, Dr. Kemp, explained that, in analyzing his alleged funnel effect on storm surge in New Orleans, Reach 1 of the MRGO was critical because it connected Lake Pontchartrain and Lake Borgne hydrologically and therefore allowed surge from both lakes to theoretically enter the Industrial Canal.  See Tr. at 251:12-19 (Kemp).  But Dr. Kemp conceded that, with the construction of the surge barrier in 2011, that hydrological connectivity has been cut off.  See id. at 252:15 (Kemp); id. at 253:3 (Kemp) (opining that the surge barrier "would make the Dutch proud").  In other words, Plaintiffs admit that the funnel effect on which their claim is premised has been redressed and is no longer a factor in flooding within the hurricane protection system.

This proposed finding of fact is also one of several reasons why the Court should reject Plaintiffs' claims.  To the extent the MRGO acts as a "funnel," that has been the case since the construction of the MRGO, or immediately thereafter.  Plaintiffs failed to present any technical or scientific evidence explaining how the condition which they allege is the cause of flooding on their properties could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

195.    The United States objects that this proposed finding is offered without any support from the trial record.  The documents cited in support of this finding were not introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding. In addition, the third party statements that Plaintiffs cite constitute inadmissible hearsay.

The United States opposes this proposed finding of fact. Plaintiffs' arguments related to the alleged funnel effect cannot prove a takings claim because the funnel effect condition no longer exists.  Plaintiffs' expert, Dr. Kemp, explained that, in analyzing his alleged funnel effect on storm surge in New Orleans, Reach 1 of the MRGO was critical because it connected Lake Pontchartrain and Lake Borgne hydrologically and therefore allowed surge from both lakes to theoretically enter the Industrial Canal.  See Tr. at 251:12-19 (Kemp).  But Dr. Kemp conceded that, with the construction of the surge barrier in 2011, that hydrological connectivity has been cut off.  See id. at 252:15 (Kemp); id. at 253:3 (Kemp) (opining that the surge barrier "would make the Dutch proud").  In other words, Plaintiffs admit that the funnel effect on which their claim is premised has been redressed and is no longer a factor in flooding within the hurricane protection system.

This proposed finding of fact is also one of several reasons why the Court should reject Plaintiffs' claims.  To the extent the MRGO acts as a "funnel," that has been the case since the construction of the MRGO, or immediately thereafter.  Plaintiffs failed to present any technical or scientific evidence explaining how the condition which they allege is the cause of flooding on their properties could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

196. The United States opposes this proposed finding of fact. Dr. Suhayda conceded that this calculation constituted a previously undisclosed expert opinion. See Tr. at 723:4-10 (Suhayda). This testimony is inadmissible. U.S.' Mem. at 69 n.30.

The proposed finding of fact is also inaccurate, as Dr. Suhayda's calculation does not relate to the actual MRGO or speak to the MRGO's alleged role in causing flooding on Plaintiffs' properties. Dr. Suhayda's calculation is based on hypothetical dimensions of the MRGO, not particular measurements of the channel at or near any Plaintiff's property and incorporates hypothetical values for the hydraulic variables. See Suhayda Test. At 27 n.8. The calculation does not measure increased flooding on Plaintiffs' properties, but instead merely purports to state how much water a channel with the hypothetical dimensions Dr. Suhayda assumes might potentially carry. See Tr. at 722:23-25 (Suhayda) (describing footnote eight as a "conveyance calculation" which "doesn't talk about actual flooding"). The calculation does not demonstrate how and if water will leave the MRGO channel and migrate onto Plaintiffs' properties. See id. at 722:23-24 (Suhayda) ("[T]his doesn't talk about actual flooding."). Nor does the calculation provide any support for the conclusion that the MRGO has caused, or will cause, flooding on Plaintiffs' properties. See id. at 723:1-3 (Suhayda) (acknowledging that his calculation does not attempt to prove what flooding might be). See also id. at 1077:13-21 (Resio) (emphasizing that conveyance can increase without an increase in surge elevation); id. at 494:19-25 (Kemp) (agreeing that increased surge and conveyance does not necessarily mean increased flooding).

This proposed finding of fact is also one of several reasons why the Court should reject Plaintiffs' claims. To the extent the MRGO acts as a "funnel," that has been the case since the construction of the MRGO, or immediately thereafter. Plaintiffs failed to present any technical or scientific evidence explaining how the condition which they allege is the cause of flooding on their properties could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

197. The United States objects to this proposed finding which the trial record does not support. Apart from Dr. Britsch's trial testimony, all of the cited materials were not referenced or introduced at trial in this matter. All of the cited documents (except for Dr. Britsch's trial testimony) are not part of this trial record, and the Court should disregard these citations. In addition, the third party statements that Plaintiffs cite constitute inadmissible hearsay.

In addition, Plaintiffs' citation of Dr. Britsch's trial testimony is incomplete and misleading. In the transcript pages upon which this proposed finding of fact is based, Dr. Britsch was asked whether "a bit of rain or a bit of wind, everything else held equal" would "create some flooding in an area like this." Tr. at 982:16-18 (Britsch). Dr. Britsch answered "Certainly. In an area where you're living or that's slightly above or near sea level, slight [fluctuations] in the tide or due to winds or storms make a big difference in the amount of flooding in the land area." Id. at 982:19-23 (Britsch).

Dr. Britsch was then asked if it would "make a difference to that phenomenon whether or not there was a shipping channel in the area?" Tr. at 982:24-983:1 (Wilson). Dr. Britsch answered: "Obviously the shipping channel may contribute to the speed at which tides come in and out, but again, this area was tidal before. It experienced fluctuations due to across Lake Borgne storms and all the hydrologic influence due to all the land loss that occurred prior to MRGO." Id. at 983:2-7 (Britsch).

Finally, Plaintiffs' arguments related to the alleged funnel effect cannot prove a takings claim because the funnel effect condition no longer exists. Plaintiffs' expert, Dr. Kemp, explained that, in analyzing his alleged funnel effect on storm surge in New Orleans, Reach 1 of the MRGO was critical because it connected Lake Pontchartrain and Lake Borgne hydrologically and therefore allowed surge from both lakes to theoretically enter the Industrial Canal. See Tr. at 251:12-19 (Kemp). But Dr. Kemp conceded that, with the construction of the surge barrier in 2011, that hydrological connectivity has been cut off. See id. at 252:15 (Kemp); id. at 253:3 (Kemp) (opining that the surge barrier "would make the Dutch proud"). In other words, Plaintiffs admit that the funnel effect on which their claim is premised has been redressed and is no longer a factor in flooding within the hurricane protection system.

198. The United States objects that all but one of the citations offered in support of this finding – SPX.705 – were not referenced or introduced at trial in this matter. All of the cited documents (except for SPX.705) are not part of this trial record, and the Court should disregard these citations. In addition, all of these third-party statement represent inadmissible hearsay.

199. The United States objects to the proposed finding as irrelevant. The conclusions of the Bretschneider and Collins study, conducted before the construction of the hurricane protection system, do not relate to the elements of Plaintiffs' takings claim. Even if the MRGO contributed to an increase in surge elevation, if the final surge elevation does not surpass the height of the hurricane protection system, any increase in surge has no effect on flooding to Plaintiffs' properties. See id. at 494:19-25 (Kemp). Dr. Kemp admits that, even in situations where the combination of the MRGO and the protective levees might contribute to higher storm surge, if the levees are built to an appropriate height, that heightened surge does not translate necessarily into additional flooding; it is simply a factor for which levee designers need to account. See id. at 257:15-258:1 (Kemp).

200. The United States objects to the proposed finding as irrelevant. The conclusions of the Bretschneider and Collins study, conducted before the construction of the hurricane protection system, do not relate to the elements of Plaintiffs' takings claim. Even if the MRGO contributed to an increase in surge elevation, if the final surge elevation does not surpass the height of the hurricane protection system, any increase in surge has no effect on flooding to Plaintiffs' properties. See id. at 494:19-25 (Kemp). Dr. Kemp admits that, even in situations where the combination of the MRGO and the protective levees might contribute to higher storm surge, if the levees are built to an appropriate height, that

heightened surge does not translate necessarily into additional flooding; it is simply a factor for which levee designers need to account.  See id. at 257:15-258:1 (Kemp).

201.   The United States objects that all but one of the citations offered in support of this finding – Dr. Kemp's trial testimony – were not referenced or introduced at trial in this matter. All of the cited materials (except for Dr. Kemp's trial testimony) are not part of this trial record, and the Court should disregard these citations.  Plaintiffs did not present any evidence establishing the alleged knowledge at trial, but even if true, this alleged knowledge is irrelevant to the Court's analysis.  See Cary v. United States, 552 F.3d 1373 (Fed. Cir. 2009).

202.   The United States objects to the proposed finding as irrelevant.  The Corps of Engineers' policy choices are not germane to the legal elements Plaintiffs must prove to establish a taking.  The legal framework in this case requires that the Court presume the government action about which Plaintiffs' complain was authorized.  See Del-Rio Drilling Programs Inc. v. United States, 146 F.3d 1358, 1362 (Fed. Cir. 1998) ("A compensable taking arises only if the government action in question is authorized.").

203.   The United States objects to the proposed finding as irrelevant.  The Corps of Engineers' policy choices are not germane to the legal elements Plaintiffs must prove to establish a taking.  The legal framework in this case requires that the Court presume the government action about which Plaintiffs' complain was authorized.  See Del-Rio Drilling Programs Inc. v. United States, 146 F.3d 1358, 1362 (Fed. Cir. 1998) ("A compensable taking arises only if the government action in question is authorized.").

204.   The United States objects to the proposed finding as irrelevant.  The Corps of Engineers' policy choices are not germane to the legal elements Plaintiffs must prove to establish a taking.  The legal framework in this case requires that the Court presume the government action about which Plaintiffs' complain was authorized.  See Del-Rio Drilling Programs Inc. v. United States, 146 F.3d 1358, 1362 (Fed. Cir. 1998) ("A compensable taking arises only if the government action in question is authorized.").

## G.   MRGO's Promotion of Levee-Destroying Waves

205.   The United States objects to the proposed finding which the trial record does not support. The evidence proved conclusively that no Plaintiff's property within the hurricane protection system flooded on any occasion other than Hurricane Katrina.  See U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding). In addition, the citations offered in support of this proposed finding are not part of the trial record in this case, and the Court should disregard them.

206.   The United States objects to the proposed finding which the trial record does not support. Plaintiffs have conceded that their wave analysis is flawed and suffers from methodological deficiencies.  In addition, the proposed finding is irrelevant to the elements Plaintiffs must prove to sustain a taking claim.  "Taking a calculated risk, or

even increasing a risk of a detrimental result, does not equate to making the detrimental result direct, natural, or probable." <u>Cary</u>, 552 F.3d at 1378.

207.    The United States objects that all but one of the citations offered in support of this finding – Dr. Kemp's trial testimony – were not referenced or introduced at trial in this matter. The cited documents (except for Dr. Kemp's trial testimony) are not part of this trial record, and the Court should disregard these citations. In addition, the third-party statements referenced constitute inadmissible hearsay which the Court may not consider. The United States agrees that under some circumstances, "wave height increases with water depth and 'fetch' – the expanse of water over which wind blows to generate waves."

208.    The United States agrees that the construction and subsequent erosion of the MRGO between 1958-2001 converted approximately 7,087 acres of land to open water. See Britsch Test. at 20:13-15. The United States objects to the vague and misleading assertion that "large waves" can propagate in the footprint of the MRGO. Plaintiffs lead wave modeler in <u>Robinson</u>, Dr. Vriling, admitted that the wave modeling methodology plaintiffs used in that case, and on which Plaintiffs rely here, overestimated the growth of waves across the MRGO channel. <u>See</u> U.S.' Mem. at 51-56.

209.    The United States agrees that wave wash caused the MRGO to expand. Britsch Test. at 20:13-15. The trial record, however, does not support the assertion that the channel's fetch "increased dramatically." Plaintiffs lead wave modeler in <u>Robinson</u>, Dr. Vriling, admitted that the wave modeling methodology plaintiffs used in that case, and on which Plaintiffs rely here, overestimated the growth of waves across the MRGO channel. <u>See</u> U.S.' Mem. at 51-56. And Dr. Britsch explained that the measurements underlying the "2000 foot width" referenced in Dr. Kemp's testimony are erroneously derived by tacking onto the actual erosion measurements the measured width of waterbodies that pre-date the construction of the MRGO. <u>See</u> Tr. at 974:12-978:3 (Britsch). In addition, <u>Robinson</u> JX-195 demonstrates conclusively that the vast majority of the MRGO channel widening occurred well before 1985. <u>See</u> <u>Robinson</u> JX-195 at pdf. 132-35. Plaintiffs failed to present technical or scientific evidence explaining how the condition which they allege is the cause of flooding on their properties could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

        In addition, the United States objects that all but one of the citations offered in support of this finding – Dr. Kemp's trial testimony – were not referenced or introduced at trial in this matter. All of the cited documents (except for Dr. Kemp's trial testimony) are not part of this trial record, and the Court should disregard these citations.

210.    The United States objects that this proposed finding is offered without any support from the trial record. The citations offered in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the

Court should disregard this proposed finding.  This proposed finding is also entirely irrelevant to the  Plaintiffs' Fifth Amendment takings claims.

211.   The United States objects that this proposed finding is offered without any the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.

The United States further objects that the trial evidence did not demonstrate that the MRGO "destroyed the defensive line of vegetation that once stood between the channel and the levee."  Instead the evidence showed that most of the land loss in the area between the Reach 2 levee and the MRGO took place before the construction of the MRGO, and was primarily the result of a 1947 hurricane.  See SPX.704 at 106; Britsch Test. at 12 (DX 208, Figure 2); 29:5-7 ("[L]arge areas of land loss north of the 40 Arpent Levee near Bayou Bienvenue were attributed to erosion during a 1947 hurricane.").

Furthermore, the United States agrees with Plaintiffs that any increase in salinity resulting from the MRGO – even if shown to be causally-related to increased flooding on Plaintiffs' properties – occurred decades ago.  Like Plaintiffs' argument about the increased conveyance capability posed by the MRGO, and like Plaintiffs' argument about the impact on wetlands, Plaintiffs failed to present technical or scientific evidence explaining how an increase of salinity could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

### H.   MRGO's Promotion of Lateral Displacement

212.   The United States objects that all but one of the citations offered in support of this finding – Dr. Britsch's trial testimony – were not referenced or introduced at trial in this matter. The cited materials (except for Dr. Britch's trial testimony) are not part of this trial record, and the Court should disregard these citations.  In addition, the out-of-court testimonial statement that Plaintiffs reference constitutes inadmissible hearsay which the Court may not consider.  The United States agrees that the general rate of natural subsidence in the St. Bernard Delta is approximately 5 to 6 millimeters per year.

213.   The United States objects that this proposed finding of fact is irrelevant and misleading. As Dr. Britsch testified at trial, the subsidence rate in the St. Bernard Delta is also higher than many parts of Southeastern Louisiana, including the north shore of Lake Ponchartrain, and the coast in the area of Grand Isle.  See Tr. at 992:12-17 (Britsch).  Dr. Britsch also explained that subsidence rates are relevant to flooding "relative to the elevation of the land features you're talking about, or the property."  Id. at 992:19-21. "Right on the edge of the delta . . . .with water a stone's throw away," "small changes in relative sea levels have an impact."  Id. at 993:2-4 (Britsch).

214.   The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  The statements offered also represent inadmissible hearsay which the Court may not consider.

215.   The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  Further, the testimonial statement that Plaintiffs reference constitutes inadmissible hearsay which the Court may not consider.  Finally, the United States also objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

216.   The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  Further, the testimonial statements that Plaintiffs reference constitutes inadmissible hearsay which the Court may not consider.  Finally, the United States also objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

217.   The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  Further, the testimonial statements that Plaintiffs reference constitutes inadmissible hearsay which the Court may not consider.  Finally, the United States also objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims

218.   The United States objects that all but one of the citations offered in support of this finding – Mr. Estopinal's trial testimony – were not referenced or introduced at trial in this matter.  All of the cited materials (except for Mr. Estopinal's trial testimony) are not part of this trial record, and the Court should disregard these citations.  Further, Mr. Estopinal's Fed. R. Evid 701 lay testimony does not support the proposed scientific conclusion that "dredging of the MRGO along the channel's southern bank exacerbated lateral displacement."  In addition, the testimonial statement that Plaintiffs reference constitutes inadmissible hearsay which the Court may not consider.  The United States also objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

219.   The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  Further, the testimonial statements that

Plaintiffs reference constitute inadmissible hearsay which the Court may not consider. The United States also objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

220. The United States objects that this proposed finding is offered without any support from the trial record. The citations offered in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. Further, the third-party statements that Plaintiffs reference constitute inadmissible hearsay which the Court may not consider. The United States also objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

221. The United States objects that this proposed finding is offered without any support from the trial record. The citations offered in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. Plaintiffs did not present any evidence establishing the alleged knowledge at trial, but even if true, this alleged knowledge is irrelevant to the Court's analysis. See Cary v. United States, 552 F.3d 1373 (Fed. Cir. 2009).

222. The United States objects that this proposed finding is offered without any support from the trial record. The citations offered in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. Further, the testimonial statements that Plaintiffs reference constitute inadmissible hearsay which the Court may not consider. The United States also objects that this proposed finding of fact is not relevant to any element of Plaintiffs' Fifth Amendment takings claims.

## I.   The Flood Protection System (FPS)

223. The United States agrees that the pre-Hurricane Katrina federal levee system could not fully protect Greater New Orleans from flooding given certain storm conditions. Residual risk exists with all protection systems. Regardless of theoretical risks, the trial record conclusively establishes that no Plaintiff's property within the hurricane protection system flooded on any occasion other than Hurricane Katrina. See U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

224. The United States objects that this proposed finding of fact, concerning the Corps' "representations" regarding the adequacy of the pre-Hurricane Katrina federal levee system, is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.

225. The United States agrees with the statements asserted, but objects that this proposed finding of fact is misleading and irrelevant to any element of Plaintiffs' Fifth Amendment takings claim. The trial record conclusively establishes that no Plaintiff's property within the hurricane protection system flooded on any occasion other than Hurricane Katrina.

See U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

226.   The United States objects that all but one of the citations offered in support of this finding – PX 169 – were not referenced or introduced at trial in this matter.  All of the cited materials (except for PX 169) are not part of this trial record, and the Court should disregard these citations.  In addition, the United States objects that these proposed findings of fact, which concern the Corps' evaluation of the pre-Hurricane Katrina levee system, are irrelevant to any element of Plaintiffs' Fifth Amendment takings claim.  The trial record conclusively establishes that no Plaintiff's property within the hurricane protection system flooded on any occasion other than Hurricane Katrina.  See U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

227.   The United States objects that all but one of the citations offered in support of this finding – SPX.169 – were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX.169) are not part of this trial record, and the Court should disregard these citations. In addition, the third-party statements that Plaintiffs reference constitute inadmissible hearsay which the Court may not consider.  Finally, the United States objects that this proposed finding of fact is misleading and irrelevant to any element of Plaintiffs' Fifth Amendment takings claim.  The trial record conclusively establishes that no Plaintiff's property within the hurricane protection system flooded on any occasion other than Hurricane Katrina.  See U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

228.   The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  The United States also objects that this proposed finding of fact is misleading, and mischaracterizes the sources cited, which do not reflect the asserted "Government admission."

In addition, Plaintiffs' proposed finding provides one of several reasons why the Court should reject Plaintiffs' claims.  As discussed in the United States' Post-Trial Brief, the proposition that the flooding that occurred during Hurricane Katrina was due to inadequate levees supports the United States' position, not Plaintiffs' position.  See U.S.' Mem. at 65.

### 1.  FPS Design Flaws

229.   Agreed.  The citations offered in support of this finding, however, were not referenced or introduced at trial in this matter.  For the reasons stated in the United States' Motion to

Exclude and the Joint Exhibit List, these materials are not part of this trial record, and the Court should disregard this proposed finding.

230.    The United States objects to the proposed finding, which is irrelevant to Plaintiffs' Fifth Amendment takings claim.

231.    The United States objects that all but one of the citations offered in support of this finding – SPX.169 – were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX.169) are not part of this trial record, and the Court should disregard these citations. The United States also objects because the proposed finding is irrelevant to Plaintiffs' Fifth Amendment takings claim.

232.    The United States objects to the proposed finding.  The finding is irrelevant to Plaintiffs' Fifth Amendment takings claim.

233.    The United States objects that this proposed finding, as it bears on the Corps' alleged failure to improve the design of the pre-Hurricane Katrina levee system in response to new information about storms, is irrelevant to any element of Plaintiffs' Fifth Amendment takings claim.  In addition, the proffered citation to Dr. Kemp's testimony does not support the proposition advanced.

**2.  Standard Project Hurricane**

234.    Agreed.  The United States objects that all but two of the citations offered in support of this finding – Dr. Suhayda's trial testimony and SPX 169 – were not referenced or introduced at trial in this matter.  All of the cited materials (except for Dr. Suhayda's trial testimony and SPX.169) are not part of this trial record, and the Court should disregard these citations.

235.    The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.

236.    The United States objects that all but two of the citations offered in support of this finding – Dr. Suhayda's trial testimony and Dr. Resio's trial testimony– were not referenced or introduced at trial in this matter.  All of the cited materials (except for Dr. Suhayda's trial testimony and Dr. Resio's trial testimony) are not part of this trial record, and the Court should disregard these citations.  The United States also objects that the Corps' public statements regarding the adequacy of the pre-Katrina levee system are irrelevant to any element of Plaintiffs' Fifth Amendment takings claim.

237.    The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  The finding is also irrelevant to the Plaintiffs' Fifth Amendment takings claim.

42

238.    The United States objects that all but one of the citations offered in support of this finding – SPX.169– were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX.169) are not part of this trial record, and the Court should disregard these citations.   The finding is also irrelevant to the Plaintiffs' Fifth Amendment takings claim.

239.    The United States objects that all but two of the citations offered in support of this finding – Dr. Suhayda's trial testimony and SPX.169 – were not referenced or introduced at trial in this matter.  All of the cited materials (except for Dr. Suhayda's trial testimony and SPX.169) are not part of this trial record, and the Court should disregard these citations.  The finding is also irrelevant to the Plaintiffs' Fifth Amendment takings claim.

240.    The United States agrees that Plaintiffs have quoted Dr. Resio's White Paper correctly.  The finding, however, is irrelevant to the Plaintiffs' Fifth Amendment takings claim.

241.    The United States objects to the proposed finding which is irrelevant to Plaintiffs' Fifth Amendment takings claim.

242.    The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  In addition, these materials constitute inadmissible hearsay which the Court may not consider.

243.    The United States agrees with the fact asserted in the first sentence of paragraph 243.  With respect to the remainder of the paragraph, the United States objects because the citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  The finding is also irrelevant to Plaintiffs' Fifth Amendment takings claim.  The trial record conclusively establishes that no Plaintiff's property within the hurricane protection system flooded on any occasion before Hurricane Katrina.  See U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

244.    The United States objects that all but one of the citations offered in support of this finding – SPX.169 – were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX.169) are not part of this trial record, and the Court should disregard these citations.  The finding is also irrelevant to Plaintiffs' Fifth Amendment takings claim.  The trial record conclusively establishes that no Plaintiff's property within the hurricane protection system flooded on any occasion before Hurricane Katrina.  See U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

245.    The United States objects that all but one of the citations offered in support of this finding – SPX.169 – were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX.169) are not part of this trial record, and the Court should disregard these citations.  The finding is also irrelevant to Plaintiffs' Fifth Amendment

takings claim.  The trial record conclusively establishes that no Plaintiff's property within the hurricane protection system flooded on any occasion before Hurricane Katrina.  <u>See</u> U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

246.   The United States objects that all but one of the citations offered in support of this finding – SPX.169 – were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX.169) are not part of this trial record, and the Court should disregard these citations.  The finding is also irrelevant to Plaintiffs' Fifth Amendment takings claim.  The trial record conclusively establishes that no Plaintiff's property within the hurricane protection system flooded on any occasion before Hurricane Katrina.  <u>See</u> U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

247.   The United States objects that all but one of the citations offered in support of this finding – SPX.169 – were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX.169) are not part of this trial record, and the Court should disregard these citations.  The finding is also irrelevant to Plaintiffs' Fifth Amendment takings claim.  The trial record conclusively establishes that no Plaintiff's property within the hurricane protection system flooded on any occasion before Hurricane Katrina.  <u>See</u> U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

248.   The United States objects that all but one of the citations offered in support of this finding – SPX.169 – were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX.169) are not part of this trial record, and the Court should disregard these citations.  The finding is also irrelevant to Plaintiffs' Fifth Amendment takings claim.  The trial record conclusively establishes that no Plaintiff's property within the hurricane protection system flooded on any occasion before Hurricane Katrina.  <u>See</u> U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

249.   The United States objects that all but one of the citations offered in support of this finding – SPX.169 – were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX.169) are not part of this trial record, and the Court should disregard these citations.  The finding is also irrelevant to Plaintiffs' Fifth Amendment takings claim.  The trial record conclusively establishes that no Plaintiff's property within the hurricane protection system flooded on any occasion before Hurricane Katrina.  <u>See</u> U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

250.   The United States agrees that the SPH turned out to be a stronger storm than originally modeled.  The Unites States objects to Plaintiffs' reliance upon documents that are not part of the trial record in this case, and asks that the Court disregard such citations.  In addition, the proposed finding is irrelevant to Plaintiffs' Fifth Amendment takings claim.

### 3.   Use of the NGVD Vertical Datum

251.   Agreed.  The proposed finding, however, is irrelevant to Plaintiffs' Fifth Amendment takings claim.

252.   The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  The proposed finding is also irrelevant to Plaintiffs' Fifth Amendment takings claim.

253.   The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  The proposed finding is also irrelevant to Plaintiffs' Fifth Amendment takings claim.

254.   The United States objects that all but two of the citations offered in support of this finding – SPX.169 and Dr. Suhayda's trial testimony – were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX.169 and Dr. Suhayda's trial testimony) are not part of this trial record, and the Court should disregard these citations.  The proposed finding is also irrelevant to Plaintiffs' Fifth Amendment takings claim.

255.   The United States objects that all but two of the citations offered in support of this finding – SPX.169 and Dr. Suhayda's trial testimony – were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX.169 and Dr. Suhayda's trial testimony) are not part of this trial record, and the Court should disregard these citations.  In addition, the United States objects that this proposed finding of fact, which concerns the Corps' alleged knowledge of and policies regarding design deficiencies in the pre-Hurricane Katrina federal levee system, is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.

256.   The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  In addition, the United States objects that this proposed finding of fact, which concerns the Corps' alleged policies regarding design deficiencies in the pre-Hurricane Katrina federal levee system, is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.

257.   The United States objects that this proposed finding is offered without any support from the trial record.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  In addition, the United States objects that this proposed finding of fact, which concerns the Corps' alleged policies regarding design deficiencies in the pre-Hurricane Katrina federal levee system, is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.

258.    The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  For the reasons stated in the United States' Motion to Exclude and the Joint Exhibit List, these materials are not part of this trial record, and the Court should disregard this proposed finding.  In addition, the United States objects that this proposed finding of fact is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.  In addition, the United States objects that this proposed finding of fact, which concerns the Corps' alleged policies regarding design deficiencies in the pre-Hurricane Katrina federal levee system, is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.

259.    The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  In addition, the proposed finding is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.

### 4.    Failure to Account for Subsidence and Degradation of the Wetlands

260.    The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding. In addition, the proposed finding is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.

261.    The United States objects that all but two of the citations offered in support of this finding – SPX.169 and Dr. Suhayda's trial testimony – were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX.169 and Dr. Suhayda's trial testimony) are not part of this trial record, and the Court should disregard these citations.   The proposed finding is also irrelevant to Plaintiffs' Fifth Amendment takings claim.

262.    The United States objects that all but two of the citations offered in support of this finding – SPX.169 and Dr. Suhayda's trial testimony – were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX 169 and Dr. Suhayda's trial testimony) are not part of this trial record, and the Court should disregard these citations.

Furthermore, the evidence at trial contradicts the assertion that the MRGO "destr[oyed] the wetland buffer around Lake Borgne."  To the contrary, un-rebutted, peer-reviewed study of land loss in the St. Bernard Delta demonstrates that the MRGO was responsible for only a fraction of the land loss in the vicinity of Lake Borgne.  See Britch Test. at 20:13-23 (citing 2001 USACE Land Loss Study).  Indeed, un-rebutted evidence demonstrates that most of the land loss in the immediate vicinity of the Reach 2 Levee took place before the MRGO's construction, much of it during a 1947 hurricane.  See id. at 12 (citing DX 208 Fig. 2); id. at 15:5-17:12.

263. The United States agrees that subsidence is a feature for which levee designers must account.

## 5. Construction of FPS from Highly Erodible Materials

264. The United States objects that this proposed finding is offered without any support from the trial record. The citations offered in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. The proposed finding is also irrelevant to Plaintiffs' Fifth Amendment takings claim.

265. The United States objects that this proposed finding is offered without any support from the trial record. The citations offered in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. The proposed finding is also irrelevant to Plaintiffs' Fifth Amendment takings claim.

266. The United States objects that this proposed finding is offered without any support from the trial record. The citations offered in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. The cited report also represents inadmissible hearsay which the Court may not consider. Finally, the proposed finding is irrelevant to Plaintiffs' Fifth Amendment takings claim.

267. The United States objects that this proposed finding is offered without any support from the trial record. The citations offered in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. The cited material also represents inadmissible hearsay which the Court may not consider. Finally, the proposed finding is irrelevant to Plaintiffs' Fifth Amendment takings claim.

268. The United States agrees that the original earthen levee that was built around St. Bernard Parish did include sand. The United States otherwise objects to the proposed assertions of fact in paragraph 268, and objects that Plaintiffs rely for these assertions upon documents and testimony not part of the trial record in this case. Finally, the proposed finding is irrelevant to Plaintiffs' Fifth Amendment takings claim.

## 6. FPS Maintenance

269. The United States objects that this proposed finding is offered without any support from the trial record. The citations offered in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. The cited material also represents inadmissible hearsay which the Court may not consider. Finally, the proposed finding is irrelevant to Plaintiffs' Fifth Amendment takings claim.

270. The United States objects to the first sentence of this proposed finding because it is offered without citation. With respect to the remainder of the proposed finding, the

United States objects that all but two of the citations offered in support of this finding – Dr. Suhayda's trial testimony and SPX.4 – were not referenced or introduced at trial in this matter.  All of the cited materials (except for Dr. Suhayda's trial testimony and SPX 4) are not part of this trial record, and the Court should disregard these citations.  The United States notes that the Corps of Engineers' maintenance of the levee system is irrelevant to Plaintiffs' Fifth Amendment takings claim.

271.   The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.   The cited material also represents inadmissible hearsay which the Court may not consider.  Finally, the proposed finding is irrelevant to Plaintiffs' Fifth Amendment takings claim.

272.   Agreed.  The proposed finding, however, is irrelevant to Plaintiffs' Fifth Amendment takings claim.

### 7.  Government's Knowledge of Actual pre-Katrina Level of Flood Protection

273.   The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  In addition, the proposed finding is irrelevant to Plaintiffs' Fifth Amendment takings claim.

274.   The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  These materials are not part of this trial record, and the Court should disregard this proposed finding.  In addition, the proposed finding is irrelevant to Plaintiffs' Fifth Amendment takings claim.

275.   The United States objects to the proposed finding of fact, which is irrelevant to Plaintiffs' Fifth Amendment takings claim.  In particular, to the extent the proposed finding suggests otherwise, there is no evidence in the record, and no evidence exists, that the United States ever collaborated with the LSU Hurricane Center because of its affiliation with Dr. Kemp.

276.   The United States objects that all but one of the citations offered in support of this finding – Dr. Kemp's trial testimony – were not referenced or introduced at trial in this matter.  All of the cited materials (except for Dr. Kemp's trial testimony) are not part of this trial record, and the Court should disregard these citations.  In addition, the proposed finding is irrelevant to Plaintiffs' Fifth Amendment takings claim.

277.   The United States objects that all but one of the citations offered in support of this finding – SPX.169 – were not referenced or introduced at trial in this matter.  All of the cited materials (except for SPX.169) are not part of this trial record, and the Court should disregard these citations.  In addition, the proposed finding is irrelevant to Plaintiffs' Fifth Amendment takings claim.

278. The United States objects that all but two of the citations offered in support of this finding – SPX.169 and Park's trial testimony – were not referenced or introduced at trial in this matter. All of the cited materials (except for SPX.169 and Park's trial testimony) are not part of this trial record, and the Court should disregard these citations. In addition, virtually all of the referenced material represents third-party out-of-court statements constituting inadmissible hearsay which they Court may not consider. Finally, the proposed finding is irrelevant to Plaintiffs' Fifth Amendment takings claim.

279. The United States agrees that Dr. Suhayda used information prepared in recent years to conclude that the levees in place at the time of Katrina provided somewhat less than 20-year protection. As discussed in the United States' Post-Trial Brief, the proposition that the flooding that occurred during Hurricane Katrina was due to inadequate levees supports the United States' position, not Plaintiffs' position. See U.S.' Mem. at 65.

280. The United States agrees that Dr. Resio testified that the "pre-Katrina hurricane protection system provided much less than 200-year protection," and that the level of protection was "in the range" of 50 or 60s years." Tr. at 1034:10-19 (Resio). As discussed in the United States' Post-Trial Brief, the proposition that the flooding that occurred during Hurricane Katrina was due to inadequate levees supports the United States' position, not Plaintiffs' position. See U.S.' Mem. at 65.

## J.    MRGO and Katrina Flooding

281. The United States agrees with the facts asserted in paragraph 281, but objects that Plaintiffs refer to a document that is not part of the trial record in this case, and asks that the Court disregard that citation.

282. The United States agrees that the lockmaster recorded the levels to which Dr. Kemp testified. Hurricane Katrina was a massive of storm of historic proportions and raised water levels throughout the entire Gulf of Mexico.

283. The United States agrees that federal hurricane protection levees breached during Hurricane Katrina, and that breaches of the Reach 1 and Reach 2 portions of the levees were the primary source of water that flooded the leveed portions of St. Bernard Polder. The United States objects to Plaintiffs' confusing reference to the opinions of "experts on both sides," which apparently refers to experts on "both sides" of the Robinson v. United States matter. The United States also objects to Plaintiffs' citation to documents and evidence that are not part of the trial record in this case. In addition, the testimonial statements Plaintiffs cite constitute inadmissible hearsay which the Court may not consider.

284. Agreed.

285. The United States objects that this proposed finding is offered without any support from the trial record. The citations offered in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding.

286. The United States agrees that there was significant flooding following the overtopping of the Forty Arpent Levee, but objects that this proposed finding is based upon documents that are not part of the trial record in this case. The documents Plaintiffs cite in support of the proposed finding constitute inadmissible hearsay which the Court may not consider.

287. The United States objects that this proposed finding is offered without any support from the trial record. The citations offered in support of this finding were not referenced or introduced at trial in this matter. These materials are not part of this trial record, and the Court should disregard this proposed finding. Flooding through breaches in the IHNC is also irrelevant to the Plaintiffs' Fifth Amendment takings claim. Plaintiffs acknowledge that the breach in the IHNC would have occurred with or without the MRGO. See Tr. at 582:15-20 (Kemp).

288. The United States objects to Plaintiffs' vague and misleading assertion that "the St. Bernard Polder is situated on some of the highest land in the area," which the citation supplied in paragraph 288 does not support. Dr. Kemp acknowledged that the small portion of the St. Bernard Polder that he mapped -- the Lower Ninth Ward and the Chalmette area of St. Bernard Parish -- has many areas with elevations several feet below sea level, see Tr. at 220:19-24 (Kemp); Kemp Test. at 37, Fig. 2.8. Notably, neither Dr. Kemp's testimony nor his expert report contains any consideration of land elevations of any other region within St. Bernard Parish or the Lower Ninth Ward, see Tr. at 225:7-20 (Kemp); id. at 227:5-14 (Kemp). In fact, Dr. Kemp has neither mapped nor considered natural elevations of any areas east of Paris Road, where most of Plaintiffs' properties are located. See id. at 223:21-224:15 (Kemp).

Uncontradicted evidence introduced at trial demonstrates that the areas in St. Bernard Parish and the Lower Ninth Ward immediately adjacent to the 40 Arpent Levee, where flooding was the most severe during Hurricane Katrina, sit at elevations close to five feet below sea level. See Britsch Test. at 26:12-27:11; DX 208, Fig. 13.

### 1. Plaintiffs' Model

289. Agreed.

290. Agreed.

291. The United States objects to the proposed finding as incomplete. The SWAN wave model on which Plaintiffs relied in Robinson was not the standard (default) version of the source term combination suggested for use in the SWAN code. See Resio Test. at 22; Tr. at 420:20-21 (Kemp) (explaining that the plaintiffs in Robinson used a version of "the same [SWAN] model with a different source term"). Rather, it was a modified version of the SWAN model that Andre J. van der Westhuysen, a coastal scientist at the Delft University of Technology in the Netherlands, developed. See Resio Test. at 22-23. But Dr. van der Westhuysen himself explicitly cautions against using this modified version of the model for short-fetch scenarios, like the MRGO. See id. at 23 (citing Robinson DX-1104, van der Westhuysen et al., *Nonlinear Saturation-Based Whitecapping Dissipation*

*in SWAN for Deep & Shallow Water*, Coastal Eng'g 54 (2007), pp. 151-170, at 167 ("An exception to these encouraging results is found over very short dimensionless fetches . . . where the total spectral energy is significantly overestimated.")

292.   Agreed.

293.   The United States acknowledges that the parties models attempted to represent hydrodynamic phenomena under different scenarios, and that Dr. Kemp opined that plaintiffs scenario 1 and 2C were the most pertinent to his personal analysis.

294.   The United States acknowledges that Dr. Kemp testified consistent with the statements in the proposed finding.  The expert reports cited in the proposed finding represent inadmissible hearsay upon which the United States may not rely.

295.   The United States acknowledges that Dr. Kemp testified consistent with the statements in the proposed finding.  Dr. Kemp's opinion related to the relationship between the MRGO and the Chalmette levees, however, is irrelevant to Plaintiffs' takings claim.  The levees have been replaced and the conditions Dr. Kemp studied no longer exist.

296.   The record does not support the proposed finding.  The methodology Plaintiffs used to study levee runup and overtopping are not peer reviewed and have "no documented successful applications to the problem of interest."  Resio Test. at 23 (quoting DX-193, Ebersole, et al., *Discussion of "Simulated Wave-Induced Erosion of the Miss. River-Gulf Outlet Levees During Hurricane Katrina" by R. Storesund, R.G. Bea and Y. Huang; Journal of Waterway, Port, Coastal, and Ocean Eng'g, Vol. 136, No. 3, May/June 2010, pp. 177-189* at 1 (publication forthcoming)).  Dr. Resio emphasized that he was unaware of a single case other than the plaintiffs' analysis prepared for litigation in <u>Robinson</u>, "where a coastal engineer has used the methodology upon which Plaintiffs rely to predict run-up and overtopping on a levee." Resio Test. at 24.

297.   The record does not support the proposed finding.  The methodology Plaintiffs used to study levee runup and overtopping are not peer reviewed and have "no documented successful applications to the problem of interest."  Resio Test. at 23 (quoting DX-193, Ebersole, et al., *Discussion of "Simulated Wave-Induced Erosion of the Miss. River-Gulf Outlet Levees During Hurricane Katrina" by R. Storesund, R.G. Bea and Y. Huang; Journal of Waterway, Port, Coastal, and Ocean Eng'g, Vol. 136, No. 3, May/June 2010, pp. 177-189* at 1 (publication forthcoming)).  Dr. Resio emphasized that he was unaware of a single case other than the plaintiffs' analysis prepared for litigation in <u>Robinson</u>, "where a coastal engineer has used the methodology upon which Plaintiffs rely to predict run-up and overtopping on a levee." Resio Test. at 24.

298.   The United States objects to the proposed finding which the trial record does not support and which is irrelevant to Plaintiffs' Fifth Amendment takings claim.  This argument cannot prove a takings claim because the funnel effect no longer exists.  Plaintiffs' expert, Dr. Kemp, explained that, in analyzing his alleged funnel effect on storm surge in New Orleans, Reach 1 of the MRGO was critical because it connected Lake Pontchartrain and Lake Borgne hydrologically and therefore allowed surge from both

lakes to theoretically enter the Industrial Canal.  See Tr. at 251:12-19 (Kemp).  But Dr. Kemp conceded that, with the construction of the surge barrier in 2011, that hydrological connectivity has been cut off.  See id. at 252:15 (Kemp); id. at 253:3 (Kemp) (opining that the surge barrier "would make the Dutch proud").

In addition, the expert reports cited in the proposed finding represent inadmissible hearsay upon which the United States may not rely.

299.   The United States objects to the proposed finding which the trial record does not support and which is irrelevant to Plaintiffs' Fifth Amendment takings claim.  Dr. Kemp admitted that the plaintiffs' experts in Robinson concluded that the breach in the IHNC would have occurred with or without the MRGO.  See id. at 582:15-20 (Kemp).

300.   The United States acknowledges that Dr. Kemp offered testimony consistent with the proposed finding, but the trial record does not support the finding.  In addition, the expert reports cited in the proposed finding represent inadmissible hearsay.

301.   The record does not support the proposed finding.  The methodology Plaintiffs used to study levee runup and overtopping are not peer reviewed and have "no documented successful applications to the problem of interest."  Resio Test. at 23 (quoting DX-193, Ebersole, et al., *Discussion of "Simulated Wave-Induced Erosion of the Miss. River-Gulf Outlet Levees During Hurricane Katrina" by R. Storesund, R.G. Bea and Y. Huang; Journal of Waterway, Port, Coastal, and Ocean Eng'g, Vol. 136, No. 3, May/June 2010, pp. 177-189* at 1 (publication forthcoming)).  Dr. Resio emphasized that he was unaware of a single case other than the plaintiffs' analysis prepared for litigation in Robinson, "where a coastal engineer has used the methodology upon which Plaintiffs rely to predict run-up and overtopping on a levee."  Resio Test. at 24.

Further, the figure cited in the proposed finding represents the overtopping rates the plaintiffs' experts in Robinson predicted at one point along the IHNC; the figure does not represent overtopping rates at any other point in the St. Bernard Polder.  The figure does not, for example, provide any insight with respect to the MRGO's impact on water levels along any point of the Reach 2 of the MRGO.  And as discussed above, because the United States has installed a surge barrier that prevents storm surge from entering Reach 1, the figure does not provide any insight as to what water levels would be expected at this precise location along the IHNC in the future.  See id. at 252:11-15 (Kemp) (acknowledging that the hydrological connectivity between Lake Borgne and Reach 1 has been severed).  Most important, Dr. Kemp's choice of this particular reference point along the IHNC is meaningless with respect to the Court's causation inquiry during Hurricane Katrina.  Dr. Kemp admitted that the plaintiffs' experts in Robinson concluded that the breach in the IHNC would have occurred with or without the MRGO.  See id. at 582:15-20 (Kemp).  In sum, Plaintiffs admit that the breaching of the IHNC floodwall, and the corresponding flooding of the Lower Ninth Ward during Hurricane Katrina, would have occurred even if the MRGO had never been built.

302.   The record does not support the proposed finding.  As discussed comprehensively in the
United States post-trial memorandum, Plaintiffs' wave modeling is flawed and unreliable.
See U.S.' Mem. at 51-56.

303.   The record does not support the proposed finding.  The methodology Plaintiffs used to
study levee runup and overtopping are not peer reviewed and have "no documented
successful applications to the problem of interest."  Resio Test. at 23 (quoting DX-193,
Ebersole, et al., *Discussion of "Simulated Wave-Induced Erosion of the Miss. River-Gulf
Outlet Levees During Hurricane Katrina" by R. Storesund, R.G. Bea and Y. Huang;
Journal of Waterway, Port, Coastal, and Ocean Eng'g, Vol. 136, No. 3, May/June 2010,
pp. 177-189* at 1 (publication forthcoming)). Dr. Resio emphasized that he was unaware
of a single case other than the plaintiffs' analysis prepared for litigation in Robinson,
"where a coastal engineer has used the methodology upon which Plaintiffs rely to predict
run-up and overtopping on a levee." Resio Test. at 24.

304.   The record does not support the proposed finding.  The methodology Plaintiffs used to
study levee runup and overtopping are not peer reviewed and have "no documented
successful applications to the problem of interest."  Resio Test. at 23 (quoting DX-193,
Ebersole, et al., *Discussion of "Simulated Wave-Induced Erosion of the Miss. River-Gulf
Outlet Levees During Hurricane Katrina" by R. Storesund, R.G. Bea and Y. Huang;
Journal of Waterway, Port, Coastal, and Ocean Eng'g, Vol. 136, No. 3, May/June 2010,
pp. 177-189* at 1 (publication forthcoming)). Dr. Resio emphasized that he was unaware
of a single case other than the plaintiffs' analysis prepared for litigation in Robinson,
"where a coastal engineer has used the methodology upon which Plaintiffs rely to predict
run-up and overtopping on a levee." Resio Test. at 24.

305.   The record does not support the proposed finding.  As discussed comprehensively in the
United States post-trial memorandum, Plaintiffs' wave modeling is flawed and unreliable.
See U.S.' Mem. at 51-56. In particular, the plaintiffs' lead wave modeler in Robinson,
Dr. Vriling, admitted that modeling choices did cause the plaintiffs' wave results to
overpredict wave strength in the MRGO channel during the peak period of Hurricane
Katrina.

306.   The record does not support the proposed finding.  The methodology Plaintiffs used to
study levee runup and overtopping are not peer reviewed and have "no documented
successful applications to the problem of interest."  Resio Test. at 23 (quoting DX-193,
Ebersole, et al., *Discussion of "Simulated Wave-Induced Erosion of the Miss. River-Gulf
Outlet Levees During Hurricane Katrina" by R. Storesund, R.G. Bea and Y. Huang;
Journal of Waterway, Port, Coastal, and Ocean Eng'g, Vol. 136, No. 3, May/June 2010,
pp. 177-189* at 1 (publication forthcoming)). Dr. Resio emphasized that he was unaware
of a single case other than the plaintiffs' analysis prepared for litigation in Robinson,
"where a coastal engineer has used the methodology upon which Plaintiffs rely to predict
run-up and overtopping on a levee." Resio Test. at 24.

307.   The record does not support the proposed finding.  The methodology Plaintiffs used to
study levee runup and overtopping are not peer reviewed and have "no documented

successful applications to the problem of interest." Resio Test. at 23 (quoting DX-193, Ebersole, et al., *Discussion of "Simulated Wave-Induced Erosion of the Miss. River-Gulf Outlet Levees During Hurricane Katrina" by R. Storesund, R.G. Bea and Y. Huang; Journal of Waterway, Port, Coastal, and Ocean Eng'g, Vol. 136, No. 3, May/June 2010, pp. 177-189* at 1 (publication forthcoming)). Dr. Resio emphasized that he was unaware of a single case other than the plaintiffs' analysis prepared for litigation in <u>Robinson</u>, "where a coastal engineer has used the methodology upon which Plaintiffs rely to predict run-up and overtopping on a levee." Resio Test. at 24.

308.   The trial record does not support the proposed finding. The methodology Plaintiffs used to study levee runup and overtopping are not peer reviewed and have "no documented successful applications to the problem of interest." Resio Test. at 23 (quoting DX-193, Ebersole, et al., *Discussion of "Simulated Wave-Induced Erosion of the Miss. River-Gulf Outlet Levees During Hurricane Katrina" by R. Storesund, R.G. Bea and Y. Huang; Journal of Waterway, Port, Coastal, and Ocean Eng'g, Vol. 136, No. 3, May/June 2010, pp. 177-189* at 1 (publication forthcoming)). Dr. Resio emphasized that he was unaware of a single case other than the plaintiffs' analysis prepared for litigation in <u>Robinson</u>, "where a coastal engineer has used the methodology upon which Plaintiffs rely to predict run-up and overtopping on a levee." Resio Test. at 24.

309.   Agreed. The United States objections, however, to Plaintiffs inclusion of material which is not a part of the trial record and third-party statements that represent inadmissible hearsay that the Court may not consider.

310.   The trial record does not support the proposed finding. The citations offered in support of this finding were not referenced or introduced at trial in this matter. With the exception of Dr. Kemp's testimony, these materials are not part of this trial record, and the Court should disregard this proposed finding.   In addition, the expert report and testimonial statements that Plaintiffs cite constitute inadmissible hearsay that the Court may not consider.

## 2.   Dr. Resio's Criticisms of Plaintiffs' Model

311.   The United States objects to the proposed finding which the record does not support. Dr. Kemp did not disclose the facts and data necessary to confirm the nature of the wind model used in association with the plaintiffs' modeling in <u>Robinson</u>. Dr. Kemp's opinions related to, or based on, wind modeling, are inadmissible.

312.   The United States objects to the proposed finding which the record does not support. Dr. Kemp did not disclose the facts and data necessary to confirm the nature of the wind model used in association with the plaintiffs' modeling in <u>Robinson</u>. Dr. Kemp's opinions related to, or based on, wind modeling, are inadmissible.

313.   The United States objects to the proposed finding as irrelevant to the Plaintiffs' Fifth Amendment takings claim. Because Dr. Kemp did not disclose the facts and data necessary to confirm the nature of the wind model used in association with the plaintiffs'

modeling in <u>Robinson</u>, Dr. Kemp's opinions related to, or based on, wind modeling, are inadmissible.

314.   The United States objects to the proposed finding which the record does not support. While the parties reached a general agreement regarding the surge heights during the peak of the storm, the plaintiffs' wave modeling in <u>Robinson</u> calculated a growth in waves across the MRGO channel approximately two feet greater than the growth the United States' experts calculated.  <u>See</u> Resio Test. at 7.  As discussed comprehensively in the United States post-trial memorandum, Plaintiffs' wave modeling is flawed and unreliable.  <u>See</u> U.S.' Mem. at 51-56.

315.   The United States objects to the proposed finding which the record does not support.  The wind modeling in this case matters precisely because it does affect the surge and wave results. In particular, the plaintiffs' lead wave modeler in <u>Robinson</u>, Dr. Vriling, admitted that modeling choices did cause the plaintiffs' wave results to overpredict wave strength in the MRGO channel during the peak period of Hurricane Katrina.  <u>See</u> U.S.' Mem. at 51-56.  And unlike surge, for which the parties were able to calibrate their models to observed and recorded values, there are no objective observations of wave heights, so the results of wind modeling is of utmost importance to understanding the forces at play.

316.   The United States objects to the proposed finding which the record does not support. Because the features and characteristics of every hurricane are different, however, one cannot generalize from one storm to another.  <u>See</u>, <u>e.g.</u>, Tr. at 292:7-10 (Kemp) (observing that the buffering impact of wetlands does not conform to a precise formula and "varies from storm to storm"); <u>id.</u> at 483:20-23 (Kemp).  Further, the only situation actually modeled for Hurricane Katrina incorporated levees with the heights and in the conditions that existed in August 2005.  <u>See</u> <u>id.</u> at 296:16-20 (Kemp) (conceding that none of the modeling conducted in <u>Robinson</u> incorporated the levee system as it stands presently).  But because the physical features on the ground, both natural and man-made, are significantly different today than they were in August 2005, plaintiffs' modeling of the Hurricane Katrina event in <u>Robinson</u> provides no insight into the likelihood of future flooding within the levee system.  <u>Cf.</u> <u>id.</u> at 274:7-18 (Kemp) (explaining that the Hurricane Pam simulations conducted in 2004 used the best available approximation of 2004 topographical and physical features and agreeing that data representing other points in time "wouldn't have been helpful to assess risk in 2004"); <u>id.</u> at 430:2-14 (Kemp) (agreeing that if the same storm were to attack areas with different geo-physical characteristics, an observer could expect the storm to impact those areas differently).

Moreover, Dr. Kemp concedes that the conditions about which he was most concerned no longer exist.  In analyzing his alleged funnel effect on storm surge in New Orleans, for example, Dr. Kemp indicated that Reach 1 of the MRGO was critical because it connected Lake Pontchartrain and Lake Borgne hydrologically and therefore allowed surge from both lakes to theoretically enter the Industrial Canal.  <u>See</u> Tr. at 251:12-19 (Kemp).  But Dr. Kemp concedes that, with the construction of the surge barrier, that hydrological connectivity has been cut off.  <u>See</u> <u>id.</u> at 252:15 (Kemp); <u>id.</u> at 253:3 (Kemp) (opining that the surge barrier "would make the Dutch proud").

317.   The United States objects to the proposed finding which consists of inadmissible and irrelevant evidence. Dr. Kemp admitted at trial that he did not perform this modeling, that the modeling was not conducted for purposes of this case, and that the modeling information did not appear in the expert report he submitted in this matter. See Tr. at 206:25-207:25 (Kemp). The Federal Circuit has cautioned against the admission of "[c]onclusory expert reports, eleventh hour disclosures, and attempts to proffer expert testimony without compliance with Rule 26," Tokai Corp v. Easton Enters., Inc., 632 F.3d 1358, 1366 (Fed. Cir. 2011) (quoting Innogenetics, N.V. v. Abbott Labs., 512 F.3d 1363, 1376 n.4 (Fed. Cir. 2008)), and these modeling results should therefore be ruled inadmissible. See Tr. at 209:13-17 (Barron) (objecting to admission of these previously undisclosed models). But even were the Court to consider these model outputs, these outputs do not provide any information that would allow the Court to draw a conclusion related to the cause of flooding. Dr. Kemp admitted that his report does not contain any analysis of the amount of flooding that would have occurred during these hurricanes without the MRGO. See Tr. at 490:7-10 (Kemp); id. at 491:5-14 (Kemp) (conceding that Dr. Kemp did not perform any modeling to compare the amount of flooding that would have occurred during these storms with or without the MRGO).

318.   The United States objects to the proposed finding because it is misleading and finds no support in the trial record. See Tr. at 409:3-410:10 (Kemp) (explaining that the area in which the MRGO was constructed was brackish marsh characterized by standing water and coastal grass). At trial, Dr. Kemp admitted that Plaintiffs erred in failing to adjust wind reduction variables over vegetation as that vegetation became submerged. See Tr. at 281:17-19 (Kemp) ("Dr. Resio complained . . ., saying that [the vegetation] would go under water and you shouldn't apply a reduction once they go under water. He is right. We shouldn't have.").

319.   The United States objects to the proposed finding because it is misleading and finds no support in the trial record. See Tr. at 409:3-410:10 (Kemp) (explaining that the area in which the MRGO was constructed was brackish marsh characterized by standing water and coastal grass). At trial, Dr. Kemp admitted that Plaintiffs erred in failing to adjust wind reduction variables over vegetation as that vegetation became submerged. See Tr. at 281:17-19 (Kemp) ("Dr. Resio complained . . ., saying that [the vegetation] would go under water and you shouldn't apply a reduction once they go under water. He is right. We shouldn't have.").

320.   The United States objects to the proposed finding because it is misleading and finds no support in the trial record. Dr. Resio's inability to understand the difference in wave modeling is a reflection of Plaintiffs' failure to disclose all the information necessary to properly review their wave model. Further, at trial, Dr. Kemp admitted that Plaintiffs erred in failing to adjust wind reduction variables over vegetation as that vegetation became submerged. See Tr. at 281:17-19 (Kemp) ("Dr. Resio complained . . ., saying that [the vegetation] would go under water and you shouldn't apply a reduction once they go under water. He is right. We shouldn't have.").

321.   Agreed.

322.    The United States objects to the proposed finding because the trial record directly contradicts it.  As discussed in the United States' post-trial memorandum, Dr. Kemp misunderstands how fetch is calculated in wave models and inaccurately describes waves in the MRGO as depth-limited.  See U.S. ' Mem. at 53-54 & n. 22.

323.    The United States objects to the proposed finding because the trial record directly contradicts it.  When the plaintiffs in Robinson re-ran their wave models using the default source term, they observed that wave growth across the MRGO channel was reduced by approximately a third.  See Kemp Test., Ex. 7, at 16; U.S.' Mem. at 55.

324.    Agreed.

325.    The United States objects to the proposed finding as irrelevant to Plaintiffs' Fifth Amendment takings claim.

326.    The United States objects to the proposed finding as irrelevant.  The response to which Plaintiffs refer is not a part of the trial record in this case.

327.    The United States objects to the proposed finding as being irrelevant to Plaintiffs' Fifth Amendment takings claim.  The United States has no burden of proof in this case and Plaintiffs may not reverse the burden of proof by referencing evidence the United States presented in another case involving distinct legal and factual elements.

328.    The United States objects to the proposed finding as being irrelevant to Plaintiffs' Fifth Amendment takings claim.  The United States has no burden of proof in this case and Plaintiffs may not reverse the burden of proof by referencing evidence the United States may have presented in another forum.

### 3.   IPET and URS Models

329.    Agreed.

330.    Agreed.  The proposed finding of fact, however, is irrelevant to Plaintiffs' Fifth Amendment takings claim.

331.    The United States objects to the proposed finding which the trial record directly contradicts.  The evidence demonstrates conclusively that Plaintiffs' SWAN modeling in Robinson suffers from numerous methodological flaws and produced unreliable results that overestimate the growth of waves across the MRGO.  See U.S.' Mem. at 51-56.

### 4.   The Government's Model

332.    The United States objects to the proposed finding as being irrelevant to Plaintiffs' Fifth Amendment takings claim.  Because the conditions the parties modeled in Robinson no longer exist, those modeling efforts are not probative with respect to the MRGO's alleged impact on flooding on Plaintiffs' properties.  Further, the United States has no burden of proof in this case and Plaintiffs may not reverse the burden of proof by referencing evidence the United States may have presented in another forum.

333.   The United States objects to the proposed finding as inaccurate and misleading.  The United States acknowledges that it calibrated its modeling results in <u>Robinson</u> to account for objective, observed high-water marks; there is no evidence in the trial record, however, indicating that this calibration was "arbitrary" or not in accord with standard modeling practice.  Further, because the conditions the parties modeled in <u>Robinson</u> no longer exist, those modeling efforts are not probative with respect to the MRGO's alleged impact on flooding on Plaintiffs' properties.  Critically, the United States has no burden of proof in this case and Plaintiffs may not reverse the burden of proof by referencing evidence the United States may have presented in another forum.

334.   The United States objects to the proposed finding because the material referenced in it is not part of the trial record in this case.  The material also consists of inadmissible hearsay which the Court may not consider.

335.   The United States objects to the proposed finding because, with the exception of Dr. Kemp's testimony, the material referenced in the proposed finding is not part of the trial record in this case and should be disregarded.  In addition, the third-party statements referenced constitute inadmissible hearsay which the Court may not consider.  Further, because the conditions the parties modeled in <u>Robinson</u> no longer exist, those modeling efforts are not probative with respect to the MRGO's alleged impact on flooding on Plaintiffs' properties.  Critically, the United States has no burden of proof in this case and Plaintiffs may not reverse the burden of proof by referencing evidence the United States may have presented in another forum.

336.   The United States objects to the proposed finding because, with the exception of Dr. Kemp's testimony, the material referenced in the proposed finding is not part of the trial record in this case and should be disregarded.  In addition, the testimonial statements referenced constitute inadmissible hearsay which the Court may not consider.  Further, because the conditions the parties modeled in <u>Robinson</u> no longer exist, those modeling efforts are not probative with respect to the MRGO's alleged impact on flooding on Plaintiffs' properties.

337.   The United States objects to the proposed finding because none of the material referenced in the proposed finding is part of the trial record in this case and therefore should be disregarded.  In addition, the testimonial statements referenced constitute inadmissible hearsay which the Court may not consider.  Further, because the conditions the parties modeled in <u>Robinson</u> no longer exist, those modeling efforts are not probative with respect to the MRGO's alleged impact on flooding on Plaintiffs' properties.  Critically, the United States has no burden of proof in this case and Plaintiffs may not reverse the burden of proof by referencing evidence the United States may have presented in another forum.

338.   The United States objects to the proposed finding because none of the material referenced in the proposed finding is part of the trial record in this case and therefore should be disregarded.  In addition, the testimonial statements referenced constitute inadmissible hearsay which the Court may not consider.  Further, because the conditions the parties modeled in <u>Robinson</u> no longer exist, those modeling efforts are not probative with

respect to the MRGO's alleged impact on flooding on Plaintiffs' properties. Critically, the United States has no burden of proof in this case and Plaintiffs may not reverse the burden of proof by referencing evidence the United States may have presented in another forum.

339. The United States objects to the proposed finding because the material referenced in the proposed finding is not part of the trial record in this case and therefore should be disregarded. Further, because the conditions the parties modeled in <u>Robinson</u> no longer exist, those modeling efforts are not probative with respect to the MRGO's alleged impact on flooding on Plaintiffs' properties. Critically, the United States has no burden of proof in this case and Plaintiffs may not reverse the burden of proof by referencing evidence the United States may have presented in another forum.

340. The United States objects to this proposed finding which the trial record directly contradicts. Dr. Resio explained that the 200-meter grids were capable of accurate predicting wave activity. <u>See</u> Resio Test. at 18-22. Further, the United States has no burden of proof in this case and Plaintiffs may not reverse the burden of proof by referencing evidence the United States may have presented in another forum.

341. The United States objects to the proposed finding to the extent that it suggests that Dr. Resio's direct testimony and cross-examination testimony are contradictory. Dr. Resio acknowledged the same one-foot wave growth across the MRGO in both examinations.

342. The United States objects to the proposed finding as irrelevant to Plaintiffs' Fifth Amendment takings claim. The United States has no burden of proof in this case and Plaintiffs may not reverse the burden of proof by referencing evidence the United States may have presented in another forum.

## K. MRGO and Non-Katrina Flooding Inside Levees

343. The United States agrees that Hurricane Rita made landfall on September 23, 2005 and that it was larger than the SPH. The United States object to Plaintiffs' reliance upon a document not part of the trial record in this case and asks that the Court disregard this citation.

344. The United States agrees that at the time Hurricane Rita struck, the pre-Hurricane Katrina federal hurricane protection system was fundamentally compromised and even a moderate hurricane was likely to flood Plaintiffs' unprotected properties.

345. The United States agrees that Hurricane Rita caused flooding in the St. Bernard Polder. The United States objects to Plaintiffs' assertion that "many of the properties inside the levee system that are at issue in this case flooded," which is a statement the citations offered does not support, and which finds no support in the trial record. Dr. Kemp's unscientific guesses concerning whether certain inside-the-levee properties flooded before or after Hurricane Katrina, <u>see</u> Kemp Test. at 254-267, are contradicted by the testimony of the Plaintiffs themselves who testified uniformly that no Plaintiff property within the hurricane protection system flooded on any occasion other than Hurricane

Katrina.  See U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

The United States further objects to Plaintiffs' reliance upon SPX.335, which is a document outside the trial record in this case, and asks that the Court disregard such citation.

346.    The United States objects to this proposed finding, which the trial record directly contradicts.  Dr. Kemp's unscientific guesses concerning whether certain inside-the-levee properties flooded before or after Hurricane Katrina, see Kemp Test. at 254-267 & Exhibit 8, are inconsistent with the testimony of the Plaintiffs themselves who testified uniformly that no Plaintiff property within the hurricane protection system suffered flooding on any occasion other than Hurricane Katrina.  See U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

**L.    MRGO and Non-Katrina Flooding Outside Levees**

347.    The United States objects to the assertion that the pre-Hurricane Katrina federal levee system provided "limited protection to Plaintiffs' properties inside the levees," which the trial record directly contradicts.  Plaintiffs testified uniformly that no Plaintiff property within the hurricane protection sytem suffered flooding on any occasion other than Hurricane Katrina.  See U.S.' Mem. at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

The United States agrees that the Plaintiff properties located outside the pre-Hurricane Katrina federal levee system received no flood protection benefit from that system.

348.    The United States objects to this proposed finding of fact which the cited documents do not support and which is inconsistent with the trial record.

As discussed in the United States' Post Trial Brief, Plaintiff Robin did not testify that MRGO has caused increased flooding on his property, but instead specifically identified Hurricane Katrina as the event that exacerbated the wind-driven flooding he described.  See Tr. at 647:17-648:11 (Robin); id. at 631:15-20  ("all the bayous had ridges where they had trees and some kind of shrubberies that would protect the wind from getting in and moving the tides," but "since Katrina[,] there's no more ridges.  There's no more trees.  It's plain.").  Plaintiff Bordelon also testified that it was Hurricane Katrina that caused increased wind driven flooding on his properties outside the federal levee system.  See SPX.531 (Bordelon Dep. Test.) at 18:1-12.

At trial, Dr. Suhayda acknowledged that his opinion that "MRGO contributes significantly to flooding" outside the federal hurricane protection system was not based on an assessment of any measurements, data, or modeling.  See U.S.' Mem. at 68-70.  Dr. Suhayda admitted that these properties would flood even if the MRGO had not been built, and he conceded that he did not quantify the frequency or extent of that flooding.  Id. at 69.

60

The United States objects to Plaintiffs' citation to SPX.1128, which is not part of the trial record, and in any event, does not support the fact finding proposed in paragraph 348.

349. The United States objects that this proposed fact finding is not supported by the documents cited, none of which attribute flooding upon any particular Plaintiff properties to "MRGO's destruction of buffering wetlands." The United States also objects to Plaintiffs' citation to SPX 1100 which is not part of the trial record in this case. See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

350. The United States agrees that the MRGO provides a means of conveyance for water to travel from the Gulf of Mexico to the Bayou Yscloskey area. The trial record also demonstrates that water traveling from the direction of Breton Sound is easily blown through back channels and open water bodies southeast of Bayou Yscloskey and that this route provides the main hydrological connection to the Gulf of Mexico. See Britsch Test. at 30-31; Tr. at 985:22-987:12 (Britsch) (the area around Bayou Yscloskey "is so open to the Breton Sound that the main hydraulic connection to the Gulf is through these waterways, not through the MRGO and this minor connection, one little bitty channel right here. The dominant influence over this area [is] tides coming from the southeast.").

In addition, this proposed finding of fact is one of several reasons why the Court should reject Plaintiffs' claims. As discussed in the United States' Post-Trial Brief, to the extent the MRGO creates a conveyance potential, that has been the case since the construction of the MRGO, or immediately thereafter. Plaintiffs failed to present any technical or scientific evidence explaining how the condition which they allege is the cause of flooding on their properties could exist for decades, but not actually result in increased flooding on their properties until an undefined time within six years of the filing of their lawsuit.

351. The United States agrees that Dr. Britsch did not testify that there was "no hydrological connection" between the MRGO and the area of Hopedale and Bayou Yscloskey. However, Dr. Britsch did testify that the area of Bayou Yscloskey "is so open to the Breton Sound that the main hydraulic connection to the Gulf" is through backwater channels southeast of the MRGO, and "not through the MRGO" itself. Tr. at 985:22-987:12 (Britsch). He also testified that "the dominant influence over [the Bayou Yscloskey] area [is] tides coming from the southeast." *Id.*

352. The United States agrees that Plaintiff Robin testified that Yscloskey channel has widened over time. The United States otherwise objects to paragraph 352, which is apparently based upon the opinion of Dr. Kemp. Dr. Kemp admitted at trial that he did not perform any analysis to determine how much wider, if at all, Bayou Yscloskey channel is now relative to its pre-MRGO width. Tr. at 443:12-445:15 (Kemp).

353. The United States objects to this proposed finding of fact, which assumes proof of "frequent flooding of properties outside the levees." No such proof is established in the documents cited, nor was proof of MRGO-related floods outside the federal hurricane

protection system adduced at trial.  In addition, the United States objects to Plaintiffs' citation to SPX 1115 and SPX 1117 which are not part of the trial record in this case.

354.    The United States objects to the assertion that the Corps has "observed that the MRGO increases surge during smaller wind events," which is not supported by the documents cited.  The United States also objects to Plaintiffs citation to SPX 732, which is not part of the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

355.    The United States objects to this proposed finding of fact, which is contradicted by the trial record.  Dr. Britsch provided unrebutted testimony at trial that MRGO does not contribute to flooding in the area of Delacroix.  Britsch Test. at 30-31.

356.    The United States agrees that MRGO creates a hydrological connection between Lake Borgne and the communities in close proximity to Bayou Yscloskey.  The United States objects to Plaintiffs' assertion that this connection alone is sufficient to prove that "the MRGO's impact on properties around Bayou Yscloskey" has been to cause frequent and inevitable flooding on Plaintiffs' properties, which is a finding that Dr. Kemp performed no analysis to establish.  See U.S.' Mem. at 68.

## M.    Closure of the MRGO

357.    The United States agrees that "many persons, organizations, and Government agencies have called for" MRGO's closure.  The United States objects to the remainder of paragraph 357, including Plaintiffs' citation to documents outside the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

358.    Agreed.

359.    Agreed.

360.    Agreed.

361.    The United States objects that this proposed finding of fact is misleading and irrelevant to any of the elements of Plaintiffs' Fifth Amendment takings claims.  The cited testimony of Dr. Kemp, which faults the rock dam for not blocking the connection between New Orleans and Lake Borgne, ignores Dr. Kemp's concession at trial that as of June 1, 2011, a surge barrier has been installed which does block that connection.  See Tr. at 252-253 (Kemp).

362.    The United States agrees that the rock dam helps prevent high salinity water from moving up the MRGO from the Gulf of Mexico, and that it has reduced salinity levels in the Lake Borgne ecosystem.  The United States objects to the remainder of paragraph 362, including Plaintiffs' citation to a document outside the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

363. The United States objects that Plaintiffs presented no trial evidence establishing any specific incidents of flooding that would not have taken place absent the MRGO rock dam closure. The United States further objects to Plaintiffs' citation to SPX 1057, which is not part of the trial record in this case. See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

364. The United States objects that Plaintiffs presented no trial evidence establishing any specific incidents of flooding that would not have taken place absent the MRGO rock dam closure.

365. The United States objects that Plaintiffs presented no trial evidence establishing any specific incidents of flooding that would not have taken place absent the MRGO rock dam closure. Furthermore, as Dr. Britsch testified at trial, water flows back and forth from Breton Sound through backchannels and waterbodies southeast of the MRGO. Tr. at 985:22-987:12 (Britsch). Accordingly, as Plaintiff Robin testified, instead of flowing out of the MRGO channel, any water that makes its way into the MRGO is "making it's way out in different areas." Tr. at 645:18-19 (Robin). The United States further objects to Plaintiffs' citation to documents outside the trial record in this case. See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

366. The United States objects that this observation by Dr. Kemp does not "confirm" any instance of flooding on any Plaintiff property that would not have taken place in the absence of the MRGO rock dam closure.

367. The United States objects that this proposed finding of fact is not supported by the proffered testimony of Dr. Kemp, which contradicts the Plaintiffs' own testimony that it is wind from the southeast that raises water levels on their properties — not wind from across Lake Borgne. Compare Kemp Test. at 250 ("Winds from the south and southwest tend t o lower water levels at Shell Beach, while northeast winds tilt the Lake level higher along the south shore") with Tr. at 646:26 (Robin) (clarifying that wind moving northwesterly from the Gulf of Mexico is the wind that he calls a "northeast wind," and which puts water on his property); id. at 654:6-655:2 (Robin) (authenticating the handwritten arrow on DX 1 demonstrating that wind moving northwest from the Gulf causes water to flow onto his property); DX 1. Furthermore, Dr. Kemp's evaluation of this issue is flawed, and demonstrates nothing about any potential role of the rock dam in regards to flooding events on properties outside the levees.

### N.    The Hurricane and Storm Damage Risk Reduction System (HSDRRS)

368. The United States agrees that following Hurricane Katrina, Congress has authorized the Hurricane and Storm Damage Risk Reduction System, and that it is projected to cost more than $14 billion. The United States objects that the rest of this proposed fact finding is argumentative, and relies upon documents not part of the trial record in this case. See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

369.   The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  For the reasons stated in the United States' Motion to Exclude and the Joint Exhibit List, these materials are not part of this trial record, and the Court should disregard this proposed finding.

370.   Agreed.  However, the United States objects to Plaintiffs' citation to documents document not part of the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

371.   Agreed.  However, the United States objects to Plaintiffs' citation to documents document not part of the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

372.   The United States agrees that HSDRRS's design heights account for relative sea level rise expected to occur over the project's 50 year lifetime.  The United States objects to the assertion that HSDRRS accounts for "MRGO-caused" lateral displacement which is not supported by the proffered citations.  The United States further objects to Plaintiffs' citation to PX 1114, which is not part of the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

373.   The United States agrees with this proposed finding of fact, except for the word "supposedly."  The United States objects to Plaintiffs' citation to Robinson trial materials which are not part of the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

374.   Agreed.  However, the United States objects to Plaintiffs' citation to Robinson trial materials which are not part of the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

375.   The United States agrees that the HSDRRS will provide much more robust flood protection to properties inside the HSDRRS system.  The United States objects to the remainder of paragraph 375 which is not supported by any evidence presented at trial.

## 1.   Level of Protection the HSDRRS Provides

376.   Agreed.  However, the United States objects to Plaintiffs' citation to Robinson trial materials which are not part of the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

377.   Agreed.  However the United States objects to Plaintiffs' citation to SPX 303 which is not part of the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

378.   Agreed.  However the United States objects to Plaintiffs' citation to SPX 1163-1166 which are not part of the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

379.   The United States objects to this proposed finding, which is argumentative and contradicts Dr. Kemp's assessment that the HSDRRS system provides Greater New Orleans with "the best perimeter defense in its history."  Tr. at 481:22-25 (Kemp).

380.   The United States objects to this proposed finding of fact, which is unsupported by any evidence in the trial record.  Plaintiffs' expert Dr. Kemp testified to the contrary that the HSDRRS system was based upon "robust analysis" and provided no technical analyses suggesting that the current system provides less than 100 year protection.  Tr. at 481:8-14 (Kemp).  Indeed, Dr. Kemp agreed that the HSDRRS system provides Greater New Orleans with "the best perimeter defense in its history."  Tr. at 481:22-25 (Kemp).  Plaintiffs presented no evidence to contradict the analysis undertaken by the Corps.  The United States further objects to Plaintiffs' citation to materials outside the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

381.   The United States objects to this proposed finding of fact, which is unsupported by any evidence in the trial record.  Plaintiffs' expert Dr. Kemp testified to the contrary that the HSDRRS system was based upon "robust analysis" and provided no technical analyses suggesting that the current system provides less than 100 year protection.  Tr. at 481:8-14 (Kemp).  Indeed, Dr. Kemp agreed that the HSDRRS system provides Greater New Orleans with "the best perimeter defense in its history."  Tr. at 481:22-25 (Kemp).  Plaintiffs presented no evidence to contradict the analysis undertaken by the Corps.  The United States further objects to Plaintiffs' citation to materials outside the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

382.   The United States objects to this proposed finding of fact, which is unsupported by any evidence in the trial record.  Plaintiffs' expert Dr. Kemp testified to the contrary that the HSDRRS system was based upon "robust analysis" and provided no technical analyses suggesting that the current system provides less than 100 year protection.  Tr. at 481:8-14 (Kemp).  Indeed, Dr. Kemp agreed that the HSDRRS system provides Greater New Orleans with "the best perimeter defense in its history."  Tr. at 481:22-25 (Kemp).  Plaintiffs presented no evidence to contradict the analysis undertaken by the Corps.  The United States further objects to Plaintiffs' citation to materials outside the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

383.   Agreed.

384.   The United States objects to this proposed finding of fact, which is unsupported by any evidence in the trial record.  Plaintiffs' expert Dr. Kemp testified to the contrary that the HSDRRS system was based upon "robust analysis" and provided no technical analyses suggesting that the current system provides less than 100 year protection.  Tr. at 481:8-14

(Kemp).  Indeed, Dr. Kemp agreed that the HSDRRS system provides Greater New Orleans with "the best perimeter defense in its history."  Tr. at 481:22-25 (Kemp).  Plaintiffs presented no evidence to contradict the analysis undertaken by the Corps.  The United States further objects to Plaintiffs' citation to materials outside the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

385.    The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  For the reasons stated in the United States' Motion to Exclude and the Joint Exhibit List, these materials are not part of this trial record, and the Court should disregard this proposed finding.

386.    The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  For the reasons stated in the United States' Motion to Exclude and the Joint Exhibit List, these materials are not part of this trial record, and the Court should disregard this proposed finding.

## 2.  Dr. Suhayda's Calculation of Level of Protection in Place Prior to HSDRRS

387.    Agreed.

388.    The United States agrees that Dr. Suhayda did so testify.  But this proposed finding provides one of several reasons why the Court should reject Plaintiffs' claims.  As discussed in the United States' Post-Trial Brief, Dr. Suhayda's opinion that the flooding that occurred during Hurricane Katrina was due to inadequate levees supports the United States' position, not Plaintiffs' position.  Def.'s Post-Trial Br. at 65   In addition, the United States notes the Dr. Resio stated that pre-Hurricane Katrina federal levees system provided a level of protection "in the range of 50 or 60s years."  Tr. at 1034:10-19 (Resio).

389.    The United States agrees that Dr. Suhayda concluded that the design SWL "are consistently about 1.6 times the design SWL."  Suhayda Written Testimony at 17.

390.    The United States acknowledges that Dr. Suhayda offered the opinion described in the proposed finding of fact.

391.    The United States agrees that Dr. Suhayda testified that "conservatively speaking, the pre-Katrina flood protection system provided quite a bit less than 20 year protection for areas of St. Bernard Parish and the Lower Ninth Ward situated inside the flood protection system.  In addition, this analysis assumes that the pre-Katrina levees would not have failed or breached during the 20 year flood event."  Suhayda Written Testimony at 19.  But Dr. Suhayda offered no analysis or conclusions about "front-side erosion caused by waves propagated in the MRGO" as this proposed finding claims, so the proposed finding of fact is wrong.

66

392.   The United States objects to Plaintiffs' characterization of what the "Corps itself has determined" with respect to the "true" 100-year protection offered by the HSDRRS system, which is a vague and argumentative statement irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.  The United States agrees that the HSDRRS system relies upon conservative calculations, and that it provides 100-year protection to properties within the system in the St. Bernard Polder.

393.   The United States agrees that Dr. Suhayda calculated these numbers based on his analysis of recent data, applied to pre-Katrina levee heights.  As discussed in the United States' Post-Trial Brief, Dr. Suhayda's opinion that the flooding that occurred during Hurricane Katrina was due to inadequate levees supports the United States' position, not Plaintiffs' position.  Def.'s Post-Trial Br. at 65.

394.   The United States agrees that Dr. Resio has concluded that the pre-Hurricane Katrina federal levees system provided a level of protection "in the range of 50 or 60s years."  Tr. at 1034:10-19 (Resio).  As discussed in the United States' Post-Trial Brief, Dr. Suhayda's opinion that the flooding that occurred during Hurricane Katrina was due to inadequate levees supports the United States' position, not Plaintiffs' position.  Def.'s Post-Trial Br. at 65.

395.   The United States agrees with the first sentence of paragraph 395.  The United States, however, objects that this proposed finding, which seeks to parse the predicted level of storm protection offered by the pre-Hurricane Katrina levee system, is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.  The trial record established conclusively that no Plaintiff property inside the pre-Hurricane Katrina levee system flooded on any occasion other than Hurricane Katrina.  See U.S. Op. Post-Trial Br. (ECF # 181) at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

### 3.   Government Acknowledgments of Level of Protection Prior to HSDRRS

396.   The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  For the reasons stated in the United States' Motion to Exclude and the Joint Exhibit List, these materials are not part of this trial record, and the Court should disregard this proposed finding.  In addition, the United States objects that this proposed finding is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.  The trial record established conclusively that no Plaintiff property inside the pre-Hurricane Katrina levee system flooded on any occasion other than Hurricane Katrina.  See U.S. Op. Post-Trial Br. (ECF # 181) at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

397.   The United States objects that this proposed finding is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.  The trial record established conclusively that no Plaintiff property inside the pre-Hurricane Katrina levee system flooded on any occasion other than Hurricane Katrina.  See U.S. Op. Post-Trial Br. (ECF # 181) at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

67

398.    The United States objects that this proposed finding is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.  The trial record established conclusively that no Plaintiff property inside the pre-Hurricane Katrina levee system flooded on any occasion other than Hurricane Katrina.  See U.S. Op. Post-Trial Br. (ECF # 181) at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).  In addition, as discussed in the United States' Post-Trial Brief, Dr. Suhayda's opinion that the flooding that occurred during Hurricane Katrina was due to inadequate levees supports the United States' position, not Plaintiffs' position.  Def.'s Post-Trial Br. at 65.

399.    The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  For the reasons stated in the United States' Motion to Exclude and the Joint Exhibit List, these materials are not part of this trial record, and the Court should disregard this proposed finding.  In addition, the United States objects that this proposed finding is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.  The trial record established conclusively that no Plaintiff property inside the pre-Hurricane Katrina levee system flooded on any occasion other than Hurricane Katrina.  See U.S. Op. Post-Trial Br. (ECF # 181) at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

400.    The United States objects that all but one of the citations offered in support of this finding – Dr. Resio's trial testimony – were not referenced or introduced at trial in this matter.  For the reasons stated in the United States' Motion to Exclude and the Joint Exhibit List, all of the cited materials (except for Dr. Resio's trial testimony) are not part of this trial record, and the Court should disregard these citations.

401.    The United States agrees with this proposed finding, but objects that all but one of the citations offered in support of this finding – SPX 8 – were not referenced or introduced at trial in this matter.  For the reasons stated in the United States' Motion to Exclude and the Joint Exhibit List, all of the cited materials (except for SPX 8) are not part of this trial record, and the Court should disregard these citations.

402.    The United States objects that this proposed finding is offered without any support from the trial record.  The citations offered in support of this finding were not referenced or introduced at trial in this matter.  For the reasons stated in the United States' Motion to Exclude and the Joint Exhibit List, these materials are not part of this trial record, and the Court should disregard this proposed finding.  In addition, the United States objects that this proposed finding is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims.  The trial record established conclusively that no Plaintiff property inside the pre-HSDRRS levee system flooded on any occasion other than Hurricane Katrina.  See U.S. Op. Post-Trial Br. (ECF # 181) at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

403.    The United States agrees with this proposed finding, but objects that all but one of the citations offered in support of this finding – SPX 8 – were not referenced or introduced at trial in this matter.  For the reasons stated in the United States' Motion to Exclude and the Joint Exhibit List, all of the cited materials (except for SPX 8) are not part of this trial

record, and the Court should disregard these citations. In addition, the United States objects that this proposed finding is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims. The trial record established conclusively that no Plaintiff property inside the pre-HSDRRS levee system flooded on any occasion other than Hurricane Katrina. See U.S. Op. Post-Trial Br. (ECF # 181) at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding).

404. The United States agrees these witnesses did so testify. However, this proposed finding is irrelevant to any element of Plaintiffs' Fifth Amendment takings claims. The trial record established conclusively that no Plaintiff property inside the pre-HSDRRS levee system flooded on any occasion other than Hurricane Katrina. See U.S. Op. Post-Trial Br. (ECF # 181) at 12-24 (collecting testimony of all Plaintiffs concerning non-Katrina flooding). In addition, as discussed in the United States' Post-Trial Brief, Dr. Suhayda's opinion that the flooding that occurred during Hurricane Katrina was due to inadequate levees supports the United States' position, not Plaintiffs' position. Def.'s Post-Trial Br. at 65.

405. The United States objects that this proposed finding is offered without any support from the trial record. The citations offered in support of this finding were not referenced or introduced at trial in this matter. For the reasons stated in the United States' Motion to Exclude and the Joint Exhibit List, these materials are not part of this trial record, and the Court should disregard this proposed finding.

406. The United States objects that this proposed finding is offered without any support from the trial record. The citations offered in support of this finding were not referenced or introduced at trial in this matter. For the reasons stated in the United States' Motion to Exclude and the Joint Exhibit List, these materials are not part of this trial record, and the Court should disregard this proposed finding.

**O.    MRGO Ecosystem Restoration Plan**

407. The United States objects that the proposed ecosystem restoration plan is not aimed solely at restoring wetlands "that the MRGO destroyed." The Draft Environmental Impact Statement Plaintiffs cite states that its purpose is to remedy "natural flow and drainage patterns," impacted by "a complex levee system throughout the area, drainage channels, pipelines and other utilities, roadways," in addition to navigation channels, including the MRGO. SPX 1154 at ES-1-2, S.2.

408. Agreed.

409. The United States agrees that the currently proposed MRGO Ecosystem Restoration Plan includes a freshwater diversion component that would divert freshwater from the Mississippi River into the marsh areas surrounding Lake Borgne, and that it would operate year-round at 1000 cfs, except during the months of April and May, when it would operate at 7,000 cfs. SPX 1154 at 2-41.

410. Agreed. However, The United States further objects to Plaintiffs' citation to several documents which are not part of the trial record in this case. See United States' Motion

to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

411.  The United States agrees that the MRGO Ecosystem Restoration plan recommends the construction of marsh creation projects in the Golden Triangle, Shell Beach, Hopedale and Delacroix areas.  The United States objects to Plaintiffs' citation to SPX 131 and SPX 206 which are not part of the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

412.  The United States agrees that the restoration of wetlands in the area of Lake Borgne may have positive impacts on reducing storm surge, but notes that the stated goals of the MRGO Ecosystem Restoration plan in the Draft Environmental Impact Statement cited by Plaintiffs are to "address the current trend of degradation of the Lake Borgne ecosystem, support Nationally significant resources, provide a sustainable and diverse array of fish and wildlife habitats, provide infrastructure protection, and make progress towards a more sustainable ecosystem."  SPX 1154 at ES-7.  The United States further objects to Plaintiffs' citation to several documents which are not part of the trial record in this case.  See United States' Motion to Exclude, dated Dec. 5, 2011 (ECF #157); Joint Exhibit List, dated Mar. 23, 2012 (ECF #178).

Submitted respectfully this 18th day of May, 2012,

IGNACIA S. MORENO
Assistant Attorney General


  *s/ Mark S. Barron*
MARK S. BARRON, Trial Attorney
JOSHUA P. WILSON, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
Post Office Box 663, Ben Franklin Station
Washington, DC 20044-0663
Telephone: 202.305.0490
Facsimile: 202.305.0506
mark.barron@usdoj.gov
joshua.wilson@usdoj.gov

WILLIAM J. SHAPIRO, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
501 I Street, Suite 9-700
Sacramento, California 95814
Telephone: 916.930.2207
Facsimile: 916.930.2210
william.shapiro@usdoj.gov


OF COUNSEL:

FRED R. DISHEROON
Special Litigation Counsel
United States Department of Justice
Environment & Natural Resources Division
Washington, DC

*Counsel for the United States*